# UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | 1:17-cr-00136-LJO-SKO |
| **Plaintiff,** | **MEMORANDUM DECISION AND ORDER RE MOTIONS *IN LIMINE*** |
| v. | **(ECF Nos. 21, 22)** |
| **CRAIG SHULTS,** | |
| **Defendant.** | |

## I. INTRODUCTION

On August 8, 2018, this Court held a hearing on the parties' motions *in limine* and made oral rulings on the record at that hearing. *See* ECF Nos. 40, 43. For ease of reference for the parties, the Court now issues this written decision and order memorializing the rulings made at that hearing.

## II. BACKGROUND

Defendant Craig Shults is charged in a single-count indictment with violating 18 U.S.C. § 115(a)(1)(B), retaliating against a federal official by threat. The federal official that Defendant is alleged to have threatened is United States District Court Judge Andrew Guilford, who presided over Defendant's criminal case.

The Government moved *in limine* to admit testimony from two confidential witnesses, whom it refers to as CW2 and CW3. The Government states that CW2 will testify that Defendant made threats against Judge Guilford in or about January 2014, while he was incarcerated in Santa Ana Jail. The Government states that it will demonstrate that Defendant made those threats after Judge Guilford

1

revoked Defendant's pretrial release bond and remanded defendant. Defendant stipulated to the admission of CW2's testimony, subject to the Government not objecting to testimony from Deputy United States Marshal Andrew Nguyen (who investigated the matter and drafted a report about it), rendering that part of the motion moot.

CW3 (whom Defendant refers to as "P.V.," which was also the way CW3/P.V. was named at the hearing on the motions *in limine*) will testify that he met Defendant when they were both at FCI Lompoc, where Defendant was transferred after officials at Taft CI became aware of the threats charged in the indictment in this case. P.V. will testify that Defendant repeatedly offered to pay P.V. $100,000 to arrange the murder of Judge Guilford and that P.V. reported the threats to prison officials.

Defendant opposed the Government's motion to introduce P.V.'s testimony but moved in his own motion for the admission of impeachment testimony of P.V. P.V. was charged with a fraud offense in 2008, which included information obtained from a confidential informant. While in custody on the fraud case, P.V. offered $10,000 to an individual to have the confidential informant murdered. He later pleaded guilty to both charges and was sentenced in 2010. He was at Lompoc beginning in late 2011 or early 2012. In approximately March 2017, while at Lompoc, he met Defendant, who had just been transferred from Taft.

Defendant also seeks to introduce evidence relating to another case involving a plot to kill Judge Guilford. From approximately March through June of 2014, while P.V. was an inmate at Lompoc, John Arthur Walthall, another defendant at Lompoc, recruited two other inmates to assist him in murdering various people, including Judge Guilford. The two other inmates alerted authorities about the plot and cooperated in the investigation of the case. In November of 2014, a grand jury indicted Walthall with solicitation of murder. The case proceeded to trial in April of 2016, but the jury was unable to reach a unanimous verdict. The case was retried in July of that year, and on July 19, 2016, the jury returned a guilty verdict. On December 2, 2016, Walthall was sentenced to 20 years' imprisonment. Defendant contends that the case generated significant media attention and was well known within Lompoc. The

two cooperating witnesses both had significant time remaining on their sentences, though both were transferred from Lompoc in November of 2014, and it is not clear whether either returned following the *Walthall* trial. By 2017, one of them had been transferred to a facility in Texas, and the other one, who had been sentenced in 2006 to 30 years' imprisonment, was released from Bureau of Prisons' custody in August of 2017. P.V. was at Lompoc until July of 2017 and was present there during the entire *Walthall* saga.

### III. <u>STANDARD OF DECISION</u>

A party may use a motion *in limine* to exclude inadmissible or prejudicial evidence before it is actually introduced at trial. *See Luce v. United States*, 469 U.S. 38, 40 n.2 (1984). "[A] motion *in limine* is an important tool available to the trial judge to ensure the expeditious and evenhanded management of the trial proceedings." *Jonasson v. Lutheran Child and Family Services*, 115 F.3d 436,440 (7th Cir. 1997). A motion *in limine* allows the parties to resolve evidentiary disputes before trial and avoids potentially prejudicial evidence being presented in front of the jury, thereby relieving the trial judge from the formidable task of neutralizing the taint of prejudicial evidence. *Brodit v. Cambra*, 350 F.3d 985, 1004-05 (9th Cir. 2003).

### IV. <u>DISCUSSION</u>

**A.     <u>Testimony Of CW2</u>**

The Government states that CW2 will testify that Defendant made threats against Judge Guilford in or about January 2014, while he was incarcerated in Santa Ana Jail. The Government states that it will demonstrate that Defendant made those threats after Judge Guilford revoked Defendant's pretrial release bond and remanded defendant. Defendant stipulated to the admission of CW2's testimony, subject to the Government's not objecting to testimony from Deputy United States Marshal Andrew Nguyen, who investigated the matter and drafted a report about it.

Accordingly, the Government's motion to admit CW2's testimony is **DENIED AS MOOT**.

**B.    Testimony Of CW3/P.V.**

P.V. will testify that he met Defendant when they were both at FCI Lompoc, to which Defendant was transferred after officials at Taft CI became aware of the threats charged in the indictment in this case. P.V. will testify that Defendant repeatedly offered to pay P.V. to arrange the murder of Judge Guilford and that P.V. reported the threats to prison officials.

Though the statements that Defendant allegedly made to P.V. occurred after the conduct charged in this case, the Government argues that P.V.'s testimony is evidence intrinsic to the underlying crime. The Ninth Circuit has identified two general categories of cases in which "'other act' evidence is inextricably intertwined with the crime with which the defendant is charged and therefore need not meet the requirements of Rule 404(b)." *United States v. Vizcarra-Martinez*, 66 F.3d 1006, 1012 (9th Cir. 1995). First, it is sometimes allowed when "it constitutes a part of the transaction that serves as the basis for the criminal charge." *Id*. Second, "other act" evidence can be admitted "when it was necessary to do so in order to permit the prosecutor to offer a coherent and comprehensible story regarding the commission of the crime; it is obviously necessary in certain cases for the government to explain either the circumstances under which particular evidence was obtained or the events surrounding the commission of the crime." *Id*. at 1012-13. The Government contends that P.V.'s testimony is necessary to tell a "coherent and comprehensible story regarding the commission of the crime" because the jury will be charged with determining whether Defendant's speech qualifies as true threats. ECF No. 21 at 6.

The Government argues in the alternative that the testimony is admissible under Federal Rule of Evidence 404(b). Admission of 404(b) evidence is subject to a four-part test:

> Evidence of prior criminal conduct may be admitted if (1) the evidence tends to prove a material point; (2) the prior act is not too remote in time; (3) the evidence is sufficient to support a finding that the defendant committed the other act; and (4) (in cases where knowledge and intent are at issue) the act is similar to the offense charged.

*Vizcarra-Martinez*, 66 F.3d at 1013. The Government argues that all four prongs are met here. It argues that the first prong is met because P.V.'s testimony is relevant to the material point of whether

4

Defendant intended the charged statements to be threats against Judge Guilford, whether they were objectively threats, and whether the threats were made with an intent to retaliate against Judge Guilford for performance of his official duties. The alleged threat at Lompoc is not too remote in time, and the fact that it occurred after the charged conduct does not preclude its admission. *See United States v. Corona,* 34 F.3d 876, 881 (9th Cir. 1994) (noting that 404(b) permits admission of evidence of "other crimes or bad acts for the purpose of proving 'motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident'" and that "[e]vidence of subsequent, as well as prior acts is admissible to show the defendant's state of mind"). The Government argues that P.V.'s testimony is reliable based on the fact that P.V. reported the proposition to prison officials and was interviewed shortly thereafter. In addition, P.V. believes he was targeted for the proposition based on his conviction for attempting to solicit the murder of witnesses. Finally, the Government argues that the testimony meets the fourth prong because it is similar to the charged conduct.

Defendant opposes admission of P.V.'s testimony. ECF No. 27. He argues that P.V.'s testimony is not "inextricably intertwined" with the charged conduct. First, it is not part of a "single criminal episode," *Vizcarra-Martinez,* 66 F.3d at 1012, because they are "separated by time and location and involved a different type of scheme than the charged conduct." ECF No. 27 at 5. While at Taft, Defendant allegedly asked CW1 for money as part of the plot to kill Judge Guilford, while P.V. claims that Defendant offered him money to kill Judge Guilford. Second, he argues that the subject of P.V.'s testimony, events at Lompoc, do not provide context for the charged offense because they are distant in time and place and do not explain the circumstances of the charged offense.

Defendant next argues that P.V.'s testimony is inadmissible under Rule 404(b) because it fails both the first and fourth prongs of the admissibility test. It does not tend to prove a material point because P.V. did not hear the alleged statements at issue in this case and the alleged events at Lompoc differed from the scheme charged in the indictment. It also is not material because circumstances changed between the alleged events at Taft and at Lompoc. By the time he got to Lompoc, he had been

5

transferred to a higher-level security facility, lost his property, and felt that the denial of request for bail pending appeal was due to the alleged events at Taft. Accordingly, Defendant argues, any alleged threats made at Lompoc would not reflect his "state of mind months earlier at a different institution and prior to suffering consequences for the charged conduct." ECF No. 27 at 8. Finally, Defendant argues that P.V.'s testimony is inadmissible under Rule 403.

The Court finds that P.V.'s testimony is admissible. It is inextricably intertwined with the charged offense. Evidence that Defendant continued, and escalated, the threats made against a judge even after he was moved to a new facility is evidence of a "single criminal episode." *Vizcarra-Martinez*, 66 F.3d 1006, 1012 (9th Cir. 1995) ("[T]he policies underlying rule 404(b) are inapplicable when offenses committed as part of a 'single criminal episode' become other acts simply because the defendant 'is indicted for less than all of his actions.'" (quoting *United States v. Williams*, 989 F.2d 1061, 1070 (9th Cir. 1993))). Defendant's argument that the conduct is dissimilar because the alleged conduct at Taft involved solicitation of money while the alleged conduct at Lompoc involved his offering money does not change the analysis. The same judge was targeted with the same goal, even if the method that failed to work at Taft was altered when attempted at Lompoc.

The Court also finds that the testimony would be admissible under Rule 404(b). It goes to Defendant's motive, intent, and knowledge. Witness credibility will be the centerpiece of this case, and testimony showing the consistency of the alleged behavior has the potential to carry great weight. Because of the potentially immense probative value on witness credibility, the 403 analysis tips heavily toward admission.

Defendant's argument that intervening events giving Defendant new grounds for being upset by the time he arrived at Lompoc, ECF No. 27 at 8:12-19, is a permissible argument for the jury at trial but does not warrant preclusion of P.V.'s testimony. In addition, Defendant's concern that P.V.'s testimony is highly prejudicial because the jury may feel compelled to convict Defendant for the conduct at Lompoc rather than the charged conduct can be remedied through a properly worded jury instruction if a

6

request is made at trial.

The Government's request to admit P.V.'s testimony is **GRANTED**.

C.      **Impeachment Evidence Re: CW3/P.V.**

Defendant moved for a pretrial ruling on impeachment evidence related to P.V. In particular, Defendant

> requests that this Court permit him to present evidence regarding the *Walthall* case. Specifically, Mr. Shults will seek to admit evidence that Mr. Walthall was charged with soliciting the murder of Judge Guilford in 2014; the district court declared a mistrial after the first trial in April 2016; Mr. Walthall was convicted after the second trial in July 2016; and the district court sentenced him to twenty years in December 2016. Mr. Shults will also seek to admit evidence that two cooperating witnesses, Mr. Rodriguez and Mr. Trejos Ortiz, cooperated against Mr. Walthall; both cooperating witnesses had significant time remaining on their sentences at the time they cooperated; and neither cooperating witness stayed at Lompoc FCI for long after the *Walthall* case, if they returned at all. Finally, Mr. Shults will seek to admit evidence that there was media coverage of the *Walthall* case, which included the names of the cooperating witnesses, and inmates at Lompoc FCI were aware of the details of the case.

ECF No. 22 at 6-7. Defendant argues that evidence of the *Walthall* case is highly probative of P.V.'s potential bias and self-interest.

The Government opposed. ECF No. 26. The Government argues that if P.V. testifies that he is unaware of the *Walthall* case, questioning on the matter should proceed no further. It next argues that even if P.V. is aware of the *Walthall* case, the Court should limit the testimony that should come in, since details about the 2016 mistrial, Walthall's 20-year sentence, media coverage of the case, and whether other inmates at Lompoc were aware of the case are not relevant to P.V.'s credibility. In addition, it argues that evidence of the sentence that Walthall received and evidence that another inmate threatened to kill Judge Guilford are both unduly prejudicial and should be excluded under Rule 403. Finally, it argues that evidence that P.V. believed that the *Walthall* cooperators may have received reduced sentences is irrelevant unless proved to be a fact of which P.V. was aware and would in any case be cumulative evidence. The Government warns that the level of detail in the evidence that Defendant seeks to admit will risk creating a sideshow.

The impeachment evidence is probative and potentially extraordinarily important to the defense case. It is likewise not a close 403 issue. Defendant will be permitted to show evidence concerning information available in newspapers that P.V. may have known about, the general discussion among the prison population at Lompoc, or other circumstantial evidence that P.V. could have known about. The parties will not be permitted to delve too deeply into the weeds about the *Walthall* case. The substance of P.V.'s testimony will determine the scope of the impeachment evidence. If he admits, for instance, that he was aware of the *Walthall* case, the Court may entertain a 403 objection based on cumulative evidence. But the impeachment evidence is undoubtedly highly relevant.

Defendant's motion to admit impeachment evidence related to P.V. is **GRANTED**.

## D. Sentence In Underlying Case

Defense counsel indicated to the Government that it would not object to testimony that Judge Guilford revoked Defendant's pretrial bond and denied bond pending appeal. The parties also agree that evidence that Judge Guilford sentenced Defendant to a longer sentence than he had argued was appropriate is evidence of a possible motive. The parties disagree, however, about how to characterize the circumstances leading to the sentence. The Government states in its motion that Defendant had argued in the underlying case that a sentence of 57-71 months was appropriate, with a "substantial variance." In spite of that defense position, the Defendant was sentenced to 90 months. Defendant argues that specific facts about the sentence that Defendant sought and why the sentence was longer than he had argued for should be precluded.

That Judge Guilford sentenced Defendant to 90 months is not relevant and the Government is precluded from mentioning it under Rule 403. The Government may permissibly state that Judge Guilford sentenced Defendant to substantially more time than the defense suggested and argued for and leave it at that. Should the Defendant open the door to further details during cross-examination, then the door would remain open for the Government as well.

**E.     Description Of Underlying Case**

Details about the underlying fraud case are irrelevant to this matter, and the Government is precluded from introducing anything more than a very general description of it.  Defendant has indicated that he intends to elicit testimony that the underlying crime was not a violent one.  Such testimony is not precluded under this ruling, but the Court cautions, as it did at the August 8, 2018, hearing, that Defendant take care when cross-examining on the topic, as opening the door opens it for both sides.

## V. CONCLUSION AND ORDER

The motions have now been decided and counsel and parties are expected to abide by the rulings completely.  Failure to so abide will be met with significant sanctions.

IT IS SO ORDERED.

Dated:  **November 16, 2018**             **/s/ Lawrence J. O'Neill**
UNITED STATES CHIEF DISTRICT JUDGE