McGREGOR W. SCOTT
United States Attorney
ANGELA L. SCOTT
HENRY Z. CARBAJAL
Assistant United States Attorney
2500 Tulare Street, Suite 4401
Fresno, CA 93721
Telephone: (559) 497-4000
Facsimile: (559) 497-4099

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 1:17-CR-00136-LJO |
| Plaintiff, | GOVERNMENT'S RESPONSE TO DEFENDANT'S OBJECTIONS TO THE PSR AND POSITION WITH RESPECT TO SENTENCING FACTORS |
| v. | |
| CRAIG SHULTS, | |
| Defendant. | DATE: March 11, 2019 TIME: 10:30 a.m. COURT: Hon. Lawrence J. O'Neill |

## I.   **INTRODUCTION**

On December 14, 2018, defendant Craig Shults ("Defendant") was convicted of violating Title 18, United States Code, section 115(a)(1)(B) (retaliating against a federal official by threat of assault), following a jury trial. The United States Probation Office (USPO) completed its Presentence Investigation Report (PSR) calculating a total offense level of 26. PSR ¶ 41. Defendant's criminal history category is III. *Id.* at ¶ 50. This corresponds to a Guidelines range of 78-97 months. *Id.* at ¶ 87. The statutory maximum sentence that the Court can impose for a violation of section 115(a)(1)(B) as charged is six years. See 18 U.S.C. § 115(b)(4); PSR ¶ 86.

The government agrees with the PSR's total offense level calculation of 26 and criminal history category of III. For the reasons set forth below, the government also agrees with the PSR's recommendation of 72 months, which is the statutory maximum for the offense as charged. The

government opposes defendant's objections as explained below.

## II.     STATEMENT OF FACTS

On April 18, 2012, defendant was indicted in the Central District of California on multiple counts of wire fraud, in violation of 18 U.S.C. § 1343.  Declaration of Angela Scott ("Scott Decl."), ¶ 2, Exh. A.  He was arraigned on April 25, 2012 and released on bond.  Scott Decl., ¶ 3, Exh. B, Doc. 23.  On October 21, 2013, United States District Judge Andrew Guilford found that defendant had violated his pretrial supervision conditions, revoked his bond, and ordered him remanded into federal custody pending trial.  *Id.* at Doc. 172.  His pretrial bond was revoked apparently because he was involved again in fraudulent activity that included the solicitation of investment funds.  *See* Scott Decl., ¶¶ 22, 23 Exh. S, T.

In late 2013 while housed at the Metropolitan Detention Center, defendant Shults told another inmate, Carlos Galeana, that he was angry with Judge Guilford regarding his bond revocation.  *See* PSR ¶ 6.  Shults said that he wanted to "horse fuck" Judge Guilford and have Secret Service agents dig up dirt on him.  *See id.*

On February 19, 2014, a jury convicted defendant on seven of the wire fraud counts with which he was charged.  PSR ¶ 7.  According to the PSR for that case, defendant defrauded 46 people of $6,063,057.  *See* PSR ¶ 49.  On November 10, 2014, Judge Guilford sentenced defendant to serve a 90-month term of imprisonment and ordered defendant to pay $2,000,000 in restitution.  PSR ¶ 7; Scott Decl. ¶ 2, Exh. B, Doc. 503.  On September 16, 2015, defendant moved for bond pending his appeal, which Judge Guilford denied.  PSR ¶ 7.

By September 2016, defendant was incarcerated at Taft Correctional Institution ("Taft CI") serving the 90-month sentence imposed by Judge Guilford.  Scott Decl., ¶ 4.  While at Taft CI, defendant made several threats to harm Judge Guilford to a fellow inmate, William Knox.  *See* Scott Decl., ¶ 5, Exh. C, (Knox Transcript) 12/13/18 RT 4:22-9:8; 23:24-27:11; 32:8-35:20; 86:24-101:11.  Some of defendant's threats were captured on the December 11, 2016 recording that was admitted into evidence at defendant's trial.  *See id.* at 103:16-109:2; *see also*, Scott Decl., ¶ 6, Exh. D.  These threats included, "… I'm hunting him," "… I'm going to get rid of him," "… somebody just comes up and fucking whacks him out …," "Put him in a fucking rubber room.  Straight jacket his ass.  Feed him

intravenously." *Id.*

Defendant revealed to Knox that he knew certain personal information about Judge Guilford, including his basketball schedule. *See* Scott Decl., ¶ 5, Exh. C, (Knox Transcript) 12/13/18 RT. 26:18-27:11. During the December 11, 2016 recording, defendant himself stated, "Andy Guilford plays basketball every Thursday, I know he plays basketball every Thursday…" *See* Scott Decl., ¶ 6; Exh. D (Govt Trial Exh. 41A). Additionally, as FBI Special Agent Callahan's testimony at trial indicated, an internet article containing personal information about Judge Guilford was found among defendant's prison belongings. *See* Scott Decl., ¶ 7; Exh. E.

Defendant also made various comments on prison jail calls and in prison emails that demonstrated his animosity toward Judge Guilford. *See* Scott Decl., ¶¶ 8, 18-21 Exhs. F, O, P, Q, and R.

After Taft CI became aware of the threats charged in this case, defendant was transferred to the Federal Correctional Institution in Lompoc, California ("FCI Lompoc"). At FCI Lompoc, defendant met Pavel Valkovich. Scott Decl., ¶ 9, Exh. G (Valkovich Transcript) 12/11/18 RT 37:1-38:7; 42:1-4; *see also* Scott Decl. ¶ 10, Exh. H. As Mr. Valkovich testified at trial, defendant initially expressed his anger toward Judge Guilford. Scott Decl., ¶ 9, Exh. G (Valkovich Transcript) 12/11/18 RT 38:15-38:21. Aware that Mr. Valkovich was incarcerated for murder solicitation and was also in need of money, defendant offered to pay Mr. Valkovich to use his "hitmen" contacts to arrange Judge Guilford's murder. *Id.* at 40:25-43:6. Defendant approached Mr. Valkovich with this request on several occasions, eventually adding an increased fee for the murder of Knox. *Id.* at 50:21-51:25; 56:12-20. Defendant provided Mr. Valkovich with the name and number of an individual who would act as a "go-between," but instructed Valkovich not to tell this person what was actually going on. *Id.* at 52:1-53:20. Defendant instructed Valkovich only to tell the individual that he was "able to come through." *Id.* at 52:1-6. Defendant Valkovich provided this person's name (Rick) and phone number to law enforcement. *See id.* at 52:15-53:13; *see also*, Scott Decl., ¶ 11, Exh. I. Agents cross-referenced that name and number to Shults's Taft CI visitor list, and found a "Richard" with the same phone number on that list. *See* Scott Decl., ¶ 12 Exh. J.

Mr. Valkovich also informed the FBI that he had mentioned defendant's request in passing to a

1   fellow inmate and friend, Edwan Dablan.  *See* Scott Decl. ¶ 9, Exh. G (Valkovich Transcript) 12/11/19

2   RT 68:11-70:9.  Agents interviewed Dablan, who, according to their report of the interview, stated that

3   Valkovich told him that Shults said he had an issue with a federal judge out of Los Angeles and some

4   type of problem from the camp at Taft CI.  *See* Scott Decl., ¶ 13, Exh. K.  Valkovich also told Dablan

5   that Shults told Valkovich "some stuff that was illegal," but Dablan was not sure what kind of stuff

6   Shults mentioned.  *Id.*  At trial, Dablan was called as a witness by the defense and indicated that he had

7   not heard from Valkovich about Shults's plan to harm Judge Guilford.  See Scott Decl., ¶ 14.

8          Ultimately, the jury found defendant guilty of a violation of 18 U.S.C. 115(a)(1)(B) - Retaliating

9   Against a Federal Official by Threat of Assault.  In its special verdict form, the jury unanimously agreed

10  that defendant committed the crime on December 11, 2016.  The additional dates of September 2016,

11  October 25, 2016 and November 27, 2016 were also listed on the special verdict form, but the jury did

12  not find defendant guilty beyond a reasonable doubt of having threatened Judge Guilford on those

13  additional dates.

14          **III.       ANALYSIS OF THE SECTION 3553(A) FACTORS**

15         In sentencing a defendant, 18 U.S.C. § 3553(a)(1) requires the Court to consider the nature and

16  circumstances of the offense and the history and characteristics of defendant.  18 U.S.C. § 3553(a)(2)

17  requires the Court to consider the need for the sentence to reflect the seriousness of the offense, to

18  promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence to

19  criminal conduct, and to protect the public from defendant's further crimes.

20          **A.       The Serious Nature of the Offense Supports a Guidelines Sentence**

21         Defendant repeatedly threatened to harm a federal judge because he was unhappy with several of

22  the judge's decisions.  Originally, he included the prosecutor and the pretrial services officer assigned to

23  his fraud case among those whom he sought to harm.  He made these threats repeatedly.  Indeed, he

24  expressed his desire to harm Judge Guilford to three different inmates over the course of several years.

25  The FBI's investigation also revealed that defendant possessed specific personal information about

26  Judge Guilford, including his basketball schedule.  His recorded prison calls and emails demonstrated

27  that he despised the judge and felt that he was treated unjustly.  Both Knox and Valkovich testified that

28  defendant wanted to kill Judge Guilford, and defendant's own statements from the December 11, 2016

1   recording corroborated these witnesses.

2       Threats to harm anyone are abhorrent, but threats to harm one's sentencing judge are especially

3   serious in light of the chilling effect such threats can have on the justice system.  Judges, prosecutors and

4   pretrial services officers are entitled to do their job without the threat of being "horse fucked," "hunted,"

5   killed or otherwise harmed.

6       Moreover, such threats demand the resources of investigating agencies.  The US Marshals

7   investigated the 2014 threat defendant made to the inmate at the MDC.  The FBI extensively

8   investigated the threats he made to Knox and Valkovich, including listening to countless hours of

9   defendant's jail calls and reviewing hundreds of his emails in an attempt to thwart any attack.

10  Additionally, the US Marshals notified Judge Guilford of the threats, and both the prosecution and the

11  defense subpoenaed Judge Guilford to testify at trial.

12      Given the repetitive and specific nature of the violent threats, these threats were serious and

13  support the imposition of a 72-month sentence.

14      **B.**    <u>**The History and Characteristics of the Defendant Support a 72-Month Sentence**</u>

15      Defendant was in prison when the current offense occurred because he had been sentenced to a

16  90-month term for real estate fraud.  He defrauded 46 people of $6,063,057.  PSR ¶ 49.  His pretrial

17  bond was revoked apparently because he was involved again in fraudulent activity that included the

18  solicitation of investment funds.  Scott Decl., ¶¶ 22, 23, Exhs. S, T.

19      In addition to his repeated dishonesty and his ability to prey on the those who trust him,

20  defendant also appears to struggle with accepting responsibility for his actions.  His prison emails and

21  jail calls demonstrate that he blames others, including Judge Guilford, for his fraud conviction.  He has

22  yet to take responsibility for his current offense despite having been captured threatening Judge Guilford

23  on a recording.

24      Finally, defendant is a threat to the safety others.  His comments on the December 11, 2016

25  recording make clear that he desired to harm Judge Guilford.  Mr. Valkovich's testimony demonstrated

26  that defendant took this desire to the next level by attempting to hire someone to carry out his threats.

27  Additionally, in defendant's jail calls, he identified Valkovich as an informant, noted that he would

28  "have a real problem" at Lompoc because "they don't like snitches," and then told the caller to tell

"Gari" (presumably Lompoc FCI inmate Gari Aldridge, who testified in the defendant's case at trial) that Valkovich "immediately went to SIS and became a witness against me." *See* Scott Decl., ¶ 10, Exh. H. He further stated that "I need Gari to tell that to all the guys that are there, so if he comes back, that they know he's a, a rat, and to avoid him so they don't get in trouble." *Id.* Defendant effectively told a prison inmate to tell other inmates that Valkovich is a "rat," which in the same call, he admits would endanger Valkovich. Defendant has repeatedly demonstrated that he is inclined to engage in dangerous revenge and retaliation against those who he feels have wronged him.

Defendant's history and characteristics indicate that he has been and remains a danger to society in a variety of ways. This factor weighs strongly in favor of a 72-month sentence.

**C.** **The Need for the Sentence to Provide Just Punishment & Adequate Deterrence**

The Court is also required to consider the need for the sentence "… to promote respect for the law, [] to provide just punishment for the offense, to afford adequate deterrence to criminal conduct; [and] to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(2)(A)-(C). Defendant's charged crime warrants a significant punishment. As noted above, a defendant's threats against his judge ultimately threaten the integrity of our judicial system. Such conduct also triggers a swift and extensive response from those agencies charged with protecting the federal judiciary. Consequently, defendants must be discouraged from making such comments, whether it be directly to their judge or to other inmates. A 72-month sentence is just punishment for this serious crime, and will deter other inmates from engaging in similar conduct.

Moreover, a significant sentence is needed to deter the defendant himself from engaging in additional illegal activity. As noted above, he was undeterred by his original fraud indictment, subsequently violating his pretrial release through conduct similar to the fraud for which he was originally indicted. Instead of accepting responsibility for his actions in the fraud case, he subsequently lashed out at those involved in his prosecution, ultimately making serious threats against, and attempting to solicit the murder of, Judge Guilford. Valkovich testified that defendant eventually offered an additional fee for the murder of the individual who had been "snitching" on him at Taft CI. *See* Scott Decl., ¶ 9, Exh. G, (Valkovich Transcript) 12/11/18 RT 50:21-51:25; 56:12-20. Defendant's jail calls indicate that he has engaged in similar conduct toward Valkovich. *See* Scott Decl., ¶ 10, Exh. H. A 72-

month sentence is warranted here to deter this criminal conduct and protect the public.

## IV.   DEFENDANT'S OBJECTIONS TO THE PSR

### A.   Defendant's Objection to the Inclusion of PSR Paragraphs 5 and 6 in the PSR

Defendant objects to the inclusion of the information provided by the Carlos Galeana about defendant's 2014 threats to harm Judge Guilford. Defendant claims that defendant's 2014 threats do not constitute relevant conduct. The government agrees with the USPO's analysis, which concludes that defendant's 2014 statements are relevant conduct.

### B.   Defendant's Objection to the Inclusion of PSR Paragraphs 8-11, 13-15 and 17

Defendant objects to the inclusion of these paragraphs, claiming that the government has failed to prove the allegations by a preponderance of the evidence. The Court, however, "may consider relevant information without regard to its admissibility under the Rules of Evidence at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy." U.S.S.G. § 6A1.3; *see also United States v. Marin-Cuevas*, 147 F.3d 889, 894-95 (9th 1998). Here, law enforcement reports of Knox's interviews support the allegations in the PSR, and Knox testified consistently with those allegations at trial. Consequently, the allegations have sufficient indicia of reliability to be considered by this Court, and they should not be stricken from the PSR.

The allegations in the paragraphs to which the defendant objects appear to support the applications of two Guidelines: (1) the +6 for conduct evidencing an intent to carry out the threat at PSR ¶ 36; and (2) the +2 for multiple threats at PSR ¶ 37. To the extent that the USPO is suggesting an application of a Guideline based on these paragraphs, then the government has the burden of proving the facts that support the imposition of that Guideline by a preponderance of the evidence. *See* U.S.S.G. § 6A1.3, Commentary; *see also Marin-Cuevas*, 147 F.3d at 894-95.[1] The government has done so.

---

[1] Defendant does not argue that these enhancements require an application of the clear and convincing evidence standard, nor does the government believe that such a standard applies here. *See United States v. Hymas*, 780 F.3d 1285, 1289-90 (9th Cir. 2015) (noting that "District courts generally use the preponderance of the evidence standard of proof when finding facts at sentencing," but that "the higher clear and convincing standard may apply … when a sentencing factor has an extremely disproportionate effect on the sentence relative to the offense of conviction … [p]articularly where a severe sentencing enhancement is imposed on the basis of uncharged or acquitted conduct.") *citing United States v. Treadwell*, 593 F.3d 990, 1000 (9th Cir.2010); *United States v. Mezas de Jesus*, 217 F.3d 638, 642 (9th Cir.2000). Even if the Court were to find that the clear and convincing standard applies here, the government believes that this heightened standard would be satisfied for the reasons set

Regarding proving multiple threats, the defense called Knox to testify at trial.  During the defense case and in response to defense counsel's questions, Knox testified about the threats that defendant made against Judge Guilford on the day of the recording, as well as other threats that defendant made prior to the recording.  *See* Scott Decl. ¶ 5, Exh. C, (Knox Transcript) 12/13/18 RT 4:22-9:8; 23:24-27:11; 32:8-35:20.  Knox also provided this information during the government's questions on cross-examination. *Id.* at 86:24-101:11.  Knox's testimony established that defendant made threats against Judge Guilford repeatedly including in or about April 2016 (*Id.* at 86:24-88:20); September 2016 (*Id.* at 4:22-9:8; 90:18-92:18); on or about October 27, 2016 (*Id.* at 96:21-98:10); and on or about November 23, 2016 (*Id.* at 25:9-27:11; 98:11-99:7).

Defendant argues that the government has failed to prove the allegations at issue by a preponderance standard because of Knox's credibility issues.  The defense, however, ignores that Knox's statements were corroborated by the December 11, 2016 recording.  Moreover, two other witnesses – Galeana and Valkovich – testified to hearing Shults make threats to harm Judge Guilford. Defendant himself implicitly admitted that he *repeatedly* made the threats at issue.  In his August 28, 2017 jail call, he stated "I don't think I should have to give up six years of my life because I had **four, five bad days**…"  *See* Scott Decl., ¶ 15, Exh. L.  On July 7, 2018, defendant said, "…who the fuck would have ever thought that … somebody was wearing a fucking wire on a bullshit conversation … you know, but, or **multiple shit conversations** …"  *See id.,* ¶ 16, Exh. M.  On the date of the prison recording, December 11, 2016, defendant said to Knox, "… in the middle of the night sometimes I wake up and say oh my God, this guy knows about me, he knows enough to put me away for life," indicating that he had already expressed his desire to harm Judge Guilford before the date of the recording.  *See id.,* ¶ 17, Exh. N.  Each of these statements indicates that defendant made threats on multiple occasions. Defendant's reference on December 11, 2016 to waking up in the middle of the night demonstrates that he made his incriminating statements *before* the December 11 recording.

Other of defendant's jail calls and prison emails also generally corroborate Knox by demonstrating that defendant indeed held a grudge against Judge Guilford.  For instance, in an email

---

forth herein.

dated October 9, 2016, he stated "… Each day that goes buy is another day of my life gone for no reason except because I got screwed over in my trial starting with the jury and going straight through to the sentencing judge …"  Scott Decl., ¶ 18, Exh. O.  In a November 3, 2016 email, defendant stated, "… If they did not remand me almost nothing that happened to me would have happened.  I got screwed by the judge and the prosecutor …"  *Id.* at ¶ 19, Exh. P.  In another November 3, 2016 email, defendant stated, "… I finally got a copy of my appellate brief.  Reading it made me sick to my stomach seeing all that the prosecutors did that violated my constitutional rights and the judge allowed it."  *Id.* at ¶ 20, Exh. Q.  In a November 13, 2016 jail call, defendant stated, "Cause they, they, they violated my constitutional rights, they broke the rules to get me here and the court, the Judge let them and it's pretty obvious that he let them do it, so."  *See id.* at ¶ 8, Exh. F.  In a November 27, 2016 email, defendant said, "… They broke the law to put me in here.  The judge and the prosecutors are the fucken criminals not me …"  *Id.* at ¶ 21, Exh. R.

In support of his argument, defendant noted in his Formal Objections that "The jury specifically found that the government had failed to prove beyond a reasonable doubt that Mr. Shults made threats in September 2016, on October 25, 2016, and on November 27, 2016."  Def. Formal Obj. at 2.  The jury did not make such a finding.  While the jury did not come to a unanimous verdict regarding those dates, they also did not unanimously acquit defendant of the alleged conduct on those dates.  At best, one can deduce that all jurors did not agree that the government had proved its case beyond a reasonable doubt regarding those other dates.  Whether some jurors did conclude that the government met its burden – and exactly how many jurors drew that conclusion – remains unknown.

The credibility issues that the defense raises regarding Knox are not sufficient to overcome the considerable corroboration in this case, especially in light of a preponderance standard.  Consequently, the government has sufficiently established the existence of multiple threats.

Regarding the imposition of a six-level increase for conduct evidencing an intent to carry out the threat, the USPO relies in part on defendant's knowledge of Judge Guilford's personal information.  *See* PSR ¶ 36.  The government has proved this, too, by at least a preponderance of evidence.  Knox testified about defendant's awareness of Judge Guilford's basketball schedule, his country club, and where he lives.  *See* Scott Decl., ¶ 5; Exh. C (Knox Transcript) 12/13/18 RT 26:18-27:11.  Corroborating Knox's

testimony was defendant himself when, during the December 11, 2016 recording, he stated, "Andy Guilford plays basketball every Thursday, I know he plays basketball every Thursday…"  *See* Scott Decl., ¶ 6; Exh. D (Gov't Trial Exh. 41A).  Additionally, as FBI Special Agent Callahan's testimony at trial indicated, an internet article containing personal information about Judge Guilford was found among defendant's prison belongings.  *See* Scott Decl., ¶ 7; Exh. E.  Consequently, the government has sufficiently established defendant's knowledge of Judge Guilford's personal information in support of the imposition of a six-level increase for conduct evidencing an intent to carry out the threat.  Whether defendant had accurate knowledge of Judge Guilford's routine is irrelevant.  The fact that he obtained personal information about Judge Guilford indicates an intent to carry out the threat.

## C.    Defendant's Objection to the Inclusion of Paragraphs PSR 20-25

Defendant makes similar credibility objections to the PSR's reference to information that Pavel Valkovich provided.  Like the Knox allegations, law enforcement reports of Valkovich's interviews support paragraphs 20-25 in the PSR, and Valkovich testified consistently with his prior statements.  For the same reasons set forth above, the allegations have sufficient indicia of reliability to be considered by this Court, and they should not be stricken from the PSR.  *See* U.S.S.G. § 6A1.3; *Marin-Cuevas*, 147 F.3d at 894-95.

The allegations in paragraphs 20-25 appear to support the application of two Guidelines:  (1) the +6  at PSR ¶ 36 for conduct evidencing an intent to carry out the threat; and (2) the +2 at PSR ¶ 37 for multiple threats.  As noted above, to the extent that the USPO is suggesting an application of a Guideline based on these paragraphs, then the government has the burden of proving the facts that support the imposition of that Guideline by a preponderance of the evidence.  *See* U.S.S.G. § 6A1.3, Commentary; *see also Marin-Cuevas*, 147 F.3d at 894-95.  The government has met its burden here as well.

Valkovich testified consistently with information he previously provided to the FBI.  He also claimed that defendant gave him the name ("Rick") and number of an individual who was to serve as a "go-between" for Shults's scheme.  Valkovich provided that name and number to law enforcement, and it matched the name ("Richard") and number of an individual listed as a "friend" on defendant's inmate visitor list.  *See* Scott Decl., ¶¶ 11, 12, Exh. I, J.

While defendant urges the Court to discredit Valkovich in part because he is a convicted felon,

the very fact of his conviction partly corroborates Valkovich's testimony.  Indeed, as Valkovich

testified, it was likely his conviction for murder solicitation, and his perceived connections with

"hitmen," that made him defendant's prime candidate to carry out defendant's scheme. *See* Scott Decl.,

¶ 9, Exh. G (Valkovich Transcript) 12/11/19 RT 40:25-43:6.

The defense makes much of Edwan Dablan's testimony at trial.  Valkovich testified, however,

that he mentioned Shults's request only once to Dablan in passing and without detail.  *See id.* at 68:11-

70:9.  Moreover, when the FBI initially interviewed Dablan, he stated that Valkovich told him that

Shults said he had an issue with a federal judge out of Los Angeles and some type of problem from the

camp at Taft CI.  *See* Scott Decl., ¶ 13, Exh. K.  Valkovich also told Dablan that Shults told Valkovich

"some stuff that was illegal," but Dablan was not sure what kind of stuff Shults mentioned.  *Id.*

Defedant also argues that Valkovich is not credible due to his knowledge of the *Walthall* case.

Valkovich stated that he had heard of the case while he was at Lompoc, but indicated that he had limited

knowledge of it.  *See* Scott Decl., ¶ 9, Exh. G (Valkovich Transcript) 12/11/19 RT 78:23-80:17; 85:19-

86:11.  Interestingly, he also testified at trial that he did not remember the name of defendant's judge.

*See* Scott Decl., ¶ 9, Exh. G (Valkovich Transcript) 12/11/19 RT 42:5-18.  If he were concocting the

entire story based on the *Walthall* case and solely to earn a reduced sentence, one would think that he

would have at least provided the FBI with the name of the judge that defendant threatened, especially

considering Judge Guilford was also who Walthall threatened.

Furthermore, Valkovich's testimony is at least somewhat corroborated by Knox and Galeana,

who both testified to defendant's anger with, and desire to harm, Judge Guilford.  Valkovich's testimony

is also supported by defendant's own statements in the calls and emails set forth above regarding his

enmity toward Judge Guilford.

//

//

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# V.        <u>CONCLUSION</u>

For the reasons stated above, the government believes a 72-month sentence is appropriate here, and that the PSR should remain unchanged.


Dated:  March 4, 2019                              McGREGOR W. SCOTT
                                                    United States Attorney


                                          By:   /s/ ANGELA L. SCOTT
                                                    ANGELA L. SCOTT
                                                    HENRY Z. CARBAJAL
                                                    Assistant United States Attorneys

## DECLARATION OF ANGELA SCOTT

1.      I am an Assistant U.S. Attorney assigned to the Bakersfield Office in the Eastern District of California.  I am one of the attorneys representing the government in *United States v. Craig Shults*, 1:17-CR-136-LJO.

2.      Attached hereto as Exhibit A is a true and correct copy of a federal indictment charging defendant with wire fraud in the Central District of California, *United States v. Craig Shults*, 8:12-CR-90-AG.

3.      Attached hereto as Exhibit B is a true and correct copy of the docket from United States v. Craig Shults, 8:12-CR-90-AG.

4.      I have been informed by the lead case agent for this case, Federal Bureau of Investigation Special Agent Nicholas Callahan, that in or about September 2016, SA Callahan was informed by a representative at Taft Correctional Institution ("Taft CI") that defendant was incarcerated at Taft CI and was serving a sentence imposed in United States v. Craig Shults, 8:12-CR-90-AG.

5.      Attached hereto as Exhibit C is true and correct copy of relevant pages of the transcript of William Knox's December 13, 2018 trial testimony in *United States v. Craig Shults*, 1:17-CR-136-LJO.

6.      Attached hereto as Exhibit D is a true and correct copy of the government's trial exhibits 41A and 43A, which were marked and displayed to the jury.  They are transcripts of clips from the December 11, 2016 recording between defendant and William Knox.  The corresponding audio was admitted at trial in the instant matter.

7.      Attached hereto as Exhibit E is a true and correct copy of the government's trial exhibit 14, which was admitted at trial.

8.      Attached hereto as Exhibit F is a true and correct copy of the government's trial exhibit 45A, which was marked and displayed to the jury.  It is a transcript of a portion of defendant's November 13, 2016 jail call.  The corresponding audio was admitted at trial.

9.      Attached hereto as Exhibit G is true and correct copy of relevant pages of the transcript of Pavel Valkovich's December 11, 2018 trial testimony in *United States v. Craig Shults*, 1:17-CR-136-LJO.

10.     Attached hereto as Exhibit H is a true and correct copy of the government's trial exhibits 67A and 69A.  They are transcripts of clips of defendant's recorded prison call dated October 18, 2017.  These exhibits and their corresponding audio were marked and included on the government's exhibit list.  The government did not seek their admission at trial.

11.     Attached hereto as Exhibit I is a true and correct copy of the government's trial exhibit 64, which was admitted at trial.

12.     Attached hereto as Exhibit J is a true and correct copy of the first page of government's trial exhibit 82, which was admitted at trial.

13.     Attached hereto as Exhibit K is a true and correct redacted copy of the FBI's interview report of Edwan Dablan, which was produced to the defense in discovery.

14.     I was present in the courtroom during Mr. Dablan's testimony.  To the best of my recollection, he indicated that he had not heard from Mr. Valkovich about a threat to harm Judge Guilford.  I have conferred with my co-counsel, AUSA Henry Carbajal, who was also present during Mr. Dablan's testimony.  AUSA Carbajal agrees with my recollection.  I have not obtained a transcript of Mr. Dablan's trial testimony, but I will do so at the Court's request.

15.     Attached hereto as Exhibit L is a true and correct copy of the government's trial exhibit 57A, which was marked and displayed to the jury.  It is a transcript of a portion of defendant's August 28, 2017 jail call.  The corresponding audio was admitted at trial.

16.     Attached hereto as Exhibit M is a true and correct copy of the government's trial exhibit 62A, which was marked and displayed to the jury.  It is a transcript of a portion of defendant's July 7, 2018 jail call.  The corresponding audio was admitted at trial.

17.     Attached hereto as Exhibit N is a true and correct copy of the government's trial exhibit 44A, which was marked and displayed to the jury.  It is a transcript of a clip from the December 11, 2016 recording between defendant and William Knox.  The corresponding audio was admitted at trial.

18.     Attached hereto as Exhibit O is a true and correct redacted copy of the government's trial exhibit 75, an October 9, 2016 email from defendant's prison email account, which was admitted at trial.

19.     Attached hereto as Exhibit P is a true and correct redacted copy of the government's trial exhibit 76, a November 3, 2016 email from defendant's prison email account, which was admitted at trial.

20.     Attached hereto as Exhibit Q is a true and correct redacted copy of the government's trial exhibit 77, a November 3, 2016 email from defendant's prison email account, which was admitted at trial.

21.     Attached hereto as Exhibit R is a true and correct redacted copy of the government's trial exhibit 77, a November 27, 2016 email from defendant's prison email account, which was admitted at trial.

22.     Attached hereto as Exhibit S is a true and correct copy of a Petition for Action of Conditions of Pretrial Release signed by Judge Guilford on September 20, 2013.

23.     Attached hereto as Exhibit T is a true and correct copy of a criminal minutes regarding Judge Guilford's revocation of defendant's bond.

I declare and affirm under penalty of perjury that the foregoing is true and correct to the best of my knowledge.  Executed on March 4, 2019, at Bakersfield, CA.


                                                /s/ Angela L. Scott_____
                                                ANGELA L. SCOTT
                                                Assistant U.S. Attorney