# EXHIBIT A

FILED

2012 APR 18 PM 4:31

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
SANTA ANA

BY _____

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

September 2011 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA, | SA CR SA CR12-0090 |
| Plaintiff, | I N D I C T M E N T |
| v. | [18 U.S.C. § 1343: Wire Fraud] |
| CRAIG SHULTS, JOSEPH HAYMORE, PAUL LICAUSI, SHERIDAN SNYDER, ANDREW WARDEIN, and SYLVIA MELKONIAN, | |
| Defendants. | |

The Grand Jury charges:

COUNTS ONE THROUGH FIVE

[18 U.S.C. § 1343]

I. INTRODUCTION

At all times relevant to this Indictment:

1. Defendant CRAIG SHULTS resided and conducted business in Orange County, in the Central District of California, and

elsewhere. Defendant SHULTS owned, controlled, or was affiliated with the following companies: Craig M. Shults, Inc.; Surf City Escrow; National Real Estate Escrow Services, Inc.; Cyntrix, Inc.; Empirical Media, Inc., also known as ("a.k.a.") Emperical Media; Wealth Out of Chaos, Inc.; Open Market Realty Corp.; National Diversified Equities, LLC; and Discount Loan, Inc.

2. Defendant JOSEPH HAYMORE resided in Port St. Lucie, Florida, and conducted business in Orange County, in the Central District of California, and elsewhere. Defendant HAYMORE owned, controlled, or was affiliated with the following companies: United Capital Group, LLC; United Capital Fund, LLC; Black Star Investments, LLC; Lakeview Capital, LLC, a.k.a. Lakeview Investments; and Denver REO Group, LLC.

3. Defendant PAUL LICAUSI resided in Fort Pierce, Florida, and conducted business in Orange County, in the Central District of California, and elsewhere. Defendant LICAUSI owned, controlled, or was affiliated with the following companies: United Capital Group, LLC; United Capital Fund, LLC; Black Star Investments, LLC; Lakeview Capital, LLC, a.k.a. Lakeview Investments; Denver REO Group, LLC; and Optimum Capital Partners, Inc.

4. Defendant SHERIDAN SNYDER resided in Turtletown, Tennessee, and conducted business in Orange County, in the Central District of California, and elsewhere. Defendant SNYDER owned, controlled, or was affiliated with the following companies: The Closing Place, Inc.; Trinity Land Title, Inc.; and Tri-State Land Title Co.

1  5. Defendant ANDREW WARDEIN resided and conducted business in Orange County, in the Central District of California, and elsewhere. Defendant WARDEIN owned, controlled, or was affiliated with the following companies: Creative Realty Solutions, LLC, doing business as ("d.b.a.") TCS Foreclosures; and Trinity Consulting Services, LLC.

6. Defendant SYLVIA MELKONIAN resided and conducted business in Orange County, in the Central District of California, and elsewhere. Defendant MELKONIAN was employed by Creative Realty Solutions, LLC; Wealth Out of Chaos, Inc.; National Real Estate Escrow Services, Inc.; Open Market Realty; Trinity Consulting Services, LLC; and TCS Foreclosures.

II. THE SCHEME TO DEFRAUD

7. Beginning in or about July 2009, and continuing through in or about July 2010, in Orange County, within the Central District of California, and elsewhere, defendants SHULTS, HAYMORE, LICAUSI, SNYDER, WARDEIN, and MELKONIAN (hereinafter "defendants") knowingly and with intent to defraud, devised, participated in, and executed a scheme to defraud victims as to material matters, and to obtain money and property from victims by means of material false and fraudulent pretenses, representations, and promises, and the concealment of material facts.

8. The fraudulent scheme was designed to operate and did operate, as follows:

(a) Defendants engaged in a scheme in which they purportedly would sell real property to investors.

(b) Defendant SHULTS, claiming to be the Chief

1 Financial Analyst for Creative Realty Solutions, LLC ("CRS"),
2 solicited investors to purchase real property at seminars held in
3 Irvine and Costa Mesa, California, Orlando, Florida, Dallas,
4 Texas, and in "webinars" conducted on the Internet.

5     (c) Defendants HAYMORE and LICAUSI, doing business as
6 ("d.b.a") United Capital Group, LLC ("UCG"), United Capital Fund,
7 LLC ("UCF"), Black Star Investment, LLC ("Black Star"), Lakeview
8 Capital, LLC, a.k.a. Lakeview Investments ("Lakeview"), and
9 Denver REO Group, LLC, purportedly would sell properties and
10 transfer title to defendant WARDEIN, d.b.a. CRS and TCS
11 Foreclosures ("TCS").

12     (d) Defendant WARDEIN would then purportedly transfer
13 title from CRS/TCS to investors who tried to purchase properties
14 during and after seminars.

15     (e) Defendant SNYDER, d.b.a. The Closing Place and
16 Trinity Land Title, was supposed to act as the escrow agent on
17 sales of properties and the transfer of title from UCG/UCF to
18 CRS/TCS, and from CRS/TCS to investors, and to hold investor
19 funds until the close of escrow.

20     (f) Defendant MELKONIAN worked at CRS/TCS and assisted
21 CRS/TCS and defendants WARDEIN and SHULTS in the purported sale
22 of properties to investors, the assignment of properties to
23 investors, and the completion of paperwork needed for the
24 transfer of funds and title to the properties.

25     (g) At seminars hosted by defendant WARDEIN and
26 CRS/TCS, defendant SHULTS told investors they could purchase
27 properties for $35,000 to $45,000 a piece. Defendant SHULTS
28 claimed the properties were repaired and met the standards of the

Federal Housing Administration ("FHA"), meaning they were in good enough condition for FHA financing. Investors would supposedly receive guaranteed rent of $600 per month for three months for each property purchased, and a property manager who would screen the properties and assist in collecting rent was supposed to be included in the purchase price. Defendant SHULTS stated that with the company's plan, investors would get a minimum of $60,000 each for their properties after one year. Defendant SHULTS told some investors that he would buy the properties back for $60,000 if a purchaser could not be found. Investors could not select their properties, but purportedly would be assigned properties.

    (h) During some seminars, defendant SHULTS used a PowerPoint presentation provided to him by defendant HAYMORE. The PowerPoint presentation contained the following claims: "The system is sound and proven!"; "Take advantage of our BULK-PURCHASING POWER! Lock-in CASH Flow Today"; "One Example: Purchase Price: $37,900; Typical: $500/month rent = $6,000/year, Taxes and Insurance: $1,000/year, Maintenance: $0 (Tenant/Buyer pays), Net Results: $5,000 cash flow/year (Before Debt Service, if any); Over 13% ROI ('Cash-on-Cash'), If nothing else you would have all your money back in 8 years!"; "If you could invest $37,900 per house and receive $500 a month rent forever, would you? If you could cash out of this house for $60,000 (utilizing our exit strategy program) in just one year? How many would you buy?"; "CREATED REAL VALUE of approx. $60,000 on your Note!!!"; "Are the homes occupied? No! We offer the services with our support package. We have Property Managers who can assist with getting the property rented"; and "Do the properties have title

insurance? Yes! Title insurance is through the support service."

(i) The Real Estate Sales Agreements investors signed with CRS stated that within 15 days of receipt of money for the full purchase price from investors, investors purportedly would receive the following: a data report, including the property address, average value, adjusted value, condition and preliminary title information; an exterior picture of the property; clear and marketable title; a home inspection report; and a guarantee of rent of $600 per month for the first three months of ownership.

(j) From approximately August 2009 until approximately January 2010, investors who signed Real Estate Sales Agreements with Wealth Out of Chaos, Inc., were told by defendant MELKONIAN and others to wire the purchase money to defendant SNYDER at The Closing Place. After approximately January 2010, investors who signed Real Estate Sales Agreements with Wealth Out of Chaos, Inc., were told by defendant MELKONIAN and others to wire the purchase money to Surf City Escrow or National Real Estate Escrow Services.

9. In order to execute the scheme, defendants knowingly participated in, or aided and abetted in, the making of materially false statements and false promises to investors, including, without limitation, the following:

(a) Within 15 days of payment of the purchase price, investors would receive property with clean and marketable title.

(b) The properties investors would buy were FHA-approved, meaning they were habitable, lien-free, and eligible for FHA financing.

(c) Investors would be able to sell their properties

for $60,000 or more after a year.

       (d) Investors would receive a guarantee of $600 a month rent for three months.

10. At the time defendants made the false statements, false promises, and material omissions, defendants knew that such statements and promises were false and that material omissions were made, in that:

       (a) Investors did not receive properties with clean and marketable title within 15 days of purchase.

       (b) Properties that investors were sold were not FHA-approved, in that they were not habitable, lien-free, or eligible for FHA financing.

       (c) Investors were not able to sell their properties for $60,000 or more in a year's time.

       (d) Investors did not receive three months of rent at $600 a month.

       (e) Investor funds were improperly disbursed from escrow by defendant SNYDER to defendants SHULTS, HAYMORE, LICAUSI, and WARDEIN prior to closing and without the knowledge of the investors.

11. By devising, participating in, and executing the above scheme, defendants caused approximately 37 investors to lose more than $4.2 million.

III. THE USE OF THE WIRES

12. On or about the dates set forth below, within the Central District of California and elsewhere, defendants SHULTS, HAYMORE, LICAUSI, SNYDER, WARDEIN, and MELKONIAN, for the purpose of executing the above-described scheme to defraud, transmitted,

and caused the transmission of, the following items by means of wire and radio communication in interstate and foreign commerce:

| COUNT | DATE | ITEM WIRED |
|---|---|---|
| ONE | 9/4/09 | $152,000 wire transfer from defendant SNYDER in North Carolina to the account of Creative Realty Solutions in California |
| TWO | 9/23/09 | Email from defendant MELKONIAN in California to victim D.R. in Texas attaching Real Estate Sales Agreement |
| THREE | 9/24/09 | $34,000 wire transfer from victim T.W.'s account in California to the account of The Closing Place at Branch Banking and Trust Co., in North Carolina |
| FOUR | 9/28/09 | Email from defendant MELKONIAN in California to victim O.A. in Colorado attaching Real Estate Sales Agreement Addendum |
| FIVE | 10/6/09 | Email from defendant MELKONIAN in California to victim L.S. in Georgia attaching Real Estate Sales Agreement Addendum |

COUNTS SIX THROUGH TEN

[18 U.S.C. § 1343]

13. Paragraphs 1 through 11 are incorporated by reference as if fully set forth herein.

14. On or about the dates set forth below, within the Central District of California and elsewhere, defendants SHULTS, WARDEIN, and MELKONIAN, for the purpose of executing the above-described scheme to defraud, transmitted and caused the transmission of the following items by means of wire and radio communication in interstate and foreign commerce:

| COUNT | DATE | ITEM WIRED |
|---|---|---|
| SIX | 2/11/10 | $1,100,000 wire transfer from victim M.H.'s account in California to the account of The Shults Companies d.b.a. Surf City Escrow in California |
| SEVEN | 3/1/10 | $45,000 wire transfer from victim C.W.'s account in California to the account of National Real Estate Escrow Service in California |
| EIGHT | 3/17/10 | $45,000 wire transfer from victim C.L.'s account in California to the account of National Real Estate Escrow Service in California |
| NINE | 4/20/10 | $45,000 wire transfer from victim R.G.'s account in California to the account of National Real Estate Escrow Service in California |

| COUNT | DATE | ITEM WIRED |
|---|---|---|
| TEN | 4/27/10 | $90,000 wire transfer from victim M.C.'s account in California to the account of National Real Estate Escrow Service in California |

A TRUE BILL

/S/
_____
Foreperson

ANDRÉ BIROTTE JR.
United States Attorney

ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Criminal Division

DENNISE D. WILLETT
Assistant United States Attorney
Chief, Santa Ana Branch Office

GREGORY W. STAPLES
Assistant United States Attorney

PATRICIA M. FUSCO
Special Assistant United States Attorney