1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

FOR THE EASTERN DISTRICT OF CALIFORNIA

10
11
12
13
14
15
16

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>CRAIG SHULTS,<br><br>Defendant. | No.  1:17-CR-00136-LJO-SKO<br><br><br>ORDER DENYING MOTION FOR RELEASE ON BAIL PENDING APPEAL<br><br>(Doc. No. 129) |

17

**INTRODUCTION**

18      Defendant Craig Shults moves for release pending appeal under 18 U.S.C. § 3143(b).

19  (Doc. No. 129.)  Having considered the parties' briefing in light of the entire record, the court will

20  deny defendant's motion.

21

**BACKGROUND**

22      On April 18, 2012, defendant was indicted in the Central District of California on multiple

23  counts of wire fraud, in violation of 18 U.S.C. § 1343.  (*See United States v. Craig Shults*, 8:12-

24  cr-00090-JLS (C.D. Cal.), Doc. No. 1.)  He was arraigned on April 25, 2012 and released on bond

25  with conditions under the supervision of pretrial services.  (*See id*. at Doc. No. 23.)  On October

26  21, 2013, for reasons that are discussed in greater detail below, United States District Judge

27  Andrew Guilford found that defendant had violated the conditions of his pretrial supervision by

28  /////

1

soliciting investments and ordered him remanded into federal custody pending trial.  (*Id*. at Doc. No. 172.)

While defendant was incarcerated at the Santa Ana Jail awaiting trial on the wire fraud charges, a witness who testified at trial in the instant case heard defendant make threats against Judge Guilford.  (Reporter's Transcript of Proceedings (RT) at 246.)  According to that witness, defendant was angry that Judge Guilford did not release him on bond and stated he was going to "bury" Guilford and "do all kind[s] of things to get him."  (*Id.*)  The witness later reported these threats.  (RT 246–247, 251.)

On February 19, 2014, a jury convicted defendant on all seven of the wire fraud counts with which he was charged in the U.S. District Court for the Central District of California.  (*Shults*, 8:12-cr-00090-JLS, Doc. No. 357.)  In his sentencing brief, defendant argued that the appropriate advisory guideline range for his offense called for a term of imprisonment between 57-71 months and that a "substantial variance" below that imprisonment range was appropriate.  (*Id*. at Doc. No. 463 at 3.)  On November 10, 2014, Judge Guilford sentenced defendant to serve a 90-month term of imprisonment and ordered him to pay $2,000,000 in restitution.  (*Id*. at Doc. No. 503.)  Defendant appealed his wire fraud conviction.  (*See United States v. Craig Shults*, No. 14-50515 (9th Cir.), Doc. No. 1.)  On September 16, 2015, defendant moved for his release pending his appeal.  (*Shults*, 8:12-cr-00090-JLS, at Doc. No. 644.)  On October 2, 2015, Judge Guilford denied defendant's motion for bail pending appeal.  (*Id*. at Doc. No. 648.)

By May 2016, defendant was incarcerated at Taft Correctional Institution ("Taft CI") serving the 90-month sentence imposed by Judge Guilford.  While defendant was housed at Taft CI, defendant threatened to assault Judge Guilford in retaliation for the judge's various rulings during the prosecution of defendant's criminal case.  Inmate, and later trial witness, W.K., heard defendant make these threats.  Moreover, defendant Shults was recorded stating, among other things about Judge Guilford, "I'm going to humiliate him first, then I'm going to get rid of him." (RT at 688.)  Defendant also stated he was "hunting" Judge Guilford, and described scenarios where Judge Guilford could be "whack[ed]" out.  (RT at 685, 690; *see also* Doc. No. 130-1, Ex. 12 (Excerpts from Government Trial Exhibits) at 1-3.)  After officials at Taft CI became aware of

1    the threats made by defendant Shults that underly the charges brought against him in this case,

2    defendant was transferred to the Federal Correctional Institution in Lompoc, California ("FCI

3    Lompoc").  There, another trial witness, P.V., met defendant after defendant was transferred to

4    FCI Lompoc in the beginning of 2017.  (RT at 166.)  According to P.V., defendant repeatedly

5    offered to pay him to arrange the murder of Judge Guilford, and the murder of someone at Taft CI

6    that had informed on defendant.  (RT 166–185.)  P.V. reported defendant's offers to him to prison

7    officials after P.V. was transferred from FCI Lompoc to Taft CI.  (RT 183–185.)

8          On February 13, 2017, defendant filed a motion with the Ninth Circuit Court of Appeals

9    seeking his release pending his appeal of his wire fraud conviction.  (*See Shults*, No. 14-50515,

10   Doc. No. 44.)  That request was denied on March 16, 2017, with the Ninth Circuit finding that

11   "the district court did not err in finding that appellant failed to show, by clear and convincing

12   evidence, that appellant is not likely to pose a danger to the safety of any other person or the

13   community if released."  (*Id*. at Doc. No. 51.)

14         On May 25, 2017, defendant was indicted in this case on one count of violating 18 U.S.C.

15   § 115(a)(1)(B) (retaliating against a federal official by threat).  (Doc. No. 1.)  On December 14,

16   2018, after a four-day trial, the jury convicted defendant on that charge.  (Doc. No. 98.)

17   Following his conviction, defendant was sentenced in this case to the statutory maximum

18   sentence of 72 months in prison.  (*See* Doc. No. 117; Doc. No. 127 (Reporter's Transcript of

19   Sentencing on March 11, 2019) at 3.)  Defendant has appealed from that judgment of conviction.

20   (Doc. Nos. 118, 119.)  His appeal was set for oral argument on June 10, 2020.  (*See United States

21   v. Craig Shults*, No. 19-10106 (9th Cir.), Doc. Nos. 40, 43.)

22         On April 13, 2020, defendant moved for release on bail pending appeal under 18 U.S.C.

23   § 3143(b).  (Doc. No. 129.)  In that motion he argues that:  (1) he is not likely to flee; (2) he does

24   not pose any danger to any person or to the community; (3) his appeal raises substantial questions

25   of fact and law; and (4) the present danger posed by the COVID-19 pandemic further supports his

26   release.  (*See generally id*.)  For the reasons set forth below, defendant Shults' motion for release

27   on bond pending appeal will be denied.

28   /////

3

1

**LEGAL STANDARD**

2     Under 18 U.S.C. § 3143(b), a defendant found guilty of an offense and sentenced to a

3 term of imprisonment must be detained during the pendency of appeal unless the court finds the

4 defendant "is not likely to flee or pose a danger to the safety of any other person or the

5 community if released" and that "the appeal is not for the purpose of delay and raises a substantial

6 question of law or fact likely to result in . . . (i) reversal, . . . [or] (iv) a reduced sentence to a term

7 of imprisonment less than the total of the time already served plus the expected duration of the

8 appeal process." 18 U.S.C. § 3143(b)(1)(A)–(B)(i), (iv). If the court makes such a finding under

9 subsection (B)(iv), it must "order the detention terminated at the expiration of the likely reduced

10 sentence." *Id*. § 3143(b)(1). "[A] 'substantial question' is one that is 'fairly debatable,'. . . or

11 'fairly doubtful.' " *United States v. Handy*, 761 F.2d 1279, 1283 (9th Cir. 1985) (internal

12 citations omitted). In other words, "a 'substantial question' is one of more substance than would

13 be necessary to a finding that it was not frivolous." *Id*. (citation omitted). Thus, "[t]he defendant

14 ... need not, under *Handy*, present an appeal that will likely be successful, only a non-frivolous

15 issue that, if decided in the defendant's favor, would likely result in reversal or could satisfy one

16 of the other conditions." *United States v. Garcia*, 340 F.3d 1013, 1021 n.5 (9th Cir. 2003). The

17 defendant bears the burden of showing he has raised a "fairly debatable" issue on appeal. *United*

18 *States v. Montoya*, 908 F.2d 450, 451 (9th Cir. 1990).

19

**DISCUSSION**

20 **A.     Flight and Danger Requirements Under § 3143(b)(1)(A)**

21     The court has reviewed and carefully considered the record with regard to defendant's

22 assertion that he is not likely to flee and that he will not pose a danger to the community if

23 released on bail pending appeal. Assuming, *arguendo*, that defendant has established he is not

24 likely to flee, he has clearly failed to establish that he is "not likely" to pose a danger to others as

25 required under § 3143(b)(1)(A). *See Garcia*, 340 F.3d at 1021 n.6 (noting defendant bears burden

26 of satisfying threshold requirements of § 3143(b)(1)(A) by clear and convincing evidence).[1]

27

28 [1]  The government argues that defendant was convicted of a crime of violence and therefore that he must satisfy the heightened standard for release contained in 18 U.S.C. § 3143(b)(2), which mandates detention unless "it is clearly shown that there are exceptional reasons" justifying

4

1    Notably, defendant was previously remanded to custody while on pretrial release in

2    connection with the wire fraud charges brought against him in the Central District for violating

3    the terms and conditions of that release.  As the government's opposition to the pending motion

4    indicates, defendant was specifically warned not to engage in any investment solicitation

5    activities.  (Doc. No. 130-1, Ex. 2.)  In May 2013, defendant failed to appear at a court hearing

6    because he was travelling to Florida without the permission of the court or his pretrial services

7    officer.  (*Id*., Ex. 3 at 2.)  Defendant claimed he was visiting his ill father.  (*Id*.)  In September

8    2013, agents of the Federal Bureau of Investigation (FBI) contacted pretrial services.  (*Id*.)  The

9    FBI allegedly had discovered evidence of defendant becoming involved in operating a new

10   investment fraud scheme.  (*Id*. at 2–3.)  Upon review of documentation provided by the FBI,

11   pretrial services ultimately concluded that "defendant may have violated his bond," and requested

12   the setting of a show cause hearing as to why his release on bond should not be revoked.  *(Id*. at

13   3–4.)  Pretrial services ultimately concluded there were no supervision tools at its disposal to

14   effectively monitor defendant and ensure that he would not engage in similar behavior and

15   therefore that there were no conditions that could be imposed that would reasonably assure the

16   safety of the community.  (*Id*., Ex. 4 at 2.)  Judge Guilford agreed and remanded defendant to

17   custody and ordered that he be detained through his trial and sentencing.  (*See id.*, Exs. 5 and 6.)

18   Here, defendant has presented no basis on which the court could conclude that he is any

19   less of a danger to the community now than he was at the time of the above-described revocation

20   of his pretrial release on the wire fraud charges.  To the contrary, a jury in this district concluded

21   that defendant Shults spent at least some of the time between then and now threatening to assault

22   Judge Guilford, the judge who had ordered him detained and later sentenced him in his wire fraud

23   case.  Defendant attempts to discount this alarming behavior in the same manner he did at the trial

24   of this case, by asserting that he is merely a "chronic exaggerator."  (Doc. No. 132 at 5.)  The

25   sentencing judge's statements are revealing in this regard.  At the time of sentencing in this action

26   release, 18 U.S.C. § 3145(c).  (Doc. No. 130 at 3–4.)  Defendant argues that this provision does
     not apply here. (Doc. 132 at 2–4.)  The court need not resolve this dispute, because defendant has
27   failed to meet his burden even under the less rigorous standard.  Nonetheless, the undersigned
     would observe that retaliating against a federal official by threat in violation of 18 U.S.C. §
28   115(a)(1)(B) would appear to qualify as a crime of violence.

5

1    the sentencing judge explained: "in every other circumstance, [defendant] wanted everybody to

2    know.  He wanted everybody to hear these hyperboles and these outrageous statements and these

3    lies, but in this particular case, when he was talking about murdering a federal judge, he

4    specifically did not want, he went exactly the opposite direction, and he did not want anybody to

5    hear that."  (Doc. No. 127 at 15.)  In other words, defendant exercised control over his behavior

6    as a chronic exaggerator, amplifying that characteristic when it suited him (including invoking it

7    at trial) but controlling it when it did not suit him (such as when planning and plotting to murder

8    the federal judge who had sentenced him).  This record further supports Judge Guilford's earlier

9    findings that defendant poses a risk to the community if released.  Defendant's motion for release

10   on bail pending appeal will therefore be denied due to his failure to satisfy the threshold

11   requirements of § 3143(b)(1)(A).

12   **B.      Substantial Question Requirement Under § 3143(b)(1)(B)**

13          Even if defendant did satisfy the requirements of § 3143(b)(1)(A), the court does not

14   believe that he has raised "a substantial question of law or fact" on appeal.  On appeal, defendant

15   has argued that his conviction should be reversed because the district court abused its discretion

16   by admitting evidence of alleged threats defendant made against Judge Guilford several months

17   after the charged conduct, while he was imprisoned at FCI Lompoc.  (Doc. No. 129 at 7.)  In this

18   regard, the indictment in this case charged defendant with making threats against Judge Guilford

19   to W.K. at CI Taft on four occasions (Doc. No. 1), one of which was recorded, three of which

20   were not.  At trial, however, the government elected not to call W.K. in its case in chief.  Instead,

21   the government focused on the <u>recorded</u> threats against the judge made by defendant to W.K, by

22   offering the recording itself into evidence.[2]

23          Prior to trial, the government moved *in limine* to admit, among other things, evidence of

24   similar threats against Judge Guilford made by defendant in the presence of a different inmate

25   (P.V.) while both were incarcerated at FCI Lompoc.  (Doc. No. 21.)  This motion was granted on

26   the following grounds:

27   /////

28   ───────────────────────

[2]  W.K. was instead called as a witness at trial by the defense.  (*See* RT at 583.)

The Court finds that P.V.'s testimony is admissible. It is inextricably intertwined with the charged offense. Evidence that Defendant continued, and escalated, the threats made against a judge even after he was moved to a new facility is evidence of a "single criminal episode." *Vizcarra-Martinez*, 66 F.3d 1006, 1012 (9th Cir. 1995) ("[T]he policies underlying rule 404(b) are inapplicable when offenses committed as part of a 'single criminal episode' become other acts simply because the defendant 'is indicted for less than all of his actions.'" (quoting *United States v. Williams*, 989 F.2d 1061, 1070 (9th Cir. 1993))). Defendant's argument that the conduct is dissimilar because the alleged conduct at Taft involved solicitation of money while the alleged conduct at Lompoc involved his offering money does not change the analysis. The same judge was targeted with the same goal, even if the method that failed to work at Taft was altered when attempted at Lompoc.

The Court also finds that the testimony would be admissible under Rule 404(b). It goes to Defendant's motive, intent, and knowledge. Witness credibility will be the centerpiece of this case, and testimony showing the consistency of the alleged behavior has the potential to carry great weight. Because of the potentially immense probative value on witness credibility, the 403 analysis tips heavily toward admission.

Defendant's argument that intervening events giving Defendant new grounds for being upset by the time he arrived at Lompoc, [Doc.] No. 27 at 8:12-19, is a permissible argument for the jury at trial but does not warrant preclusion of P.V.'s testimony. In addition, Defendant's concern that P.V.'s testimony is highly prejudicial because the jury may feel compelled to convict Defendant for the conduct at Lompoc rather than the charged conduct can be remedied through a properly worded jury instruction if a request is made at trial.

(Doc. No. 59 at 6–7.)

Defendant suggests in the pending motion that the *in limine* ruling on P.V.'s testimony was premised in part on the government's assertion that it was going to call W.K. as a cooperating witness to testify as to numerous threats made by defendant against the judge while defendant was imprisoned at CI Taft, with the implication being that P.V.'s testimony was only admitted in light of that backdrop. (*See* Doc. No. 129 at 7–8.) Defendant argues that once the government altered its strategy and decided not to prove up the unrecorded threats relayed to W.K., the trial court should have excluded P.V.'s testimony. (*Id.*) Defendant's trial defense was, in essence, that he was a chronic exaggerator who could not possibly have been taken seriously by anyone. (*See* RT at 799.) Defendant now argues that, particularly in light of his defense theory—which the government was made aware of ahead of trial—"the fact that Appellant

7

1  allegedly made additional (and actually even more ridiculous) subsequent statements about

2  wanting to harm the judge and others while at Lompoc did not aid the jury in determining

3  whether, in December at Taft, Mr. Shults' recorded statements were 'true threats.'" (Doc. No 132

4  at 5.)  Defendant further contends that

> If issues at trial had included whether [defendant] actually made any
> of these statements, or what the statements actually had been, then
> evidence that he made additional statements later at Lompoc would
> have been probative.   However, because these questions were
> eliminated when the government decided to pass on the other three
> charges so it could instead rely on the recording of the December
> statements to convict Mr. Shults, the Lompoc statements were no
> longer admissible.  At that point, they represented an inflammatory
> line of evidence "of scant or cumulative probative force, dragged in
> by the heels for the sake of its prejudicial effect."  *United States v.
> Mills*, 704 F.2d 1553, 1559 (11th Cir. 1983).

11  (*Id*. at 5–6.)

12      This argument does not undermines the trial court's evidentiary ruling in the

13  undersigned's view.  In granting the government's motion *in limine*, the trial judge explained that

14  the evidence did not simply go to whether the statements were made.  Rather, the evidence was

15  part of a "single criminal episode" where defendant "continued, and escalated, the threats made

16  against a judge even after he was moved to a new facility[.]"  (Doc. No. 59 at 6.)

17      Even though a limiting instruction to the jury was not required in light of the "single

18  criminal episode" ruling, the trial court gave one anyway.  (RT at 162–63; Doc. No. 99 at 19.)

19  That instruction was agreed upon by all parties.  (RT at 12–13, 162; *see also* Doc. Nos. 65 at 24.)

20  Moreover, defendant did not make any further or different objection to the P.V. trial testimony

21  based upon the theory now advanced.  (RT at 13 (defense counsel stating "[t]here is no objection"

22  to providing a "single criminal episode" limiting instruction with respect to P.V.'s testimony).)

23      In sum, the court does not believe that the evidentiary ruling—which will be reviewed for

24  abuse of discretion on appeal—sets forth a substantial appellate question that is "fairly debatable"

25  or "fairly doubtful."  *Handy*, 761 F.2d at 1283.

26  **C.    Effect of COVID-19 Pandemic**

27      Finally, defendant also argues that his request for release should be viewed with favor

28  because he is arguably more susceptible than others to the COVID-19 pandemic and to become

seriously ill if he contracts the virus due to a medical history that includes bronchial infections and obesity.  (Doc. No. 129 at 9.)  There can be no question that COVID-19 has adversely impacted FCI Lompoc.  *See, e.g.*, *United States v. Connell*, No. 18-CR-00281-RS, 2020 WL 2315858, at *6 (N.D. Cal. May 8, 2020) ("FCI Lompoc . . . is among the worst coronavirus hotspots in the nation.") (internal quotations and citation omitted).  While the court is sympathetic to the issues raised by COVID-19's spread throughout certain Bureau of Prisons institutions, defendant cites no authority (and the court has discovered none) suggesting that COVID-19 should be considered in the court's determination as to whether defendant meets the threshold requirements for the granting of bail pending appeal under § 3143(b)(1)(A) and (B).  *See United States v. Gutierrez-Gomez*, No. 2:19-CR-0006-KJM, 2020 WL 2556942, at *4 (E.D. Cal. May 20, 2020) (finding COVID-19's spread throughout certain correctional facilities has no bearing on court's determination of the propriety of release pending appeal); *see also United States v. Singh*, No. 2:14-CR-00648-CAS, 2020 WL 2768848, at *7 (C.D. Cal. May 27, 2020) (and cases cited therein).  There are other vehicles available, such as administrative requests and motions directed to the court for compassionate release, by which defendant may seek early release on the grounds that he is uniquely susceptible to suffering serious illness due to the COVID-19 pandemic.

### CONCLUSION

For the reasons set forth above, defendant's motion for release pending appeal (Doc. No. 129) is DENIED.

IT IS SO ORDERED.

Dated:  __**June 23, 2020**__                    _____

UNITED STATES DISTRICT JUDGE