PHILLIP A. TALBERT
Acting United States Attorney
ANGELA L. SCOTT
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                     Plaintiff,<br><br>             v.<br><br>CRAIG SHULTS,<br><br>                     Defendant. | CASE NO. 1:17-CR-00136-NONE<br><br>**UNITED STATES' OPPOSITION TO DEFENDANT'S SECOND MOTION FOR COMPASSIONATE RELEASE PURSUANT TO 18 U.S.C § 3582(C)(1)(A)** |

### I.        INTRODUCTION

The United States of America respectfully submits this memorandum in opposition to defendant Craig Shults' ("Shults" or "Defendant") second motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). Dkt. 146. Shults has not exhausted his administrative remedies as required by the statute. Nevertheless, he again moves for a time-served sentence, resulting in a 41-month reduction. He is not, however, eligible for a time-served sentence because he does not meet the "extraordinary and compelling" standard of § 3582(c)(1)(A). Updated Bureau of Prisons ("BOP") medical records indicate that Shults previously contracted and recovered from COVID-19 without symptoms and has received the first dose of the Moderna COVID-19 vaccine. Exhibit 2 at 41, 76-77, 84, 89 (Updated BOP Medical Records Filed Under Seal). Shults has not met his burden of establishing that he is eligible for, or entitled to, a sentence reduction. In addition, the factors in 18 U.S.C. 3553(a) do not weigh in favor of

granting Shults' motion. For these reasons, the Court should—once again—deny the motion.

## II. STATEMENT OF RELEVANT FACTS

On April 18, 2012, Shults was indicted in the Central District of California on multiple counts of wire fraud, in violation of 18 U.S.C. § 1343. *See United States v. Craig Shults*, 8:12-cr-00090-JLS (C.D. Cal.), Dkt. No. 1. He was arraigned on April 25, 2012 and released on bond. *See id.* at 23. On October 21, 2013, United States District Judge Andrew Guilford found that defendant had violated his pretrial supervision conditions by soliciting investments, revoked his bond, and ordered him remanded into federal custody pending trial. *Id.* at 172. Shults did not respond well to the judge's remand order. While incarcerated at Santa Ana Jail, witness Carlos Galeana, who testified at trial in the instant case, heard defendant make threats against Judge Guilford in the jail. Shults was mad that Guilford did not give him bail and stated he was going to "bury" Guilford and "do all kind[s] of things to get him." RT1 246.[1] Galeana later reported these threats and cooperated with the government. RT 246-247, 251.

On February 19, 2014, a jury convicted defendant on all seven of the wire fraud counts with which he was charged. *United States v. Craig Shults*, 8:12-cr-00090-JLS, Dkt. No. 357. In his sentencing brief, defendant argued that the appropriate Guidelines range was 57-71 months and that a "substantial variance" below that imprisonment range was appropriate. *Id.* at 463, p.18. On November 10, 2014, Judge Guilford sentenced defendant to serve a 90-month term of imprisonment and ordered defendant to pay $2,000,000 in restitution. *Id.* at 503. On September 16, 2015, defendant moved for bond pending his appeal. *Id.* at 644. On October 2, 2015, Judge Guilford denied defendant's motion. *Id.* at 648.

By May 2016, defendant was incarcerated at Taft Correctional Institution ("Taft CI") serving the 90-month sentence imposed by Judge Guilford. On multiple instances from May 2016 through December 2016, while defendant was housed at Taft CI, defendant threatened to assault Judge Guilford in retaliation for Judge Guilford's various rulings during the pendency of defendant's criminal case. Shults was recorded stating, among other things about Judge Guilford, "I'm going to humiliate him first, then I'm going to get rid of him." He stated his was "hunting" Judge Guilford, and described scenarios

---

[1] "RT" refers to the Reporter's Transcript of proceedings from Shults' jury trial in the case, filed as Dkt. Nos. 123-126.

where Judge Guilford could be "whack[ed]" out. Dkt. 142, Ex. 1 (Excerpts from Gov't Tr. Exs.), at 1-4.

After Taft CI became aware of the threats charged in this case, defendant was transferred to the Federal Correctional Institution in Lompoc, California ("FCI Lompoc"). Another trial witness, Pavel Valkovich, met defendant after defendant was transferred to FCI Lompoc starting in the beginning of 2017. RT 165-166. Defendant repeatedly offered to pay Valkovich to arrange the murder of Judge Guilford, and the murder of someone at Taft CI that informed on Shults (which could only have been the inmate that recorded Shults threatening the judge). RT 166-186. Valkovich reported defendant's threats to prison officials after being transferred from FCI Lompoc to Taft CI. RT 183-185.

After a four-day trial in the instant case, the jury convicted Shults of the sole count of the indictment, violation of 18 U.S.C. § 115(a)(1)(B). RT 826-27. At sentencing, the Court stated:

> And your anger for the Judge's apparent, not just sentence, but his decision to have you taken into custody upon the change of plea, you never got rid -- whenever it was, you were angry at his having you taken into custody by the marshal in the courtroom. And that anger, you never got over for reasons I don't know, but you never got over it. And what you did, the way you decided to handle it, by threatening a federal judge or attempting to get somebody involved in the Judge's assassination, was tantamount to trying to bring the criminal justice system down, because that's exactly what you do when you make such threats or attempt to carry them out.

Dkt. No. 127, (3.11.19 Sent. Tr.), at 16-17.

The Court then sentenced Shults to the guideline range and statutory maximum sentence of 72 months in prison. *Id.* at 18. On July 22, 2020, the Ninth Circuit affirmed Shults' conviction and sentence. *United States v. Shults*, 814 Fed. Appx. 296 (9th Cir. 2020). While Shults' appeal was pending, this Court denied Shults' motion for bail pending appeal, finding *inter alia* Shults failed to show he was not likely to pose a danger to others upon release. Dkt. No. 133, at 4-5.

### III. THIS COURT CORRECTLY DENIED THE MOTION FOR COMPASSIONATE RELEASE, AND SHULTS HAS NOT DEMONSTRATED THAT HE MERITS A TIME SERVED SENTENCE

#### A. Court's Denials of Compassionate Release

On July 29, 2020, Shults filed a *pro se* motion for compassionate release. Dkt. 135. On July 29, 2020, pursuant to General Order No. 595, Shults' pro se motion was referred to the Federal Defender's Office. Dkt. 136. On August 3, 2020, Shults filed a pro se brief supplementing his July 29, 2020 *pro se*

motion. Dkt. 139. On September 30, 2020, Shults, through attorney Peter Jones, filed a supplemental motion for compassionate release. Dkt. 141. On October 14, 2020, the United States filed its opposition to Shults' motion for compassionate release. Dkt. 142. On February 18, 2021, the Honorable Dale A. Drozd denied Shults' motion for compassionate release finding Shults had not met the threshold of "extraordinary and compelling" reasons justifying compassionate release and because "granting defendant Shults compassionate release at this time would be inconsistent with the appropriate consideration of the § 3553 sentencing factors." Dkt. 145.

### B.   Incarceration and Projected Release Date

Shults is currently serving his aggregate 162-month sentence at Lompoc FCI. His projected release date is April 21, 2025, based upon application of his GCT. Shults has served approximately 96-months of his aggregate 162-month sentence. Exhibit 1 at 3-4 (BOP Inmate Data).

### C.   Shults' Second Motion for a Time-Served Sentence

On September 27, 2021, Shults filed his second motion for compassionate release. Dkt. 146. In his *pro se* motion, Shults asserts that he has chronic health issues, including conditions not reflected in his BOP medical records. *See id.* at 5-7. Shults claims that these various conditions combined with what he has characterizes as an "again growing coronavirus pandemic" and the alleged "ongoing Eighth Amendment violations at FCC Lompoc," provide an "extraordinary and compelling" basis for a sentence reduction.[2] *Id.* at 5. Shults also claims he suffered a second bout with COVID-19 in May 2021, which has left him with undetermined health issues. *Id.* He also claims that he has been informed he is not medically fit to take the vaccine at this time ("he suffers allergic reactions to certain medications"). *Id.* at 29-30. Shults again requests a time served sentence. *See generally* Dkt. 146.

### D.   Administrative Remedies

Pursuant to Title 18, United States Code, Section 3582(c)(1), an inmate may only file a motion for sentence reduction after the BOP has denied his request or after 30 days have passed since BOP

---

[2] An inmate challenging the manner, location, or conditions of his sentence may bring a habeas petition under 28 U.S.C. § 2241. *Hernandez v. Campbell*, 204 F.3d 861, 864 (9th Cir. 2000); *Braden v. 30th Judicial Circuit Court of Kentucky*, 410 U.S. 484, 495 (1973); *Porter v. Adams*, 244 F.3d 1006, 1007 (9th Cir. 2001).

received his request.  The BOP does not have a record of any *new* request for compassionate release being made by Shults.  The only request BOP has from Shults requesting compassionate release was submitted June 6, 2020, prior to filing his previous motion for compassionate release.  Dkt. 141, Ex. A. Accordingly, at the time of this filing, he has not complied with the mandatory claims processing rule required by the statute. Thus, Shults has not satisfied the exhaustion requirement.

## IV. THE BUREAU OF PRISONS RESPONSE TO COVID-19

BOP endeavors to protect inmates and employees by trying to keep COVID-19 out of its facilities.  BOP routinely revises and updates its action plan in response to the pandemic and is continually working with the CDC to confirm that its approach aligns with current CDC guidance for COVID-19 management at correctional facilities.

Despite BOP's substantial risk-mitigation efforts, its facilities have not been immune from COVID-19.  As of November 8, 2021, approximately 137 inmates in BOP custody—out of a total of approximately 148,500—are currently diagnosed with COVID-19.  *See* BOP, *COVID-19 Coronavirus Page*, https://www.bop.gov/coronavirus/index.jsp (last visited November 8, 2021).  In total, 43,451 inmates and 8,318 staff members have been diagnosed with and recovered from COVID-19, while 266 inmates and 7 staff members have died.  *Id.*  Currently, there 2 staff members reported positive for COVID-19 at Lompoc FCI, which is Shults' facility.  *Id.*

## V. LEGAL FRAMEWORK FOR COMPASSIONATE RELEASE

### A. The policy statements in Guideline 1B1.13 may guide the Court's exercise of discretion regarding compassionate release.

Although a district court generally "may not modify a term of imprisonment once it has been imposed," motions for a time-served sentence under Section 3582(c)(1)(A) are one of the few exceptions to this rule and allow a court to "reduce the term of imprisonment."  18 U.S.C. § 3582(c); *see Dillon v. United States*, 560 U.S. 817, 824–25 (2010).  The Ninth Circuit recently held that "district courts are empowered . . . to consider any extraordinary and compelling reason for release that a defendant might raise." *United* States *v. Aruda*, 993 F.3d 797, 801 (9th Cir. 2021) (internal citation and quotation marks removed).  The decision to grant or deny a compassionate release motion is committed to the sound discretion of the district court.  *Id.* at 801-02.

The Sentencing Commission's statements in United States Sentencing Guidelines ("U.S.S.G.") Section 1B1.13 "may inform a district court's discretion for a § 3582(c)(1)(A) motion filed by a defendant, but they are not binding." *Aruda*, 993 F.3d at 802 (citing *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020)). "The substantive aspects of the Sentencing Commission's analysis in § 1B1.13 and its Application Notes provide a working definition of 'extraordinary and compelling reasons;' a judge who strikes off on a different path risks an appellate holding that judicial discretion has been abused. In this way the Commission's analysis can guide discretion without being conclusive." *Gunn*, 980 F.3d at 1180; *see also United States v. McCoy*, 981 F.3d 271, 282 n.7 (4th Cir. 2020) (holding that, while Section 1B1.13 is not binding when prisoners move for compassionate release, "it remains helpful guidance even when motions are filed by defendants").

Using the Sentencing Commission's statements for guidance makes sense because *Aruda* does not supply an alternative standard or approach for deciding whether a defendant's circumstances are "extraordinary and compelling." The Sentencing Commission's policy statement—U.S.S.G. § 1B.1.13—while not binding, should be guidance for this Court. *See Aruda*, 993 F.3d 802; *See, e.g.*, *United States v. Capito*, 2021 WL 4552954, at *2 (D. Ariz. Oct. 5, 2021) (after *Aruda*, U.S.S.G. § 1B1.13 may still inform a district court's discretion for § 3582(c)(1)(A) motions); *United States v. Parker*, 2021 WL 1966409, at *2 (E.D. Cal. May 17, 2021) ("the Court relies on § 1B1.13 herein as persuasive authority"). The Application Notes for U.S.S.G. § 1B1.13 define "extraordinary and compelling reasons" to include (A) the medical condition of the defendant, (B) the age of the defendant, (C) family circumstances, and (D) "[a]s determined by the Director of the Bureau of Prisons . . . an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." U.S.S.G. § 1B1.13 n. 1. The reasons include: (1) a "terminal illness;" (2) a serious medical condition "that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover;" (3) a defendant who is at least 65 years old, is experiencing a serious deterioration in physical or mental health because of the aging process, and "has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less;" or (4) "death or incapacitation of the caregiver of the defendant's minor child." U.S.S.G. § 1B1.13; U.S.S.G. § 1B1.13, comment (n.1(A)–(C)).

**B.      Shults bears the burden of establishing extraordinary and compelling reasons.**

Shults bears the heavy burden of proving that "extraordinary and compelling reasons" exist to support his motion. 18 U.S.C. § 3582(c)(1)(A); *United States v. Recinos*, 1:12-CR-00035-DAD, 2020 WL 4194080, at *3 (E.D. Cal. July 21, 2020) ("Although the Ninth Circuit has not specifically addressed the question of which party bears the burden in the context of a motion for compassionate release brought pursuant to § 3582(c) as amended by the FSA, district courts that have done so have agreed that the burden remains with the defendant.").

**C.      The Court must consider the sentencing factors in 18 U.S.C. §3553(a) and should deny compassionate release where release would undermine those factors.**

Even if a defendant presents extraordinary and compelling reasons, the Court must also consider the factors under 18 U.S.C. § 3553(a); compassionate release is a "rare" and "extraordinary" remedy within the Court's discretion to deny based on these factors. *See* 18 U.S.C. § 3582(c)(1)(A)(i); *United States v. Chambliss*, 948 F.3d 691, 693–94 (5th Cir. 2020); *United States v. Mangarella*, 2020 WL 1291835, at *2–3 (W.D.N.C. Mar. 16, 2020). "In deciding a motion for compassionate release, a court can neither disregard nor undermine the relevant factors set forth in 18 U.S.C. § 3553." *United States v. Dogan*, 2:16-cr-00198-JAM, 2020 WL 4208532, at *3 (E.D. Cal. July 22, 2020). As the Tenth Circuit has explained, "it is a rare case in which health conditions present an 'exceptional reason'" that might allow for early release where detention would otherwise be warranted. *United States v. Wages*, 271 Fed. Appx. 726, 728 (10th Cir. 2008) (collecting pre-trial detention cases); *accord United States v. Willis*, 382 F. Supp. 3d 1185, 1188 (D.N.M. 2019) (explaining that "most courts treat compassionate release 'due to medical conditions [a]s . . . a rare event."). This reluctance to expansively apply compassionate release is grounded in a concern that any less narrow application would yield significant sentencing disparities. *See United States v. Ebbers*, 432 F. Supp. 3d. 421, 429–30 (S.D.N.Y. 2020).

///
///
///
///
///

VI.     **ARGUMENT**

A.  **Shults has failed to exhaust his administrative remedies, which precludes this Court from taking up the motion.**

When the BOP declines to file a motion on the prisoner's behalf, "a court may not consider a motion brought under § 3582(c)(1)(A) unless . . . either (a) the inmate has 'fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the [inmate]'s behalf,' or (b) 30 days have elapsed since the 'warden of the [inmate]'s facility' received a compassionate-release request from the inmate." *United States v. Keller*, 2 F.4th 1278, 1281 (9th Cir. 2021). The Ninth Circuit has recently clarified that "§ 3582(c)(1)(A)'s administrative exhaustion requirement imposes a mandatory claim-processing rule that must be enforced when properly invoked." *Id*. at 1282. This makes good policy: "during a global pandemic, it allows the government to 'implement an orderly system for reviewing compassionate-release applications,' rather than one 'that incentivizes line jumping. This system, in turn, 'ensures that the prison administrators can prioritize the most urgent claims.'" *Id*. (quoting *United States v. Alam*, 960 F.3d 831, 833, 835 (6th Cir. 2020)).

The Ninth Circuit held under these circumstances that the prisoner had failed to administratively exhaust and "the district court erred by overlooking the government's objection and addressing Keller's motion on its merits." *Id*. at 1283. It did not matter that the 30-days elapsed during pendency of the motion. *Id*. Allowing a prisoner to run to the courts while a request is pending "would contravene the useful purposes behind claim-processing rules, which seek to promote the orderly progress of litigation by requiring that the parties take certain procedural steps at certain specified times, and not to control the speed of judicial adjudication." *Id*. (internal quotation omitted). Enforcing mandatory claims-processing rules "allow the executive branch to carefully evaluate a claim in the first instance and possibly obviate the need for litigation before it begins." *Id*.

The BOP has confirmed that Lompoc has not received any *new* request for "compassionate release." Allowing Shults to engage in "line jumping" would frustrate the statute's goal of "an orderly system for reviewing compassionate-release applications" that is supposed to "ensure[] that the prison administrators can prioritize the most urgent claims." *Id*. at 1282.

It is error to address Shults' motion on the merits until he presents the basis for this extraordinary

relief to the prison and "allow[s] the executive branch to carefully evaluate a claim in the first instance and possibly obviate the need for litigation before it begins." *Id.*

### B. Shults again fails to demonstrate that he has an extraordinary and compelling reason for a time-served sentence.

Vulnerability to COVID-19 alone is not an "extraordinary and compelling reason" to justify a sentence reduction. The "mere existence of COVID-19 in society and the possibility that it may spread to a particular prison cannot independently justify compassionate release." *United States v. Raia,* 954 F.3d 594, 597 (3d Cir. 2020). To classify COVID-19 as an extraordinary and compelling reason, by itself, would be inconsistent with the text of the statute and the policy statement. Moreover, it would have detrimental real-world effects, resulting in the inequitable treatment of inmates. Section 3582(c)(1)(A) contemplates sentence reductions for specific individuals, not the widespread prophylactic release of inmates and the modification of lawfully imposed sentences to deal with a viral pandemic.

Shults argues that what he has described as chronic health issues, coupled with "the growing coronavirus pandemic" and alleged "ongoing Eighth Amendment violations at FCC Lompoc," provide an "extraordinary and compelling" basis for a sentence reduction. Dkt. 146 at 5. Shults also claims he suffered a second bout with COVID-19 in May 2021, which has left him with undetermined health issues. *Id*. He also claims that he has been informed he is not medically fit to take the vaccine at this time ("he suffers allergic reactions to certain medications"). *Id.* at 29-30. Updated BOP medical records for Shults indicate that he is being treated for allergies, esophageal reflux (non-complain with dietary recommendation due to GERD), hyperlipidemia (unspecified), essential (primary) hypertension, and has a BMI of 33.0-33.9. Exhibit 2 at 83-84. His medical records also indicate that Shults previously contracted and recovered from COVID-19 without symptoms. *Id.* at 76-77, 84, 89. The records also indicate that Shults has only contracted COVID-19 once. *See generally* Exhibit 2. On October 26, 2021, Shults received the first dose of the Moderna COVID-19 vaccine and should be receiving the second dose is a few weeks. *Id.* at 41. Shults' last reported weight on September 28, 2021, was 286 resulting in a BMI of 33. *Id.* at 30. The CDC acknowledges hypertension and having a BMI above 25 as risk factors that "can make you more likely" to get severely ill from COVID-19. *See*

Ctrs. for Disease Control & Prevention, Coronavirus Disease 2019 (COVID-19), People With Certain Medical Conditions (November 7, 2021), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medicalconditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus %2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html.

These circumstances fall well short of demonstrating a basis to reduce his sentence to time served. *See, e.g., United States v. Thompson*, 984 F.3d 431, 434–35 (5th Cir. 2021) ("commonplace" conditions of hypertension and hyperlipidemia are not extraordinary; while not endorsing the view that a risk factor presents an extraordinary circumstance, the court states, "The courts that granted compassionate release on those bases largely have done so for defendants who had already served the lion's share of their sentences and presented multiple, severe, health concerns. . . . Fear of COVID doesn't automatically entitle a prisoner to release. Thompson can point to no case in which a court, on account of the pandemic, has granted compassionate release to an otherwise healthy defendant with two, well-controlled, chronic medical conditions and who had completed less than half of his sentence."); *see also United States v. Carlson*, 2021 WL 1820239, at *5 (D.S.D. May 6, 2021) (Viken, J.) (59-year-old defendant with various conditions including hypertension and obesity (BMI of 31.9) did not present extraordinary and compelling reasons under § 3582(c)(1)(A)(i)); *United States v. Robinson*, 2021 WL 1318027, at *8 (D.D.C. Apr. 8, 2021) (hypertension alone is not sufficient; notes that CDC's March 29, 2021, revision still states that hypertension only "possibly" may lead to severe illness); *United States v. Garcia*, 2021 WL 2269693, at *4 (E.D. Pa. June 3, 2021) (hypertension is not a definite risk); *United States v. Phillips*, 2021 WL 2346101 (E.D. Pa. June 8, 2021) (obesity (31.7) and hypertension of 50-year-old man do not present extraordinary circumstances); *United States v. French*, 2021 WL 1316706, at *5–6 (M.D. Tenn. Apr. 8, 2021) (hypertension alone is not sufficient; notes that CDC's March 29, 2021, revision still states that hypertension only "possibly" may lead to severe illness); *United States v. Campbell*, 2021 WL 1733395, at *3 (E.D. Wis. May 3, 2021) (hypertension is not an extraordinary and compelling circumstance).

Based on his medical records and receiving the first dose of the COVID-19 vaccine, Shults' compassionate release argument regarding COVID-19 is not extraordinary or compelling. BOP is monitoring and treating Shults' health conditions as needed. *See generally* Exhibit 2; *United States v.*

*Smith*, 2021 WL 364636, at *2 (E.D. Mich. Feb. 3, 2021) ("According to the CDC, the Moderna vaccine is exceptionally safe and effective, preventing 94.1% of infections in clinical trials. . . . Accordingly, absent some shift in the scientific consensus, Defendant's vaccination against COVID-19 precludes the argument that his susceptibility to the disease is 'extraordinary and compelling' for purposes of § 3582(c)(1)(A)."); *United States v. Wakefield*, 2021 WL 640690, at *3 (W.D.N.C. Feb. 18, 2021) (defendant presents obesity, diabetes, and hypertension, but he previously tested positive, and has received the first dose; "Because he has already contracted the virus and recovered without complication, and because he is in the process of being vaccinated, the Defendant cannot meet his burden of establishing that his COVID-19 risk is an extraordinary and compelling reason for his release."); *United States v. Dixon*, 2021 WL 2315193, at *2 (N.D. Ohio June 7, 2021) (in light of the sharply declining positive rate in BOP facilities and the number of vaccinations, "the Court can no longer find that the COVID-19 pandemic can be relied upon to demonstrate extraordinary and compelling reasons.").

### C. Even if Shults did show an extraordinary or compelling reason, the 18 U.S.C. § 3553(a) factors do not support a shorter sentence.

Before granting compassionate release, a court must consider the factors set forth in 18 U.S.C. § 3553(a) "to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A). Those factors include, among other things, "the nature and circumstances of the offense and the history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1), "the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, . . . to provide just punishment of the offense[,] . . . to afford adequate deterrence to criminal conduct[, and] . . .to protect the public from further crimes of the defendant," 18 U.S.C. §§ 3553(a)(2)(A), (B) & (C).

#### 1. Shults' History and the Circumstances of the Offense Show Early Release is Inappropriate; the Remaining Sentence Will Ensure Protection of the Public.

During his first federal criminal case, in the Central District of California, Shults was released on a modest bond and, hence, given the opportunity to demonstrate he had changed. Shults was specifically warned not to engage in any investment solicitation activities. The Central District of California's pretrial services office notified the court about Shults' failure to comply with conditions,

starting with Shults missing a court hearing because he had traveled to Florida without permission of pretrial services. Dkt. 142, Ex. 9 (9.20.13 Letter from pretrial services). Shults claimed he was visiting his ill father. The FBI later provided information to pretrial services that in fact Shults was operating a new investment fraud scheme and obtaining money from victim investors. *Id*. at 2-3. Of particular note was a statement attributed to Shults that "if anyone turned on him, he had people in high places and would get people taken care of." *Id.* at 3.

After receiving submissions from the defendant and government, pretrial services ultimately concluded "it d[id] not believe there are any conditions or combination of conditions to reasonably assure the safety of the community at this [time] . . . [and did] not believe there [were] any conditions that can be set to reasonably assure the safety of the community." Dkt. 142, Ex. 10 (10.17.13 Letter from pretrial services), at 2. The court held a contested hearing and found that Shults violated his conditions of release by soliciting investment funds from individuals while on pretrial release. He was remanded to custody through his trial and sentencing. Dkt. 142, Ex. 11 (Dkt. No. 172 C.D. Cal); Ex. 12 (Shults Sent. Tr. C.D. Cal.), at 109-111. Shults ultimately received a sentence of 90 months in prison. Notably, the judge was lenient with Shults regarding his pretrial violation and did not further enhance his sentence for the violation. *Id*. at 112.

Despite receiving this consideration, Shults persisted in harboring deep animosity for the judge and one of his prosecutors. In prison, Shults communicated threats to assault and kill his sentencing judge, one of his prosecutors and others. PSR ¶¶ 8-26. When he realized the person he communicated these threats to was cooperating with the government, he solicited another inmate to arrange to murder his sentencing judge and the cooperator. RT 166-185; PSR ¶ 23. Disturbingly, Shults indicated that he planned to begin taking action on these threats upon release from prison following a successful appeal or receiving bond on appeal. PSR ¶¶ 10, 11, 17. Consistent with section 3553(a), the 72-month sentence imposed in this matter reflects the serious nature of this offense and the risk of recidivism posed by Shults. Early release is not warranted given the facts supporting the underlying conviction and Shults' other criminal history.

2. **Seriousness of the Offense, the Need for Just Punishment, Deterrence and Respect for the Law Counsel for Continued Incarceration.**

Granting compassionate release would undermine the 18 U.S.C. § 3553(a) factors pertaining to seriousness of the offense, providing just punishment, deterrence and respect for the law. In addition to the harm posed to the judge, threats against judges also endanger the integrity of our judicial system. Additionally, this conduct triggers a swift and extensive response from those agencies charged with protecting the federal judiciary. A 72-month sentence was and is warranted to deter this behavior and promote respect for the law.

Upon a defendant's motion for compassionate release, a court may appropriately consider the amount of the sentence that the defendant has already served. *See, e.g., United States v. Clews*, 835 Fed. Appx. 258, 259 (9th Cir. 2021) (affirming district court's denial of compassionate release in part due to court's consideration of years served of sentence in § 3553(a) analysis); *United States v. Pawlowski*, 967 F.3d 327, 330–31 (3d Cir. 2020) (the "time remaining" in a sentence, which "reflects the sentencing judge's view of the § 3553(a) factors at the time of sentencing . . . inform[s] whether immediate release would be consistent with those factors."); *Chambliss*, 948 F.3d at 694 (holding district court did not abuse its discretion when it considered the length of sentence served in denying compassionate release). Shults has served only approximately 6 months of his well-supported 72-month sentence. [3]

In light of the serious nature of this offense, the need to punish it, and the importance of deterrence here, the 3553(a) factors do not support a sentence reduction, particularly in light of the portion of time Shults has served on the 72-month sentence.

D. **Shults' challenge to the conditions of confinement is properly raised in the district where he is housed, under 28 U.S.C. § 2241.**

To the extent that Shults is complaining about the conditions of his confinement at Lompoc FCI, venue is improper in the Eastern District of California. An inmate challenging the manner, location, or conditions of his sentence may bring a habeas petition under 28 U.S.C. § 2241. Under 28 U.S.C. § 2241, venue lies with the district court that has personal jurisdiction over the petitioner's custodian.

---

[3] Shults is serving an aggregate sentence of 162 months. *See* Exhibit 1 at 3-4.

*Hernandez v. Campbell*, 204 F.3d 861, 864 (9th Cir. 2000); *Braden v. 30th Judicial Circuit Court of Kentucky*, 410 U.S. 484, 495 (1973); *Porter v. Adams*, 244 F.3d 1006, 1007 (9th Cir. 2001). Because Lompoc is located in Lompoc, California, the proper venue for Shults' Eighth Amendment claims and complaints about conditions there is the Central District of California.

## VII. CONCLUSION

For the reasons discussed above, the United States respectfully requests that the Court again deny Shults' motion.

Dated: November 9, 2021

PHILLIP A. TALBERT
Acting United States Attorney

By: /s/ Angela L. Scott
ANGELA L. SCOTT
Assistant United States Attorney

PHILLIP A. TALBERT
Acting United States Attorney
ANGELA L. SCOTT
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>v.<br><br>CRAIG SHULTS,<br><br>　　　　Defendant. | CASE NO. 1:17-CR-00136-NONE<br><br>CERTIFICATE OF SERVICE |

The undersigned hereby certifies that she is an employee in the Office of the United States Attorney for the Eastern District of California and is a person of such age and discretion to be competent to serve papers. She also certifies that on November 9, 2021 a copy of the UNITED STATES' OPPOSITION, NOTICE OF REQUEST TO SEAL, REQUEST TO SEAL, and PROPOSED ORDER was served by placing said copy in a postpaid envelope addressed to the person(s) hereinafter named, at the place(s) and address(es) stated below, which is/are the last known address(es), and by depositing said envelope and contents in the United States Mail at Sacramento, California.

Addressee(s)
**Craig Shults  # 62783-112**
FCI LOMPOC
3600 Guard Road
Lompoc, CA 93436

　　　　　　　　　　　　　　　　　　　/s/ *C. Buxbaum*
　　　　　　　　　　　　　　　　　　　C. BUXBAUM