1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                          EASTERN DISTRICT OF CALIFORNIA

10

11   UNITED STATES OF AMERICA,                    No.  1:17-cr-00136-JLT

12                   Plaintiff,                   ORDER DENYING DEFENDANT'S
                                                  MOTION FOR COMPASSIONATE
13           v.                                   RELEASE

14   CRAIG SHULTS,                                (Doc. 146)

15                   Defendants.

16

17         Pending before the Court is Defendant Craig Shults's second motion for compassionate

18   release pursuant to 18 U.S.C. § 3582(c)(1)(A).  This motion, like his first, is largely based on

19   Shults's medical conditions and the risks allegedly posed to him by the ongoing coronavirus

20   ("COVID-19") outbreak.  (Doc. 146.)  For the reasons explained below, Shults's motion is

21   **DENIED**.

22                                  **BACKGROUND**

23         Shults was indicted on May 25, 2017 for retaliating against a federal official in violation

24   of 18 U.S.C. § 115(a)(1)(B).  (Doc. 1.)  These charges stemmed from threats Shults made against

25   United States District Judge Andrew Guilford in proceedings related to a wire fraud case against

26   Shults.  Shults first threatened Judge Guilford after Judge Guilford found that Shults had violated

27   his pretrial release conditions.  A jury found Shults guilty of seven counts of wire fraud, for which

28   Shults was sentenced to serve 90 months in prison.  While serving this term, Shults again

                                            1

1    threatened Judge Guilford.  The exact facts of Shults's threats are detailed in the denial of his first

2    compassionate release motion.  (Doc. 145 at 1–3.)  A jury found Shults's threats credible and

3    delivered a guilty verdict on December 14, 2018.

4         For threatening Judge Guilford, Shults's adjusted offense level was 26, and his criminal

5    history category was III.  Shults was sentenced to the statutory maximum of 72 months, which

6    was to run consecutively to his term for the wire fraud convictions.  (Docs. 116; 117 at 2–3, 6; *see*

7    *also* Doc. 127.)  Shults has repeatedly challenged his convictions and sentences for both the wire

8    fraud and retaliation offenses, to no avail.  (*See* Doc. 145 at 4–6, detailing appeal attempts.)  He

9    first petitioned for compassionate release in September 2020 by requesting to serve the remainder

10   of his sentence on home confinement.  Shults claimed that he was at increased risk of contracting

11   COVID-19 in custody and may suffer severe complications due to his pre-existing conditions.

12   (Docs. 141, 143.)  United States District Judge Dale A. Drozd denied Shults's first motion for

13   compassionate release because Shults failed to demonstrate that he was unable to provide self-

14   care while incarcerated and relief would be inconsistent with the factors set forth in 18 U.S.C.

15   § 3553(a).  (Doc. 145.)

16        Shults is currently serving his sentence at Lompoc FCI with a projected release date of

17   April 21, 2025.  *Find an inmate*, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/inmateloc/

18   (last visited July 21, 2022.)  Shults filed the instant motion on September 27, 2021, only seven

19   months after his first motion for compassionate release was denied.  (Doc. 146.)  The government

20   opposes the motion, and Shults filed a reply.  (Docs. 156, 170.)

21                                    **LEGAL STANDARD**

22        A court generally "may not modify a term of imprisonment once it has been imposed."  18

23   U.S.C. § 3582(c); *see also Dillon v. United States*, 560 U.S. 817, 824 (2010) ("'[A] judgment of

24   conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not

25   be modified by a district court except in limited circumstances.").  Those limited circumstances

26   include compassionate release in extraordinary cases.  *See United States v. Holden*, 452 F. Supp.

27   3d 964, 968 (D. Or. 2020).  Under the First Step Act of 2018 ("the FSA") imprisoned defendants

28   may bring their own motions for compassionate release in the district court.  18 U.S.C. §

                                              2

1   3582(c)(1)(A) (2018).  In this regard, the FSA specifically provides that a court may:

> upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf[1] or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, [] reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable, if it finds that –
>
> (i)     extraordinary and compelling reasons warrant such a reduction; or
>
> (ii)    the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the [BOP] that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A)(i) and (ii).

The policy statement with respect to compassionate release in the U.S. Sentencing Guidelines sets out criteria and circumstances describing "extraordinary and compelling reasons." U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 1B1.13;[2] *see also United States v. Gonzalez*, 451 F. Supp. 3d 1194, 1197 (E.D. Wash. 2020) (noting that courts "universally" rely on U.S.S.G. § 1B1.13 to define "extraordinary and compelling reasons," even though that policy statement was issued before Congress passed the FSA and authorized defendants to file compassionate release motions).  However, the Ninth Circuit has held "that the current version of U.S.S.G.

---

[1]  If the BOP denies a defendant's request within 30 days of receipt of such a request, the defendant must appeal that denial to the BOP's "Regional Director within 20 calendar days of the date the Warden signed the response." 28 C.F.R. § 542.15(a).  If the Regional Director denies a defendant's administrative appeal, the defendant must appeal again to the BOP's "General Counsel within 30 calendar days of the date the Regional Director signed." *Id.* "Appeal to the General Counsel is the final administrative appeal." *Id.*  When the final administrative appeal is resolved, a defendant has "fully exhausted all administrative rights." *See* 18 U.S.C. § 3582(c)(1)(A).

[2]  The Sentencing Guidelines also require that, to be granted a reduction of sentence under 18 U.S.C. § 3582(c)(1)(A), the defendant must not pose "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)."  U.S.S.G. § 1B1.13(2).

3

§1B1.13 is not an 'applicable policy statement[ ]' for 18 U.S.C. § 3582(c)(1)(A) motions filed by a defendant." *United States v. Aruda*, 993 F.3d 797, 802 (9th Cir. 2021). "In other words, the Sentencing Commission has not yet issued a policy statement 'applicable' to § 3582(c)(1)(A) motions filed by a defendant." *Id.* The Ninth Circuit clarified that "[t]he Sentencing Commission's statements in U.S.S.G. § 1B1.13 may inform a district court's discretion for § 3582(c)(1)(A) motions filed by a defendant, but they are not binding." *Id.* (citing *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020)).

In the past, when moving for relief under 18 U.S.C. § 3582(c), courts recognized that the defendant bore the initial burden of demonstrating that a sentence reduction was warranted. *See United States v. Sprague*, 135 F.3d 1301, 1306–07 (9th Cir. 1998). Although the Ninth Circuit has not specifically addressed the question of which party bears the burden in the context of a motion for compassionate brought pursuant to § 3582(c) as amended by the FSA, district courts have agreed that the burden remains with the defendant. *See, e.g.*, *See United States v. Becerra*, No. 18-0080, 2021 WL 53542, at *3 (E.D. Cal. Feb. 12, 2021); *United States v. Greenhut*, No. 2:18-cr-00048-CAS, 2020 WL 509385, at *1 (C.D. Cal. Jan. 31, 2020); *United States v. Van Sickle*, No. 18-cr-0250-JLR, 2020 WL 2219496, at *3 (W.D. Wash. May 7, 2020).

**ANALYSIS**

To evaluate a request for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), a court must consider three requirements:

> First, as a threshold matter, the statute requires defendants to exhaust administrative remedies. 18 U.S.C. § 3582(c)(1)(A). Second, a district court may grant compassionate release only if "extraordinary and compelling reasons warrant such a reduction" and "that such reduction is consistent with applicable policy statements issued by the Sentencing Commission. *Id.* Third, the district court must also consider "the factors set forth in Section 3553(a) to the extent that they are applicable." *Id.*

*United States v. Rodriguez*, 424 F. Supp. 3d 674, 680 (N.D. Cal. 2019); *see also United States v. Ramirez-Suarez*, 16-CR-00124-LHK-4, 2020 WL 3869181, at *2 (N.D. Cal. July 9, 2020); *United States v. Parker*, 461 F. Supp. 3d 966, 970 (C.D. Cal. 2020); *United States v. Trent*, No. 16-cr-00178-CRB-1, 2020 WL 1812242, at *2 (N.D. Cal. Apr. 9, 2020) (noting that as to the third

4

1  factor, release under 18 U.S.C. § 3582(c)(1)(A) must be "consistent with" the sentencing factors

2  set forth in §3553(a)).

3  **A.    Administrative Exhaustion**

4        On June 20, 2020, prior to Shults filing his first compassionate release motion, he

5  submitted an administrative request to the Warden at FCI Lompoc.  The Warden denied Shults's

6  request on July 30, 2020.  (Doc. 145 at 8.)  Shults does not contest that he has not filed a more

7  recent administrative request.  (Doc. 146 at 14.)  The government argues that because Shults did

8  not file a second request with the Warden after the denial of the first compassionate release

9  motion, he has not met the administrative exhaustion requirement.  (Doc. 156 at 8.)  Because

10  Shults's motion has no substantive merit, the Court need not make a finding as to whether he

11  exhausted his administrative remedies.

12  **B.    Extraordinary and Compelling Reasons**

13        Shults claims that his medical conditions put him at increased risk of COVID-19

14  complications such that extraordinary and compelling circumstances exist for his release.  A

15  defendant's medical condition may warrant compassionate release where he or she "is suffering

16  from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory)," though

17  "[a] specific prognosis of life expectancy (i.e., a probability of death within a specific time

18  period) is not required."  U.S.S.G. § 1B1.13, cmt. n.1 (A)(i).  Non-exhaustive examples of

19  terminal illnesses that may warrant a compassionate release "include metastatic solid-tumor

20  cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia."

21  *Id.*  In addition to terminal illnesses, a defendant's debilitating physical or mental condition may

22  warrant compassionate release, including when:

23        The defendant is

24        (I)   suffering from a serious physical or medical condition,

25        (II)  suffering from a serious functional or cognitive impairment, or

26        (III) experiencing deteriorating physical or mental health because of
      the aging process,

27

28        that substantially diminishes the ability of the defendant to provide
      self-care within the environment of a correctional facility and from

1    which he or she is not expected to recover.

2  *Id.* at cmt. n.1 (A)(ii).

3        When a defendant has moderate medical issues that otherwise might not be sufficient to

4  warrant compassionate release under ordinary circumstances, some courts have concluded that

5  the risks posed by COVID-19 tip the scale in favor of release.  *See, e.g.*, *United States v.*

6  *Rodriguez*, 451 F. Supp. 3d 392, 405–06 (E.D. Pa. 2020) ("Without the COVID-19 pandemic—

7  an undeniably extraordinary event—Mr. Rodriguez's health problems, proximity to his release

8  date, and rehabilitation would not present extraordinary and compelling reasons to reduce his

9  sentence.  But taken together, they warrant reducing his sentence.").  COVID-19 may constitute

10 an extraordinary and compelling circumstance where defendants demonstrate that (1) their health

11 conditions put them at an increased risk of severe COVID-19 and (2) they are at risk of infection

12 because their facility is currently suffering from a COVID-19 outbreak or is at risk of an outbreak

13 because, for example, it is a congregate living facility in which inmates and staff cannot

14 consistently maintain safe physical distances.  *See, e.g.*, *United States v. Terraciano*, 492 F. Supp.

15 3d 1082, 1085–86 (E.D. Cal. 2020); *United States v. Smith*, 538 F. Supp. 3d 990 (E.D. Cal.

16 2021).[3]

17      BOP records show that Shults has been diagnosed with acid reflux, essential (primary)

18 hypertension, and hyperlipidemia.  (Doc. 182 at 11.)  His most recent BMI was recorded as 33.

19 (*Id*. at 37.)  Shults argues that these conditions put him at extraordinary and compelling risk.

20 Hypertension, high blood pressure, and obesity may cause increased risk of COVID-19

21 complications.  *See Coronavirus Disease 2019 (COVID-19): People with Certain Medical*

22 *Conditions*, CENTERS FOR DISEASE CONTROL AND PREVENTION,

23 https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-

24 conditions.html (last visited July 28, 2022).  However, vaccination mitigates this risk.

25      Since his first compassionate release motion, Shults has received at least one dose of the

26

27 [3] Compassionate release may also be warranted where a defendant is at least 65 years old, is experiencing a serious deterioration in physical or mental health due to aging, and has served at least 10 years or 75 percent of his term of imprisonment, whichever is less.  U.S.S.G. § 1B1.13, cmt. n.1(B).  These factors are irrelevant here because Shults is only 51 years old. (*See* Doc. 182 at 46.)

28

1    Moderna COVID-19 vaccine, (Doc. 182 at 41), and was expected to receive his second dose

2    shortly thereafter.  (Doc. 156 at 9.)  When a vaccinated defendant seeks compassionate release, he

3    must offer evidence of an elevated personal risk of severe harm despite the protections of

4    vaccination.  *United States v. Stone*, 2022 WL  2483755, at \*2 (E.D. Cal. Jul. 6, 2022) (citing

5    *United States v. Smith*, 538 F. Supp. 3d at 993–1000.)  When defendants offer no evidence

6    that vaccination will not protect them against severe harm from COVID-19 and do not show that

7    the facilities where they are currently incarcerated are experiencing a surge in infections caused

8    by a SARS-CoV-2 variant, courts deny motions more often than not. *See*, *e.g.*, *Smith*, 538 F.

9    Supp. 3d at \*997; *United States v. Andrade*, No. 17-00180, 2022 WL 172933, at \*2 (E.D. Cal.

10   Jan. 19, 2022); *see also, e.g.*, *United States v. Broadfield*, 5 F.4th 801, 803 (7th Cir. 2021) ("[F]or

11   the vast majority of prisoners, the availability of a vaccine makes it impossible to conclude that

12   the risk of COVID-19 is an 'extraordinary and compelling' reason for immediate

13   release."); *United States v. Decano*, No. 21-10099, 2021 WL 4922348 (9th Cir. Oct. 21,

14   2021) (unpublished) (affirming denial of compassionate release to fully vaccinated defendant).

15         Shults has not provided evidence suggesting that vaccination is insufficient to curb the

16   elevated COVID-19 risks of which he complains.  Furthermore, any concerns about his pre-

17   existing conditions are lessened by the fact that they are being properly managed.  While Shults

18   alleges that that FCI Lompoc is aware of but "refuses" to treat his chronic health issues, BOP

19   records indicate that Shults is medically evaluated regularly and is taking medication for his

20   hypertension and hyperlipidemia. (*See generally* Doc. 182; Doc. 182 at 3.)  More importantly,

21   Shults claims to have contracted COVID-19 twice since 2020 and has not provided evidence of

22   complications from either infection.  Shults now claims that both infections were "traumatic" and

23   "caused him to suffer severe symptoms," but his original compassionate release motion described

24   his first infection as "mild."  (Docs. 146 at 7; 141 at 21; 145 at 12.)  Medical records documenting

25   the first infection describe Shults as completely asymptomatic, (Doc. 182 at 76), and Shults

26   provides no evidence of either his second infection or any related complications.  On this record,

27   the Court cannot conclude that Shults has established extraordinary and compelling factors

28   warranting his release. *See United States v. Wakefield*, No. 1:19-CR-00095-MR-WCM, 2021 WL

1    640690, at \*2 (W.D.N.C. Feb. 18, 2021) (finding no extraordinary and compelling circumstances

2    where defendant with risk factors had recovered from COVID-19 without complication and was

3    in the process of being vaccinated).[4]

4    **C.      Consistency with the § 3553(a) Factors**

5           Separately, the § 3553(a) factors do not favor relief in this case.  Any relief to be granted

6    pursuant to 18 U.S.C. § 3582(c)(1)(A) must be consistent with the sentencing factors set forth in

7    §3553(a).[5] As Judge Drozd noted in denying Shults's first motion for compassionate release,

8    Shults's criminal conduct that led to this conviction was particularly egregious.  Shults threatened

9    his original sentencing judge and took steps to hire an individual to murder that judge.  Judge

10   Drozd concluded that a reduction in Shults's sentence would not be justified even considering

11   Shults's post-incarceration rehabilitation efforts.  (Doc. 145 at 16–17.)  Shults has not provided

12   new information from which the Court could reevaluate or depart from Judge Drozd's original

13   finding on this point.  Therefore, Shults's motion will additionally be denied on the basis that his

14   release is not consistent with the § 3553 sentencing factors.

15   ///

16   ///

17   ///

18   ///

---

19   [4] A significant portion of Shults's motion complains about COVID-19 protocols and protections in FCI Lompoc.  To
20   the extent that Shults means to challenge the conditions of his confinement, that claim may be properly brought in a
     habeas petition or a direct civil claim, not via compassionate release.  *See United States v. Numann*, No. 3:16-CR-
21   00065-TMB, 2020 WL 1977117, at \*4 (D. Alaska Apr. 24, 2020) (holding that an Eighth Amendment claim "relating
     to the manner and conditions of confinement—[is] not properly brought in a motion for compassionate release");
22   *United States v. Miller*, No. 15-CR-00471-CRB-1, 2021 WL 2711728, at \*4 (N.D. Cal. July 1, 2021) (observing that
     inmates have "alternative avenues to obtain improved medical care"); *Torres v. Milusnic*, 472 F. Supp. 3d 713, 743–
23   46 (C.D. Cal. 2020) (granting provisional class certification to a subset of FCC Lompoc inmates regarding COVID-
     19 exposure).

24   [5] Title 18 U.S.C. § 3553(a) provides that, in determining the sentence to be imposed, the court shall consider: the
     nature and circumstances of the offense and the history and characteristics of the defendant; the need for the sentence
25   imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the
     offense, afford adequate deterrence, protect the public from further crimes of the defendant and provide the defendant
26   with needed educational or vocational training, medical care, or other correctional treatment in the most effective
     manner; the kinds of sentences available; the kinds of sentence and the sentencing range established for the
27   applicable category of offense committed by the applicable category of defendant as set forth in the guidelines; any
     pertinent policy statement issued by the Sentencing Commission; the need to avoid unwarranted sentence disparities
28   among defendants with similar records who have been found guilty of similar conduct; and the need to provide
     restitution to any victims of the offense.

8

**CONCLUSION**

Accordingly,

1.  Defendant Shults's motion for compassionate release pursuant to 18 U.S.C.

    § 3582(c)(1)(A), filed September 27, 2021 (Doc. 146), is **DENIED**.

IT IS SO ORDERED.

Dated:   __**July 28, 2022**__                                  _Jennifer L. Thurston_
UNITED STATES DISTRICT JUDGE

9