1  PHILLIP A. TALBERT
   United States Attorney
2  ANGELA L. SCOTT
   Assistant United States Attorney
3  501 I Street, Suite 10-100
   Sacramento, CA 95814
4  Telephone:  (916) 554-2700
   Facsimile:  (916) 554-2900
5

6  Attorneys for Plaintiff
   United States of America
7

8              IN THE UNITED STATES DISTRICT COURT

9                EASTERN DISTRICT OF CALIFORNIA

10

11 UNITED STATES OF AMERICA,           CASE NO.  1:17-CR-00136-JLT-SKO

                     Plaintiff,        GOVERNMENT'S OPPOSITION TO
12                                     DEFENDANT'S SECTION 2255 MOTION

                v.
13

14 CRAIG SHULTS,

                     Defendant.
15

16

17

18

19

20

21      **GOVERNMENT'S OPPOSITION TO DEFENDANT'S SECTION 2255 MOTION**

22

23

24

25

26

27

28

GOVERNMENT'S OPPOSITION TO
DEFENDANT'S SECTION 2255 MOTION

# TABLE OF CONTENTS

I.  INTRODUCTION ...........................................................................................................1

II.  STATEMENT OF RELEVANT FACTS .......................................................................1

    A.  Nature of the Offense ...........................................................................................1

    B.  Charges ..................................................................................................................3

    C.  Motion to Continue ..............................................................................................3

    D.  Defense's Cross-Examination of Prosecution Witnesses ...................................4

    E.  The Defense Case .................................................................................................5

    F.  Shults's Potential Trial Testimony .....................................................................8

    G.  Conviction and Sentencing ..................................................................................9

    H.  Direct Appeal .....................................................................................................11

    I.  Section 2255 Motion ..........................................................................................11

III.  LEGAL STANDARDS ..................................................................................................12

    A.  Ineffective Assistance of Counsel .....................................................................12

    B.  Right to Autonomy .............................................................................................14

IV.  ANALYSIS .....................................................................................................................18

    A.  Shults Has Procedurally Defaulted His Right to Claim Structural Error Based on his Failure to Testify (Ground One) .................................................18

    B.  Shults Fails to Establish that his Counsel Deprived Him of the Right to Testify (Ground One) .........................................................................................20

        1.  *Because Shults Waived His Right to Testify, Shults Cannot Establish that His Counsel was Deficient* ...............................................................20

        2.  *Because Shults Waived His Right to Testify, Shults Cannot Establish that His 'Right to Autonomy' was Violated* ................................................23

        3.  *Shults has not Established that Counsel Performed Deficiently by not Calling Shults as a Witness* ..........................................................................24

        4.  *Shults has not Established that He was Prejudiced by His Counsels' Decision* ........................................................................................................26

    C.  Shults Cannot Establish that His Counsel Was Ineffective for not Calling Two Witnesses and for Failing to Ask One Witness One Question (Grounds Two and Three) ..................................................................................28

        1.  *Counsels' Performance was Not Deficient* ...............................................30

2.   *Shults Suffered No Prejudice by Counsels' Failure to Call These Witnesses or to Ask Witness Hassan a Question* .................................................32

D.   **Shults Cannot Establish that His Counsel Was Ineffective for not Calling a Prison Expert Witness** .................................................................34

1.   *Shults has not Provided Sufficient Evidence to Meet His Burden* ...................34

2.   *The Proposed Testimony would have been Inadmissible Because It is Improper* .................................................................................34

3.   *The Proposed Testimony would have been Inadmissible Because It is Cumulative, Confusing, and Irrelevant* ...........................................36

4.   *It was Sound Trial Strategy to Refrain from Calling Shults's Proposed Expert* .................................................................38

5.   *Shults was not Prejudiced by the Warden not Testifying* ...................................39

E.   **Shults is not Entitled to a Hearing on Any of his Claims** .............................................39

V.    **WAIVER OF ATTORNEY-CLIENT PRIVILEGE** ........................................................40

VI.   **CONCLUSION** ....................................................................................41

# TABLE OF AUTHORITIES

## CASES

*Alexander v. McCotter,*
   775 F.2d 595 (5th Cir. 1985) ................................................................................ 28

*Allen v. Woodford,*
   395 F.3d 979 (9th Cir. 2005) .......................................................................... 28, 30

*Arizona v. Fulminante,*
   499 U.S. 279 (1991) ............................................................................................. 14

*Austin v. Paramo,*
   2018 WL 4362082 (C.D. Cal. Sept. 11, 2018) ................................................... 24

*Babbitt v. Calderon,*
   151 F.3d 1170 (9th Cir. 1998) ............................................................................ 31

*Beatriz Govea v. United States,*
   No. 3:15-CR-01880 W, 2019 WL 1491958 (S.D. Cal. Apr. 4, 2019).................. 17

*Bittaker v. Woodford,*
   331 F.3d 715 (9th Cir. 2003) .............................................................................. 40

*Bousley v. United States,*
   523 U.S. 614 (1998) ............................................................................................ 19

*Burt v. Titlow,*
   571 U.S. 12 (2013) .............................................................................................. 40

*Campbell v. Rice,*
   408 F.3d 1166 (9th Cir. 2005) ............................................................................ 14

*Campbell v. Wood,*
   18 F.3d 662 (9th Cir. 1994) ................................................................................ 13

*Carter v. Davis,*
   946 F.3d 489 (9th Cir. 2019) .............................................................................. 16

*Chapman v. Lampert,*
   371 F. App'x 742 (9th Cir. 2010)........................................................................ 31

*Christensen v. United States,*
   No. CR-14-08164-PCT-DGC, 2020 WL 1672771 (D. Ariz. Apr. 6, 2020) ........ 17

*Coleman v. Thompson,*
   501 U.S. 722 (1991)............................................................................................ 19

GOVERNMENT'S OPPOSITION TO
DEFENDANT'S SECTION 2255 MOTION

*Cuevas Espinoza v. Hatton,*
  No. 10CV397-WQH-BGS, 2020 WL 434269 (S.D. Cal. Jan. 28, 2020) ............................................ 17

*Dickinson v. Shinn,*
  No. CV-18-08037-PCT-MTL, 2020 WL 587850 (D. Ariz. Feb. 6, 2020) ........................................ 17

*Dows v. Wood,*
  211 F.3d 480 (9th Cir. 2000) ................................................................................................ passim

*Duncan v. United States,*
  No. 2:07-CR-00023-EJL, 2019 WL 1320039 (D. Idaho Mar. 22, 2019) ........................................ 17

*Espinoza v. Hatton,*
  No. 10-CV-397-WQH-BGS, 2020 WL 6582639 (S.D. Cal. Nov. 10, 2020) ...................................... 17

*Florida v. Nixon,*
  543 U.S. 175 (2004) .......................................................................................................... 15, 23

*Galvez v. Muniz,*
  845 F. App'x 542 (9th Cir. 2021) .............................................................................................. 16

*Grisby v. Blodgett,*
  130 F.3d 365 (9th Cir. 1997) ........................................................................................ 29, 30, 34

*Harrington v. Richter,*
  562 U.S. 86 (2011) ........................................................................................................... passim

*Hartman v. Knudsen,*
  No. CV 22-57-M-DLC, 2022 WL 3346375 (D. Mont. Aug. 12, 2022) ............................................ 17

*Herrera v. Att'y Gen. of Arizona,*
  No. CV-17-00183-TUC-RM, 2021 WL 347815 (D. Ariz. Feb. 2, 2021) .......................................... 17

*Hovey v. Ayers,*
  458 F.3d 892 (9th Cir. 2006) .................................................................................................. 36

*Hunt v. Blackburn,*
  128 U.S. 464 (1888) ............................................................................................................. 41

*Johnson v. United States,*
  520 U.S. 461 (1997) ............................................................................................................. 14

*Jones v. Neuschmid,*
  No. 18-01738 EJD (PR), 2021 WL 1056597 (N.D. Cal. Mar. 18, 2021) ........................................ 14

*Jurado v. Davis,*
  12 F.4th 1084 (9th Cir. 2021) ................................................................................................ 24

GOVERNMENT'S OPPOSITION TO
DEFENDANT'S SECTION 2255 MOTION

*Karkehabadi v. Tampkins,*
  No. 816CV01854JLSMAA, 2019 WL 3849175 (C.D. Cal. May 24, 2019) ....................................... 21

*Lester v. Ayers,*
  267 Fed. Appx. 725 (9th Cir. 2008) ........................................................................................... 29

*Lord v. Wood,*
  184 F.3d 1083 (9th Cir. 1999) .................................................................................................. 28

*Mancuso v. Olivarez,*
  292 F.3d 939 (9th Cir. 2002) ............................................................................................... 29, 31

*Manning v. Foster,*
  224 F.3d 1129 (9th Cir. 2000) .................................................................................................. 19

*Massaro v. United States,*
  538 U.S. 500 (2003) .................................................................................................................. 18

*Matylinsky v. Budge,*
  577 F.3d 1083 (9th Cir. 2009) .................................................................................................. 16

*Mayle v. Felix,*
  545 U.S. 644 (2005) ............................................................................................................. 11, 18

*McKay-Erskine v. Uttecht,*
  No. C18-5024 BHS, 2019 WL 1505933 (W.D. Wash. Apr. 5, 2019) ........................................ 17

*Medley v. Runnels,*
  506 F.3d 857 (9th Cir. 2007) .................................................................................................... 16

*Mixon v. Robertson,*
  2021 WL 5362083 (C.D. Cal. Sept. 16, 2021) .......................................................................... 24

*Morris v. State of Cal.,*
  966 F.2d 448 (9th Cir. 1992) ......................................................................................... 29, 30, 34

*Murray v. Carrier,*
  477 U.S. 478 (1986) .................................................................................................................. 19

*Nimely v. City of New York,*
  414 F.3d 381 (2d Cir. 2005) ..................................................................................................... 35

*Norris v. Wilson,*
  378 F.2d 324 (9th Cir. 1967) .................................................................................................... 40

*Ortiz v. United States,* No. CR-01-98-S-B,
  LW, 2006 WL 560587 (D. Idaho Mar. 7, 2006) .................................................................. 32, 34

*Padilla v. Kentucky,*
    559 U.S. 356 (2010)..................................................................................................... 12

*Parke v. Raley,*
    506 U.S. 20 (1992)........................................................................................................ 22

*People of Territory of Guam v. Santos,*
    741 F.2d 1167 (9th Cir. 1984) ..................................................................................... 39

*Ponce v. Eldridge,*
    No. 519CV00751DMGMAA, 2019 WL 8501633 (C.D. Cal. Aug. 19, 2019).................... 18

*Preciado v. Munez,*
    No. CV1601886FMOJDE, 2017 WL 11633163 (C.D. Cal. Dec. 22, 2017) ................. 28, 30

*Riedel v. McDonald,*
    No. CV 18-4045-R (PLA), 2018 WL 5816238 (C.D. Cal. Sept. 24, 2018) ........................ 16

*Sanchez v. Matteson,*
    No. 218CV02947DSFMAA, 2021 WL 1577825 (C.D. Cal. Apr. 22, 2021) ..................... 29

*Sanchez v. Neuschmid,*
    No. 218CV02947DSFMAA, 2021 WL 1192001 (C.D. Cal. Feb. 17, 2021) ..................... 29

*Shah v. United States,*
    878 F.2d 1156 (9th Cir. 1989) ................................................................................. 39, 40

*Shelton v. Kernan,*
    No. 2:14-CV-02000-JKS, 2017 WL 2691918 (E.D. Cal. June 22, 2017) ......................... 24

*Siripongs v. Calderon,*
    133 F.3d 732 (9th Cir. 1998) ....................................................................................... 31

*Slack v. McDaniel,*
    529 U.S. 473 (2000)....................................................................................................... 29

*Smith v. Adams,*
    506 Fed. Appx. 561 (9th Cir. 2013)............................................................................... 29

*Staten v. Davis,*
    962 F.3d 487 (9th Cir. 2020) ....................................................................................... 32

*Stephens v. Hall,*
    294 F.3d 210 (1st Cir. 2002)......................................................................................... 32

*Strickland v. Washington,*
    466 U.S. 668 (1984)................................................................................................ passim

*Thompson v. Premo*,
   No. 6:15-CV-01313-AA, 2021 WL 1929821 (D. Or. May 13, 2021) ................................................ 17

*Tinsley v. Borg*,
   895 F.2d 520 (9th Cir. 1990) ................................................................................................ 29

*United States v. Ancrum*,
   161 F. App'x 258 (4th Cir. 2006) .......................................................................................... 35

*United States v. Antone*,
   412 F. App'x 10 (9th Cir. 2011) ............................................................................................ 35

*United States v. Ashimi*,
   932 F.2d 643 (7th Cir. 1991) .................................................................................... 29, 30, 34

*United States v. Banaga*,
   443 Fed.Appx. 262, fn. 1  (9th Cir. 2011) ...................................................................... 20, 25

*United States v. Barron*,
   172 F.3d 1153 (9th Cir. 1999) .............................................................................................. 12

*United States v. Beasley*,
   72 F.3d 1518 (11th Cir. 1996) .............................................................................................. 35

*United States v. Birtle*,
   792 F.2d 846 (9th Cir. 1988) ................................................................................................ 14

*United States v. Blaylock*,
   20 F.3d 1458 (9th Cir. 1994) ................................................................................................ 40

*United States v. Braswell*,
   501 F.3d 1147 (9th Cir.2007) ............................................................................................... 19

*United States v. Call*,
   73 F. App'x 268 (9th Cir. 2003) ........................................................................................... 36

*United States v. Candoli*,
   870 F.2d 496 (9th Cir. 1989) ................................................................................................ 35

*United States v. Cochrane*,
   985 F.2d 1027 (9th Cir. 1993) .............................................................................................. 13

*United States v. Davis*,
   457 F.3d 817 (8th Cir. 2006) ................................................................................................ 36

*United States v. Dominguez Benitez*,
   542 U.S. 74 (2004) ................................................................................................................ 14

*United States v. Edwards*,
   897 F.2d 445 (9th Cir. 1990) ................................................................................. 20, 21

*United States v. Ervin*,
   No. CR 14-04-BU-DLC, 2014 WL 2993750 (D. Mont. July 2, 2014)................................................ 35

*United States v. French*,
   12 F.3d 114 (8th Cir. 1993) ................................................................................. 35

*United States v. Gillenwater*,
   717 F.3d 1070 (9th Cir. 2013) ................................................................................. 16

*United States v. Gustave*,
   627 F.2d 901 (9th Cir. 1980) ................................................................................. 29, 30

*United States v. Hamilton*,
   792 F.2d 837 (9th Cir. 1986) ................................................................................. 13

*United States v. Harden*,
   846 F.2d 1229 (9th Cir. 1988) ................................................................................. 28, 30

*United States v. Jingles*,
   702 F.3d 494 (9th Cir. 2012) ................................................................................. 19

*United States v. Joelson*,
   7 F.3d 174 (9th Cir. 1993) ................................................................................. 20

*United States v. Johnson*,
   297 F.3d 845 (9th Cir. 2002) ................................................................................. 36

*United States v. Johnson*,
   988 F.2d 941 (9th Cir. 1993) ................................................................................. 40

*United States v. Martinez*,
   883 F.2d 750 (9th Cir. 1989) ................................................................................. 21

*United States v. McMullen*,
   98 F.3d 1155 (9th Cir. 1996) ................................................................................. 39, 40

*United States v. Morales*,
   108 F.3d 1031 (9th Cir.1997) ................................................................................. 34, 35

*United States v. Murray*,
   751 F.2d 1528 (9th Cir. 1985) ................................................................................. 28, 30

*United States v. Nohara*,
   3 F.3d 1239 (9th Cir.1993) ................................................................................. 20, 21

*United States v. Pino-Noriega,*
   189 F.3d 1089 (9th Cir. 1999) ............................................................... 20, 21

*United States v. Quintero-Barraza,*
   78 F.3d 1344 (9th Cir. 1995) ........................................................................ 39

*United States v. Ramirez-Rodriquez,*
   552 F.2d 883 (9th Cir. 1977) ........................................................................ 34

*United States v. Ratigan,*
   351 F.3d 957 (9th Cir. 2003) ........................................................................ 19

*United States v. Sanchez-Cervantes,*
   282 F.3d 664 (9th Cir. 2002) ........................................................................ 12

*United States v. Schaflander,*
   743 F.2d 714 (9th Cir.1984) ......................................................................... 31

*Wagner v. United States,*
   418 F.2d 618 (9th Cir. 1969) ........................................................................ 40

*Wallace v. United States,*
   457 F.2d 547 (9th Cir. 1972) ........................................................................ 39

*United States v. McCoy,*
   138 S.Ct. 1500 (2018) ............................................................................. 15, 24

*Weaver v. Massachusetts,*
   137 S. Ct. 1899 (2017) ............................................................................ 14, 23

*Williams v. United States,*
   2018 WL 4656231 ......................................................................................... 14

*Williams v. United States,*
   3:15-CV-01301 (VLB),2018 U.S. Dist. LEXIS 165819 * 15 (D. Conn. Sep. 27, 2018) ............... 15, 20

*Womack v. Del Papa,*
   497 F.3d 998 (9th Cir. 2007) ........................................................................ 39

*Yarborough v. Gentry,*
   540 U.S. 1 (2003) ........................................................................................ 25

## STATUTES

18 U.S.C. § 115(a)(1)(B) ...................................................................................... 3

18 U.S.C. § 2254 ................................................................................................. 39

28 U.S.C. § 2255 ................................................................................................................ passim

28 U.S.C. § 2255(f) ................................................................................................................ 18

## RULES

Fed. R. Civ. P. 15(c)(1) ......................................................................................................... 18

Fed. R. Evid. 401 ................................................................................................................... 36

Fed. R. Evid. 613(b) .............................................................................................................. 30

Fed. R. Evid. 702 ................................................................................................................... 34

Federal Rule of Civil Procedure 15(a)(2) ............................................................................. 18

PHILLIP A. TALBERT
United States Attorney
ANGELA L. SCOTT
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 1:17-CR-00136-JLT-SKO |
| Plaintiff, | GOVERNMENT'S OPPOSITION TO DEFENDANT'S SECTION 2255 MOTION |
| v. | |
| CRAIG SHULTS, | |
| Defendants. | |

## I.    **INTRODUCTION**

The government respectfully requests that the Court deny or dismiss Craig Shults's 28 U.S.C. § 2255 motion and find that Shults has failed to meet his burden as to each of his four claims.  In the alternative, the government seeks leave of the Court to apply for a limited waiver of attorney-client privilege to permit the government to obtain a declaration, testimony, and/or other evidence necessary to defend against Shults's ineffective assistance of counsel claims.

## II.    **STATEMENT OF RELEVANT FACTS**

### A.    **Nature of the Offense**

On April 18, 2012, in case number 8:12-cr-90, Shults was indicted in the Central District of

California ("CDCA") on multiple counts of wire fraud.  Exhibit 1 (hereinafter, "CDCA CR") 1.[1]  He

was released on bond. CDCA CR 23, 26.  Thereafter, on October 21, 2013, United States District Judge

Andrew Guilford found that Shults had violated his pretrial supervision conditions, and, consequently,

revoked his bond, and ordered him remanded into federal custody pending trial.  CDCA CR 164, 172.

In late 2013, while housed at the Metropolitan Detention Center in Los Angeles, Shults told

another inmate, Carlos Galeana, that he was angry with Judge Guilford for revoking his bond. CR 124

(hereinafter "12/12/18 RT") 241:15-246:24; CR 105 (Final Presentence Report (hereinafter, "PSR")) ¶

6.  Shults said that he wanted to "horse fuck" Judge Guilford, "bury him," and have others dig up dirt on

him. 12/12/18 RT 241:15-246:24, 252:24-253:3; PSR ¶ 6.

Ultimately, a jury convicted Shults of the wire fraud scheme, and Judge Guilford sentenced him

to serve a 90-month term of imprisonment and to pay $2,000,000 in restitution. PSR ¶¶ 7, 49. Shults

moved for bond pending his appeal, which Judge Guilford denied.  PSR ¶ 7.

By September 2016, Shults was incarcerated at Taft Correctional Institution ("Taft CI") serving

the 90-month sentence.  CR 108 (Gov't Sentencing Brief) at p. 13; PSR ¶ 8.  While at Taft CI, Shults

made several threats to harm Judge Guilford to a fellow inmate, William Knox. CR 125 (hereinafter,

"12/13/18 RT") 667:20-690:2.  Shults made these threats during the fall, including in September 2016,

and on October 25, November 27, and December 11, 2016. 12/13/18 RT 667:20-690:2.  Shults's

December 11 threats were covertly recorded and included statements such as, "I'm hunting him," "I'm

going to get rid of him," "somebody just comes up and fucking whacks him out," and "Put him in a

fucking rubber room. Straight jacket his ass. Feed him intravenously."  PSR ¶ 16; CR 108-4, 108-14; CR

123 (hereinafter, "12/11/18 RT") 277:15-291:4; 12/13/18 RT 683:17-690:7.[2]

---

[1] Citations to the Eastern District of California district court criminal docket of *United States v. Shults*, 17-CR-00136-JLT-SKO will be referred to as "CR."  Citations to the Ninth Circuit appellate docket of *United States v. Shults*, CA 19-10106 (Shults's direct appeal from the instant case) will be referred to as "CA."  Citations to the Central District of California district court criminal docket of *United States v. Shults*, 8:12-cr-00090-JLS will be referred to as "CDCA CR."  Citations to the Ninth Circuit appellate docket for Shults's appeal of his CDCA conviction – *United States v. Shults*, CA 14-50515 – will be referred to as "CA 14-50515"

[2] Transcripts of clips of the December 11, 2016 recording were marked and displayed at trial, and those marked transcripts were attached to the government's sentencing brief (CR 108).  Given that the marked transcripts are available on the docket, the government has not concurrently submitted with this opposition the actual recordings themselves that were admitted at trial.  The government will do so at the Court's request.

Shults revealed to Knox that he knew certain personal information about Judge Guilford, including his basketball schedule: "Andy Guilford plays basketball every Thursday, I know he plays basketball every Thursday." PSR ¶ 16; CR 108-4; 12/13/18 RT 607:10-608:3, 680:2-7. Additionally, among his prison belongings, Shults possessed an internet article containing personal information about Judge Guilford. CR 108-5; 12/12/18 RT 291:6-22. Shults also made various comments in prison emails and during a prison jail call that demonstrated his animosity toward Judge Guilford. PSR ¶ 26; CR 108-6, 108-15, 108-16, 108-17; 12/12/18 RT 297:22-309:10.

After Taft CI personnel learned of the threats charged in this case, Shults was transferred to the Federal Correctional Institution in Lompoc, California. 12/12/18 RT 291:5-15; PSR ¶ 20. At FCI Lompoc, Shults met Pavel Valkovich. 12/11/18 RT 164:3-166:24; PSR ¶ 20. Aware that Valkovich was incarcerated for murder solicitation and was also in need of money, Shults offered to pay Valkovich to use his "hitmen" contacts to arrange Judge Guilford's murder. 12/11/18 RT 169:2-172:24; PSR ¶¶ 20-25. Shults approached Valkovich with this request on several occasions, eventually offering to pay more to also arrange the murder of Knox, the inmate at Taft CI who recorded Shults's threats. 12/11/18 RT 178:1-185:24; PSR ¶¶ 20-25.

### B.    Charges

On May 25, 2017, the grand jury returned a single-count indictment against Shults. CR 1. Shults was charged with retaliating against a federal official by threat, specifically, Judge Guilford. 18 U.S.C. § 115(a)(1)(B); CR 1.

### C.    Motion to Continue

Shults appealed his convictions in the CDCA. *See* Exhibit 2 (hereinafter, "14-50515 CA") 24. On April 6, 2018, the Ninth Circuit affirmed his CDCA convictions. *See* 14-50515 CA 95. On May 18, 2018, Shults petitioned the Ninth Circuit for a rehearing *en banc*. *See* 14-50515 CA 99.

Shults's threats case in the Eastern District of California ("EDCA") was originally set for trial on August 28, 2018. CR 17. On August 6, 2018, Shults moved for a trial continuance. CR 32. The crux of Shults's argument was that if he testified in the EDCA case, he could incriminate himself in the CDCA case were his conviction to be reversed *en banc* and his CDCA case be retried. CR 32 at p. 2. Shults argued that this would risk "hampering the defense's strategy at the upcoming trial." CR 32 at p.

1. At the August 8, 2018 hearing on that motion – with Shults present – Shults's counsel, Mr. Lee, stated, "So if, in fact, he does receive a new trial, ultimately, in that case, that puts his constitutional right in this case to take the stand in his own defense at odds with his right to remain silent in the other case." CR 43 (hereinafter, "8/8/18 RT") 11:5-9.  The Court ultimately granted Shults's motion and continued the trial to December 11, 2018.  CR 40.

On August 31, 2018, the Ninth Circuit denied Shults's petition for rehearing *en banc*.  *See* 14-50515 107.  Shults petitioned the United States Supreme Court for a writ of certiorari on October 18, 2018.  *See* 14-50515 CA 109.  On October 1, 2018, Shults again moved for a trial continuance in the EDCA case, noting that

> If Mr. Shults is successful with his Supreme Court petition, the remedy required would be a remand for a new trial, severed from his co-defendants' trials.  Accordingly, any testimony from Mr. Shults in the instant case would infringe upon his right to remain silent in his Central District case.

CR 46 at p. 2.  In support of this motion, Shults submitted two declarations – one from his counsel in the EDCA case, Charles Lee, and one from is trial counsel in the CDCA case, James Reddit.  Notably, Mr. Reddit's declaration stated:

> To the best of my recollection, based on my assessment of the case, I advised Mr. Shults to invoke his Fifth Amendment right to remain silent and not testify on his own behalf.  Mr. Shults did not, in fact, testify at his trial.

CR 46 at p. 5.  At the October 15, 2018 hearing on his second motion to continue the trial, in Shults's presence, counsel and the Court had extensive discussions about Shults's right to testify and how his decision might be impacted by his petition to the Supreme Court.  *See* CR 54 (hereinafter "10/15/18 RT").  The Court ultimately denied that motion.  *See* CR 52; 10/15/18 RT 18:15-16.  On December 3, 2018, the Supreme Court denied Shults's petition for a writ of certiorari.  CA 14-50515 110.  The parties proceeded to trial in the EDCA case on December 11, 2018.  CR 86; 12/11/18 RT.

### D.    Defense's Cross-Examination of Prosecution Witnesses

At trial, the government called prison inmate Pavel Valkovich and former prison inmate Carlos Galeana who testified about the threats Shults made regarding Judge Guilford.  12/11/13 RT 161:17-218:14; 12/12/13 RT 241:1-258:6.  Shults's counsel cross-examined these witnesses and attempted to

impeach their credibility by questioning their motivations for cooperating, including benefits they had received or that they anticipated receiving from the government.  12/11/18 RT 188:15-212:9; 12/12/18 RT 252:10-256:25.  During his testimony, Valkovich indicated that he had told another inmate, Edward Dablan, about Shults's threats.  12/11/18 RT 197:8-199:7.  Thereafter, the defense also attacked Valkovich's credibility by calling inmate Dablan, who essentially denied that Valkovich told him of Shults's threats to kill Judge Guilford. 12/13/18 RT 522:10-524:7.

The government did not call inmate William Knox, the inmate who had obtained the recordings that captured Shults's threats against Judge Guilford.  Instead, the government introduced Shults's recording with Knox via the Federal Bureau of Investigation's (FBI's) case agent.  Shults's counsel attempted to call into question Knox's credibility through their cross examination of the case agent. 12/12/18 RT 418:13-25, 419:21-435:16.

### E.   The Defense Case

Shults was represented by Deputy Federal Public Defenders Charles Lee and Erin Snider. Notably, before his recent appointment to the Fresno Superior Court bench, Mr. Lee had served in several positions at the Federal Defender's Office since 2008, including Fresno Branch Chief and Assistant Federal Public Defender.  *See* https://www.gov.ca.gov/2021/12/23/governor-newsom-announces-judicial-appointments-12-23-21.

At trial, the defense called inmate Knox.  While this was technically a direct examination, Mr. Lee spent the majority of his examination attempting to impeach Mr. Knox's credibility.  Counsel questioned Knox about his criminal history including any hidden assets.  12/13/18 RT 584:12-22; 623:13-624:19; 633:18-636:22; 645:14-661:21.  Counsel questioned Knox about Knox having told the FBI that another inmate, Bill Ison, once heard Shults threaten his sentencing judge.  12/13/18 RT 605:3-605:8.  The defense had previously called Ison who denied having heard such threats.  12/13/18 RT 491:24-495:14 .  Counsel devoted a significant portion of the examination to Mr. Knox's motivations for cooperating with the government both against Shults and on other matters, including to obtain a reduced sentence via a Rule 35 motion, to have his daughter intern for Judge Guilford, to have a movie made about his life, and to spend time with the female prosecutor on Shults's case. 12/13/18 RT 589:1-592:25; 612:9-613:9; 616:21-623:12; 624:20-633:17; 636:23-645:13; 662:5-667:7; 694:13-695:11-696:8.

The defense also called 16 witnesses.  12/13/18 RT; CR 126 (hereinafter, "12/14/18 RT").

Defense counsel elicited testimony from many of these witnesses regarding Shults's propensity to

exaggerate or entirely fabricate facts about himself.  *See* 12/13/18 RT 488:11-491:8 (former inmate Bill

Ison discussing Shults's storytelling); 501:17- 504:20 (former inmate Rick Black noting that Shults

"talked stupid" and tried to "make himself bigger and better than everybody."); 509:5-514:3 (Food

Service Corrections Officer Tony Barraza testifying that Shults was a "bullshitter" and "used car

salesman"); 530:14-531:13 (Corrections Officer Gary Stotler testifying that Shults embellished stories

about his military service and being Special Forces); 540:18-548:12 (former inmate Travis McGee

testified that Shults fabricated stories about himself based on books available at the prison, and that he

even borrowed one of Mr. McGee's own stories); 554:3-557:19  (inmate Tayfun Karauzum testified

about various stories that Shults told him, including about how Shults brokered a deal between Tyson

Chicken and Russia and that Shults wrote an algorithm for Google); 568:18-569:4 (inmate Gari Aldridge

testified about Shults fabricating stories about his military service); 12/14/18 RT 740:25-741:13 (former

inmate Michael Mai testified about Shults claiming to be able to make 800 percent returns on his

investments and that he "talk[ed] nonsense.")

Former inmate Anwar Assan also testified that Shults often embellished. 12/14/18 RT 758:20-

759:8.  After the government's cross examination of Assan, defense counsel was given an opportunity

for a redirect examination on Assan, which counsel declined.  12/14/18 RT 762:25-763:4.  Shults was

present for this exchange.

The defense also attempted to impeach Knox through some of these witnesses.  12/13/18 RT

505:3-506:8 (Rick Black discussing Knox's physical altercation in jail and noting that "something just

wasn't right with the guy); 491:24-495:14, 580:3-25 (Bill Ison and Investigator Darcy Smith both noting

that Mr. Ison never heard Shults threaten his judge, which arguably impeached Knox's testimony that

Ison was present for one of the threats.)  The defense also called former inmate Michael Mai who

testified that Knox had told him that he might have a chance to go home early due to his cooperation

with the FBI.  12/14/18 RT 743:6-745:25.

The defense also called Knox's former cellmate, Julio Caro, in an attempt to impeach Knox.

Knox testified that he had not discussed the Shults case with Caro.  12/13/18 RT 696:9-13.  Caro

GOVERNMENT'S OPPOSITION TO
DEFENDANT'S SECTION 2255 MOTION

testified that Knox had discussed his recording of Shults with Caro.  12/14/18 RT 732:15-734:19.  Caro explained that Knox told him that the recording did not work on the first attempt, but it did the second time.  12/14/18 RT 733:16-19.  Caro also testified that Knox stated that it was difficult to get Shults to go to the second meeting.  12/14/18 RT 733:20-23.  Caro testified that Knox indicated that he was expecting a reduced sentence for his cooperation.  12/14/18 RT 734:7-19.

The defense also called Gari Aldridge, who was an inmate at FCI Lompoc during the time that Shults and Valkovich were at FCI Lompoc.  12/13/18 RT 565:22-567:6.  While serving his sentence at FCI Lompoc, Aldridge had testified as a defense witness at a criminal trial in which John Walthall was a defendant.  12/13/18 RT 561:7-564:17.  Walthall had been sentenced by Judge Guilford and had later threatened to kill Judge Guilford, and he was prosecuted by the government for his conduct.  12/11/18 RT 225:25-228:3; 12/13/18 RT 561:7-564:17.  Aldridge testified that, when he returned to FCI Lompoc after the Walthall trial, he distributed transcripts of his trial testimony to other inmates.  12/13/18 RT 561:7-564:11.  He indicated that other cooperators who testified at trial did the same.  12/13/18 RT 564:3-564:11.  Aldridge testified that Valkovich was at FCI Lompoc before and after Aldridge testified in the *Walthall* case.  12/13/18 RT 566:16-21.  Likewise, the defense called former inmate Dablan, who testified similarly about the *Walthall* case, noting, that he spoke with Valkovich about "how these inmates wearing a wire and supposedly set this guy up to reduce their sentence."  12/13/18 RT 518:12-522:23.  Dablan noted that the case was "the talk of the compound."  12/13/18 RT 520:7-21, 522:1-23.  Both Aldridge and Dablan noted that an individual who originally testified for the defense "flipped" and testified for the government at the *Walthall* retrial.  12/13/18 RT 522:10-17, 562:16-26.  During Shults's closing argument, Mr. Lee argued that inmate Valkovich fabricated his testimony about Shults's threats regarding Judge Guilford after hearing about the *Walthall* case from other inmates at FCI Lompoc, including about reduced sentences that the inmate cooperators received as a result of testifying for the government in that case.  12/14/18 RT 807:12-808:17.

Also during closing argument, the defense highlighted the various witnesses who testified that Shults embellished and lied about details of his life while in prison.  The defense explained that Shults often adopted stories he heard or read.  "You heard people say, 'Craig would read a book, he would become it.'  He would adopt other people's personas, their stories, books, whatnot."  12/14/18 RT

801:7-9.  Defense counsel then argued that Knox fed Shults information that Shults simply regurgitated. "[Knox] just saw an easy mark. He saw someone who he knew he could manipulate. He saw someone who he knew, if you fed him a story, he would spit it back out. Someone he could mold."  12/14/18 RT 810:9-12.  Defense counsel went onto argue that "[w]e also, for context purposes, have to look at what this recording is and who made it. We know that. Bill Knox made this to set up Craig Shults. He made it to get time off his sentence. This was an ongoing setup."  12/14/18 RT 802:4-7.  The defense based these arguments on Knox's testimony about his motivations for cooperating as well as the many witnesses that they called who testified about Shults's storytelling and Knox's motivations. 8/14/18 RT 796:11-807:11; 808:23-812:8.

## F.   **Shults's Potential Trial Testimony**

Regarding Shults's potential trial testimony, at the commencement of the defense case, Mr. Lee referenced Shults's Fifth Amendment right to remain silent vis-à-vis his petition to the Supreme Court. 12/13/18 RT 483:2-7.  Thereafter, at various points during the defense case, the Court and defense counsel had the following exchanges:

THE COURT: Okay. Well, then is your client – have you made a decision?

MR. LEE: We have to spend some time with him to come to that election

12/13/18 RT 597:13-16.

THE COURT: All right. Let the record reflect the jury has left.  How many more witnesses do you have?

MS. SNIDER: Your Honor, if memory serves, we have five witnesses for tomorrow. And then if Mr. Shults chooses to testify, he would testify tomorrow as well.

THE COURT: You will have a decision by tomorrow morning?

MR. CARBAJAL: We have got a list of seven.

MS. SNIDER: I'm sorry. Seven witnesses that are scheduled to come tomorrow, and then if Mr. Shults chooses to testify, and we should have an answer tomorrow morning.

THE COURT: Okay. The reason I'm asking that question is I don't want there to have to be a break for you to go discuss it with your client. That needs to be done.

MR. LEE: We have asked the Marshals to take Mr. Shults down to the lockup now so we can start the conversation.

12/13/18 RT 698:13-699:5.

The next morning, the Court and defense counsel had this exchange in open court with Shults present:

THE COURT: Back on the record. Counsel is present. Defendant is present.

…

THE COURT: … Then starting on Instruction 23, has the defendant made a decision?

MR. LEE: Your Honor, we have made a preliminary decision, but we want to see the rest of the witnesses before we make the final decision.

THE COURT: What is your preliminary decision?

MR. LEE: We are leaning towards not.

12/14/18 RT 704:3-20.

Shults did not make any comment in response to these statements by his attorney.  After calling its sixteenth witness, Anwar Assan, the defense declared that it had no further witnesses.  12/14/18 RT 763:8-9.  Shults was present for this announcement and had no comment.  The jury was then dismissed for a twenty-minute break so that the parties could present their arguments to the Court regarding the government's objections to certain exhibits.  12/14/18 RT 763:8-770:1.  The Court then asked the parties if they had "anything else" to discuss, and the parties indicated that they had nothing further.  12/14/18 RT 770:2-770:8.  Shults was present throughout this exchange and did not raise any issues with the Court.

### G.   Conviction and Sentencing

After less than 30 minutes of deliberation, the jury found Shults guilty of retaliating against a federal official by threat of assault.  CR 98; 12/14/19 RT 818:21-22, 826:1-2.  In its special verdict form, the jury unanimously agreed that Shults committed the crime on December 11, 2016.  CR 98.  The additional dates alleged in the indictment (September 2016; October 25, 2016; and November 27, 2016) were also listed on the special verdict form, but the jury did not find Shults guilty beyond a reasonable doubt of having threatened Judge Guilford on those additional dates. CR 98.

On March 11, 2019, the Honorable Lawrence J. O'Neill held Shults's sentencing hearing.  CR 116; CR 127 (hereinafter, "3/11/19 RT").  Shults's counsel had previously submitted a lengthy

sentencing brief supported by 16 exhibits.  CR 109, 109-1.  As they did at trial, the defense argued that

Shults was simply exaggerating:

> Having never been previously diagnosed with Bipolar Disorder, Type I, Craig lacked the self-awareness to see the signs of a manic episode. When he began spouting bizarre and unbelievable claims— largely drawn from the books he used as an escape—his fellow inmates chalked him up as a liar and a blowhard.

CR 109 at 2.

Counsel asked that the Court to impose a 24-month term of imprisonment.  CR 109 at 2.  In

rejecting this recommendation and imposing the statutory maximum, the Court noted:

> . . in every other circumstance, he wanted everybody to know. He wanted everybody to hear these hyperboles and these outrageous statements and these lies, but in this particular case, when he was talking about murdering a federal judge, he specifically did not want, he went exactly the opposite direction, and he did not want anybody to hear that. And as a matter of fact, not only did he not want people to hear, and he did not want anybody to repeat the threat, or the request, but he threatened the person's life and/or the family of that person's life if they did, if they betrayed him. To me, that is a huge difference in what he ordinarily said with hyperbole and baloney and lies versus what he was trying to accomplish. Quite clearly, the jury believed he meant it. Quite clearly, the jury heard all of the other evidence about what are now being categorized as outrageous statements that couldn't possibly be believed by anyone. But that is an enormous, huge, and explainable difference.

3/11/19 RT 15:18-16:12.

The Court also addressed the psychiatric report submitted by the defense.  The Court noted that

although Shults remained in custody since his conviction on the threats charge, the Court "had been

presented huge evidence that [Shults had] done everything to behave."  3/11/19 RT 17:5-13.  The Court

concluded that Shults demonstrated an ability to turn his "Bipolar-Manic" symptoms "on and off."

3/11/19 RT 17:15-18.  The Court surmised that Shults's strategic lack of symptoms was a response to

his circumstances: "The more likely explanation of that is because you are smart, and you have decided

that blustering and lying and exaggerating is not helpful to you at this time."  3/11/19 RT 17:19-21.

When the government argued that Shults did not appear remorseful for his crime, his counsel

responded " … it is advice of counsel that he not go into specifics.  He does plan to file an appeal. And

so that's why he doesn't go into any details of this case."  3/11/19 RT 13:23-25.

### H.   Direct Appeal

In April 2018, Shults appealed his EDCA conviction in the Ninth Circuit, arguing that (1) the district court abused its discretion in admitting testimony about Shults's additional threats against the same federal judge that occurred shortly after the charged conduct; (2) Shults was entitled to resentencing because he did not allocute; and (3) that he was entitled to resentencing because the district court employed the wrong proof standard in analyzing the United States Sentencing Guidelines section 2A6.1.  CA 10 (Exhibit 3).

The Ninth Circuit issued its Memorandum Disposition on July 22, 2020, and affirmed Shults's sentence.  CA 47-1 (Exhibit 4).  On October 9, 2020, Shults filed a petition for certiorari, which was denied on November 9, 2020.  CA 49, 50 (Exhibit 5).

### I.   Section 2255 Motion

On November 8, 2021, one day before the expiration of the one-year statute of limitations period, Shults filed his original section 2255 motion.  CR 154.  The same day, Shults also filed a Motion for Extension of Time to File a Memorandum of Law and Facts in support of his motion.  CR 155.  On November 10, 2021, the Court set January 10, 2022, as a deadline for "a motion to amend his § 2255 motion, which should attach the proposed memorandum of law and also present any relevant argument regarding the application of Rule 15."  CR 159 at 2. The Court noted, however, that "[w]ithout being able to review retained counsel's planned supplemental memorandum of law, the court cannot say with certainty how [Federal Rule of Civil Procedure] 15 will apply to it."  CR 159 at 2.  Quoting the Supreme Court's decision in *Mayle v. Felix*, 545 U.S. 644, 650 (2005)), the Court noted that "an amendment does not relate back to the date of the initial pleading and therefore defeat the one-year statute of limitations 'when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth.'"

On January 10, 2022, Shults filed a Motion for Extension of Time to Submit Motion for Leave to Amend 28 U.S.C. § 2255 Motion.  CR 168.  The Court granted this motion and set the new deadline for February 14, 2022.  CR 169.  On February 14, 2022, Shults filed a second motion for extension of time. CR 172.  The Court granted that motion as well and set the new filing deadline as February 28, 2022. CR 175.

On March 3, 2022, Shults filed his amended section 2255 motion and Memorandum of Points and Authorities in this case. CR 175, 175-1.[3] Both his original motion and his amended motion allege ineffective assistance of counsel based on the following four grounds: (1) Shults's attorneys did not call him to testify; (2) counsel failed to call two witnesses, one of whom is unknown; (3) counsel did not ask witness Anwar Hassan a particular question; and (4) counsel failed to call an "expert" to testify that individuals who cooperate with the government are motivated to do so by the potential of a reduced sentence. CR 175, 175-1.

On June 13, 2022, the Court ordered the government to respond by August 9, 2022. CR 178. Pursuant to a stipulation by the parties, the Court continued the government's opposition deadline to September 8, 2022. CR 180.

### III.    LEGAL STANDARDS

Under Section 2255, the federal sentencing court may grant relief if it concludes that the prisoner was convicted or sentenced in violation of the Constitution or laws of the United States. *United States v. Barron*, 172 F.3d 1153, 1157 (9th Cir. 1999) (citing 28 U.S.C. § 2255).

### A.    Ineffective Assistance of Counsel

The Supreme Court set forth a framework for examining Sixth Amendment ineffective assistance of counsel claims in *Strickland v. Washington*, 466 U.S. 668 (1984). To establish ineffective assistance of counsel, a defendant must demonstrate both that: (1) "counsel's performance was deficient," and (2) "the deficient performance prejudiced the defense." *Id.* at 687. The court may address either prong first. *Id.* at 697. "If either prong is not met, [the court] must dismiss the claim." *United States v. Sanchez-Cervantes*, 282 F.3d 664, 672 (9th Cir. 2002). The Supreme Court has explained that "[s]urmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010).

To establish a constitutionally deficient level of care, a defendant must prove "that counsel made

---

[3] Shults also filed a motion for compassionate release on September 30, 2022, because of the COVID-19 pandemic, which the district court denied. CR 141, 145. Shults filed a second motion for compassionate release based on the COVID-19 crisis on September 27, 2021, which the Court denied on July 28, 2022. CR 148, 183. On August 30, 2022, Shults filed a notice of appeal regarding that denial. CR 184.

errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Strickland,* 466 U.S. at 687.   A defendant must therefore show that "counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688.

Moreover, the defendant must overcome the "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 689); *see also United States v. Cochrane*, 985 F.2d 1027, 1030 (9th Cir. 1993); *United States v. Hamilton*, 792 F.2d 837, 839 (9th Cir. 1986).   A defendant must rebut this presumption by demonstrating that his counsel's performance was unreasonable under prevailing professional norms and was not the product of "sound trial strategy." *Strickland*, 466 U.S. at 688-89.  In an ineffective assistance claim, "[t]he question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Richter*, 562 U.S. at 105 (quoting *Strickland*, 466 U.S. at 690).

Judicial scrutiny of counsel's performance is highly deferential because it is "all too tempting for a convicted defendant to second-guess counsel's assistance after conviction or adverse sentence." *Strickland*, 466 U.S. at 689.  Courts cannot "insist counsel confirm every aspect of the strategic basis for his or her actions." *Richter*, 562 U.S. at 109.  The Court must evaluate counsel's conduct from his or her perspective at the time it occurred, without the benefit of hindsight.  *Strickland*, 466 U.S. at 689. The Court must make its determination "in light of all the circumstances." *Id.* at 690.  The Ninth Circuit has held consistently that it will "neither second-guess counsel's decisions, nor apply the fabled twenty-twenty vision of hindsight." *Campbell v. Wood*, 18 F.3d 662, 673 (9th Cir. 1994).

Regarding prejudice, a defendant must establish that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland* , 466 U.S. at 687; *see also Richter*, 562 U.S. at 110 ("Representation is constitutionally ineffective only if it 'so undermined the proper functioning of the adversarial process' that the defendant was denied a fair trial.") (quoting *Strickland*, 466 U.S. at 686).  Consequently, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*  "'This does not require a showing that counsel's actions

'more likely than not altered the outcome,' but the difference between *Strickland's* prejudice standard and a more-probable-than-not standard is slight and matters 'only in the rarest case.'"  *Richter*, 562 U.S. at 111-112 (quoting *Strickland*, 466 U.S. at 693, 697).  "The likelihood of a different result must be substantial, not just conceivable." *Id.* at 112 (citing *Strickland*, 466 U.S. at 693).  It is not enough for a defendant to show that any perceived errors or omissions had some conceivable effect on the outcome of the proceeding, as virtually every act or omission of counsel would meet that test. *Strickland*, 466 U.S. at 693; *See United States v. Birtle*, 792 F.2d 846, 849 (9th Cir. 1988).

## B.  <u>Right to Autonomy</u>

Relying on a Connecticut district court case, Shults claims that his Sixth Amendment right to autonomy was violated because he did not testify at trial.  CR 175-1 at p. 7-8 (citing *Williams v. United States*, No. 3:15-CV-01301 (VLB), 2018 U.S. Dist. LEXIS 165819 * 15 (D. Conn. Sep. 27, 2018)).  Shults further claims that this is a structural error to which the *Strickland* analysis does not apply.  CR 175-1 at p. 8.  As an initial matter, it is noteworthy that the Connecticut district court in *Williams* ultimately applied the *Strickland* analysis, noting that it was the controlling precedent in the Second Circuit.  *See Williams*, 2018 WL 4656231 at *5.

Structural errors are those that "affect[ ] the framework within which the trial proceeds, rather than being simply an error in the trial process itself." *Weaver v. Massachusetts*, 137 S. Ct. 1899, 1907 (2017).  Such errors are found in a "very limited class of cases," *Johnson v. United States*, 520 U.S. 461, 468–69 (1997) (listing cases), and reversing decisions based on these errors serves to "ensure insistence on certain basic, constitutional guarantees that should define the framework of any criminal trial," *Weaver*, 137 S. Ct. at 1907; *see also Campbell v. Rice*, 408 F.3d 1166, 1172 (9th Cir. 2005) (giving examples of cases involving structural errors); *Jones v. Neuschmid*, No. 18-01738 EJD (PR), 2021 WL 1056597, at *30 (N.D. Cal. Mar. 18, 2021) (collecting cases since *Campbell*).  Moreover, "it is only for certain structural errors undermining the fairness of a criminal proceeding as a whole that even preserved error requires reversal without regard to the mistake's effect on the proceeding." *United States v. Dominguez Benitez*, 542 U.S. 74, 81 (2004) (citing *Arizona v. Fulminante*, 499 U.S. 279, 309-310 (1991)) (giving examples).

GOVERNMENT'S OPPOSITION TO
DEFENDANT'S SECTION 2255 MOTION

The Connecticut district court case upon which Shults relies cites to *Weaver* and to *United States v. McCoy*, 138 S.Ct. 1500 (2018), to support its dicta about structural errors.  Five years after he was convicted of murder, Weaver filed a motion for a new trial in state court, arguing that his attorney had provided ineffective assistance by failing to object to a courtroom closure during jury selection. *Weaver,* 137 S.Ct. at 1906.  Defense counsel neither objected to the closure at trial nor raised the issue on direct review.  *Id.* at 1906-07.  Although the Supreme Court recognized that the error was structural, it concluded that the defendant must still demonstrate prejudice because the defendant did not preserve a structural error on direct review, instead raising it later in the context of an ineffective-assistance-of-counsel claim.  *Id.* at 1912-13.  The Court reasoned that this standard was justified because, *inter alia*, "the costs and uncertainties of a new trial are greater because more time will have elapsed in most cases."  *Id.* at 1912.  The *Weaver* Court limited its holding to structural errors stemming from public-trial violations.  *Id.* at 1907.

In *McCoy*, the defendant unsuccessfully moved for a new trial, arguing that the trial court violated his constitutional rights by allowing his attorney to concede guilt in a capital case over McCoy's objection.  *McCoy*, 138 S.Ct. at 1507.  The United States Supreme Court held that the Sixth Amendment secures to the defendant "the right to insist that counsel refrain from admitting guilt, even when counsel's experienced-based view is that confessing guilt offers the defendant the best chance to avoid the death penalty."  *Id.* at 1505, 1512.  The Supreme Court clarified that deprivation of this constitutional right is a "structural error," and not one falling within the purview of the Court's "ineffective-assistance-of-counsel jurisprudence."  *Id.* at 1510–11.  The Court distinguished its prior holding in *Florida v. Nixon*, 543 U.S. 175 (2004), where it concluded that the Constitution did not bar defense counsel from conceding a capital defendant's guilt at trial "when [the] defendant, informed by counsel, neither consents nor objects."  *Id.* at 1505, 1509 (quoting *Nixon*, 543 U.S. at 178).

*McCoy* and *Weaver* do not suggest that Shults's "autonomy" claim is immune from *Strickland* analysis.  Instead, these cases demonstrate that (1) where defendant has failed to raise a structural claim on direct review, *Strickland* applies; *See Weaver,* 137 S.Ct. at 1912-1913; and (2) where a defendant neither "consents nor objects" to his attorney's decision, there can be no structural error.  *McCoy*, 138 S.Ct. at 1505, 1509 (quoting *Nixon*, 543 at 178).  This conclusion is consistent with Ninth Circuit case

law, where claims that counsel denied a defendant the right to testify are analyzed under *Strickland*'s ineffective assistance standard. *Matylinsky v. Budge,* 577 F.3d 1083, 1097 (9th Cir. 2009) ("The *Strickland* standard is applicable when a petitioner claims his attorney was ineffective by denying him his constitutional right to testify.") *(*citing *Medley v. Runnels*, 506 F.3d 857, 861 (9th Cir. 2007); *see also Dows v. Wood*, 211 F.3d 480, 487 (9th Cir. 2000); *United States v. Gillenwater*, 717 F.3d 1070, 1083 (9th Cir. 2013) (where district court removed defendant from the courtroom during a competency hearing, the Ninth Circuit expressly declined to decide whether the denial of the right to testify was a structural or trial error). This conclusion is consistent with Ninth Circuit cases decided after *McCoy* and *Weaver* as well. *See Carter v. Davis*, 946 F.3d 489, 509-512 (9th Cir. 2019) (employing the *Strickland* analysis in an appeal of a denial of a 2254 motion post-*McCoy* and *Weaver* where the defendant claimed that his attorney refused to permit him to testify); *see also Galvez v. Muniz*, 845 F. App'x 542, 543 (9th Cir. 2021), cert. denied, 142 S. Ct. 1234, 212 L. Ed. 2d 237 (2022) (where state court required defendant to testify before government rested or not at all, the Ninth Circuit observed that "the United States Supreme Court has not ruled that this type of trial error is structural in nature.")*.* [4]

      Other district courts within the Ninth Circuit to have considered this and related issues since *McCoy* and *Weaver* have also applied the *Strickland* analysis. *See e.g. Riedel v. McDonald*, No. CV 18-4045-R (PLA), 2018 WL 5816238 (C.D. Cal. Sept. 24, 2018)[5] ("even if the abridgement or denial of the right to testify were to constitute a structural error, there is no controlling authority standing for the proposition that prejudice is presumed where, as here, a petitioner asserts that counsel was ineffective in advising a defendant against testifying."); *see also United States v. Smith*, No. 2:13-CR-14-RMP-1, 2020 WL 1666637, at *6 (E.D. Wash. Apr. 3, 2020) (where defendant did not testify and claimed that his counsel violated his right to autonomy by not presenting a defense, the Court applied

---

[4] In a concurring opinion, Judge Hunsaker agreed that the Supreme Court had not held it is structural error to require a criminal defendant to either testify or lose his right to testify before the prosecution has completed its case. *Id.* at 544. Judge Hunsaker noted, however, that "there are compelling arguments for treating the state court's error as structural," including the right to "remain inactive and secure until the prosecution has taken up its burden." *Id.* at 544-545 (internal citations and quotations omitted).

[5] report and recommendation adopted, No. CV 18-4045-R (PLA), 2018 WL 5794512 (C.D. Cal. Nov. 5, 2018)

GOVERNMENT'S OPPOSITION TO
DEFENDANT'S SECTION 2255 MOTION

*Strickland,* finding that even assuming *McCoy* applied retroactively, petitioner has not made a

"debatable showing that its holding applies"); *Beatriz Govea v. United States*, No. 3:15-CR-01880 W,

2019 WL 1491958, at *6 (S.D. Cal. Apr. 4, 2019) (citing *Weaver* in finding that petitioner must still

demonstrate prejudice even assuming attorney's alleged failure to advise petitioner of his right to testify

was structural error.);[6] *cf. Hartman v. Knudsen*, No. CV 22-57-M-DLC, 2022 WL 3346375, at *1 (D.

Mont. Aug. 12, 2022).[7]

Additionally, district courts in the Ninth Circuit have declined to extend *McCoy* and *Weaver*

beyond their facts. *See Christensen v. United States*, No. CR-14-08164-PCT-DGC, 2020 WL 1672771,

at *5 (D. Ariz. Apr. 6, 2020) (*McCoy* not applicable where attorney for defendant in a non-capital case

concedes an element of a crime); *Dickinson v. Shinn*, No. CV-18-08037-PCT-MTL, 2020 WL 587850,

---

[6] *see also, Thompson v. Premo*, No. 6:15-CV-01313-AA, 2021 WL 1929821, at *6 (D. Or. May 13, 2021) (citing *Weaver* in noting that not all structural errors entitle defendant to automatic reversal); *Herrera v. Att'y Gen. of Arizona*, No. CV-17-00183-TUC-RM, 2021 WL 347815, at *9 (D. Ariz. Feb. 2, 2021) (where petitioner claimed judge's bias was structural and not subject to harmless error review, court cited *Weaver* in noting that "courts must apply a 'different standard for evaluating a structural error depending on whether it is raised on direct review or raised instead in a claim alleging ineffective assistance…'"); *Cuevas Espinoza v. Hatton*, No. 10CV397-WQH-BGS, 2020 WL 434269, at *54 (S.D. Cal. Jan. 28, 2020) , report and recommendation adopted sub nom. *Espinoza v. Hatton*, No. 10-CV-397-WQH-BGS, 2020 WL 6582639 (S.D. Cal. Nov. 10, 2020), aff'd, No. 20-56236, 2022 WL 1616990 (9th Cir. May 23, 2022) (finding that by testifying, petitioner exercised his Sixth Amendment-secured autonomy rights as defined by *McCoy*, and applying the *Strickland* analysis in concluding that petitioner did not prove that counsel's proffered defenses were not sound trial strategy); *McKay-Erskine v. Uttecht*, No. C18-5024 BHS, 2019 WL 1505933, at *1 (W.D. Wash. Apr. 5, 2019) (citing *McCoy* for the proposition that the right to testify in one's defense is a decision reserved solely for the defendant, but denying the petition because defendant did not establish prejudice); *Duncan v. United States*, No. 2:07-CR-00023-EJL, 2019 WL 1320039, at *9 (D. Idaho Mar. 22, 2019) (citing *Weaver* for the proposition that "[t]here is a distinction, however, between objections to structural errors made at trial and preserved on direct appeal (in which case prejudice is presumed) and where, as here, objections to structural errors are raised later in the context of an ineffective assistance of counsel claim (in which case the burden is on defendant to show prejudice)").

[7] In *Hartman*, the state court declared a mistrial because the defense attorney ran out of time to call defendant to testify due to the court's self-imposed trial time limit. *Id.* at *1-7. The record clearly indicated that defendant wished to testify and that his attorney intended to call him. *Id.* Defendant filed a habeas petition, and the district court ultimately concluded that the state trial court improperly declared a mistrial, and thereby deprived Hartman of both his Sixth Amendment right to counsel and his federal constitutional protection against double jeopardy. *Id.* at *16. In coming to this conclusion, the district court noted that pursuant to the reasoning in *McCoy* and related cases "a denial of the client's right to testify … cannot be assessed for harmlessness." *Id.* at *11. Citing *Nohara* and *Edwards*, however, the district court also noted that, "The Ninth Circuit holds that, '[w]hen a defendant is silent in the face of his attorney's failure to call him as a witness, he has waived his right to testify,' even if he later claims counsel did not tell him he had a right to testify." *Id.* at *11, n. 4.

at *8 (D. Ariz. Feb. 6, 2020)[8] (declining to extend *Weaver* to a structural error jury instruction challenge and expressly concluding that petition must prove prejudice.); *Ponce v. Eldridge*, No. 519CV00751DMGMAA, 2019 WL 8501633, at *9 (C.D. Cal. Aug. 19, 2019) (in rejecting petitioner's argument that *McCoy* was retroactively applicable to counsel's failure to follow his instruction to introduce a recantation letter, the Court noted that, unlike *McCoy*, petitioner's case was not a capital case on direct appeal).

Given the lack of precedential authority supporting Shults's argument regarding the inapplicability of *Strickland* prejudice to his autonomy claim, this Court is not compelled to, and should not, evaluate Shults's ineffective assistance of counsel claim outside of the rubric of *Strickland*.

## IV.    **ANALYSIS**

Shults's vague and conclusory allegations regarding all of his claims are unsupported by any evidence and fail to carry his burden to show that there was a constitutional violation.  Shults bears the burden to establish both ineffectiveness and prejudice – he has done neither.  The Court should deny Shults's motion.[9]

### A.    **Shults Has Procedurally Defaulted His Right to Claim Structural Error Based on his Failure to Testify (Ground One)**

As an initial matter, to the extent that Shults is raising for the first time that his failure to testify is somehow a structural error, he has procedurally defaulted this claim because he failed to raise it on direct review.  While an ineffective assistance of counsel claim can be raised for the first time in a proceeding under 28 U.S.C. § 2255, *Massaro v. United States*, 538 U.S. 500, 503-04 (2003), Shults's motion characterizes his "right to autonomy" as distinct and not covered by the ineffective assistance of

---

[8] aff'd, 2 F.4th 851 (9th Cir. 2021), cert. denied, 142 S. Ct. 1162, 212 L. Ed. 2d 37 (2022)

[9] To the extent that Shults's Amended 2255 Motion and the Supporting Memorandum of Points and Authorities do not relate back to his originally-filed motion they should be denied as having been filed after section 2255's one-year statute of limitations period expired.  *See* 28 U.S.C. § 2255(f); Fed. R. Civ. P. 15(c)(1); *see also Mayle v. Felix,* 545 U.S. 644, 664 (2005) (holding, in the context of a federal habeas petition, that "[s]o long as the original and amended petitions state claims that are tied to a common core of operative facts, relation back will be in order.").  The government also objects to the amended motion and supporting memorandum because it was filed after the expiration of the Court's February 28, 2022 deadline, although the government recognizes that Federal Rule of Civil Procedure 15(a)(2) states that "the court should freely give leave [to amend] when justice so requires."

counsel analysis dictated by *Strickland*. CR 175-1 at 8-9.  A petitioner who challenges his sentence under § 2255 without first raising his claim on direct appeal procedurally defaults the claim. *United States v. Ratigan*, 351 F.3d 957, 962 (9th Cir. 2003); *United States v. Jingles*, 702 F.3d 494, 498 (9th Cir. 2012) (if defendant did not raise issue on appeal, but he could have, then defendant is generally precluded from raising that issue in a § 2255 petition.).  A petitioner may overcome procedural default and raise the claim in a habeas petition "'only if the defendant can first demonstrate either cause and actual prejudice or that he is actually innocent.'" *United States v. Braswell*, 501 F.3d 1147, 1149 (9th Cir.2007) (quoting *Bousley v. United States*, 523 U.S. 614, 622 (1998)).  A petitioner satisfies the cause prong by demonstrating "that the procedural default is due to an 'objective factor' that is 'external' to the petitioner and that 'cannot be fairly attributed to him.'" *Manning v. Foster*, 224 F.3d 1129, 1133 (9th Cir. 2000) (quoting *Coleman v. Thompson*, 501 U.S. 722, 753 (1991)).  A petitioner makes a sufficient showing of cause where "the factual or legal basis for a claim was not reasonably available to counsel" at the time of direct appeal.  *Murray v. Carrier*, 477 U.S. 478, 488 (1986).  Additionally, constitutionally ineffective assistance of counsel constitutes cause sufficient to excuse a procedural default.  *Id.*

Here, Shults filed an appeal, but did not raise the issue of structural error regarding his failure to testify.  As discussed in detail below, the record was sufficiently developed for Shults to have raised this issue on appeal.  For instance, the record indicates that Shults was familiar with criminal trials having been convicted at trial in federal court prior to the trial in this case.  The record also demonstrates that Shults had competent counsel and had discussions with counsel about whether to testify.  Finally, the record shows that Shults had ample opportunity to express his desire to testify but remained silent.  The cases he cites in support of his argument were all decided prior to his trial.  Consequently, he cannot demonstrate that the factual or legal basis for the claim was not available at the time of his direct appeal.  As discussed in detail below, Shults waived his right to testify, so he cannot now demonstrate cause by claiming that his trial or appellate counsel were ineffective for failing to raise structural error based on this argument.  For the reasons set forth below, neither can Shults demonstrate prejudice because any structural error claim fails on the merits.  Finally, as discussed in

detail below, Shults cannot prove actual innocence given the weight of the evidence against him.  He

has, therefore, procedurally defaulted this claim.

**B.**  <u>**Shults Fails to Establish that his Counsel Deprived Him of the Right to Testify**</u>
<u>**(Ground One)**</u>

Shults claims ineffective assistance of counsel because his counsel did not call Shults as a

witness even though Shults allegedly told his counsel he wanted to testify.  CR 175-1 at p. 8.  This

argument is without merit.  Based on a district court case from Connecticut, Shults also alleges that his

right to autonomy was violated and that this right is not governed by the *Strickland* standard. CR 175-1

at pp. 8-9, citing *Williams v. United States*, No. 3:15-CV-01301 (VLB), 2018 U.S. Dist. LEXIS 165819

* 15 (D. Conn. Sep. 27, 2018).  As argued above, Shults procedurally defaulted this second argument.

Even if it has not been defaulted, this claim should also be denied as it is meritless as well.

1.  ***Because Shults Waived His Right to Testify, Shults Cannot Establish that His***
***Counsel was Deficient***

A criminal defendant has a constitutional right to testify in his defense.  *United States v. Pino-*

*Noriega*, 189 F.3d 1089, 1094 (9th Cir. 1999) (quoting *United States v. Joelson*, 7 F.3d 174, 177 (9th

Cir. 1993)).  Therefore, "the ultimate decision whether to testify rests with the defendant . . . ." *Joelson*,

7 F.3d at 177.  "[I]f the defendant wants to testify, he can reject his attorney's tactical decision" not to

call the defendant as a witness "by insisting on testifying, speaking to the court, or discharging his

lawyer." *Id.*  "Thus, waiver of the right to testify may be inferred from the defendant's conduct and is

presumed from the defendant's failure to testify or notify the court of his desire to do so." *Id.*  When the

defendant "remains 'silent in the face of his attorney's decision not to call him as a witness,' he waives

the right to testify." *Pino-Noriega*, 189 F.3d at 1094 (quoting *United States v. Nohara*, 3 F.3d 1239,

1244 (9th Cir.1993)); *see also United States v. Banaga*, 443 Fed.Appx. 262, fn. 1 263-264 (9th Cir.

2011) (where defendant followed attorney's advice not to testify, she waived her constitutional right to

testify); *United States v. Edwards*, 897 F.2d 445, 446 (9th Cir. 1990) (holding that "the defendant's

silence in the face of his attorney's decision not to call him" "provides a sufficient basis from which to

infer that the right to testify has been waived.").  Indeed, a defendant is "presumed to assent to his

attorney's tactical decision not to have him testify." *Joelson*, 7 F.3d at 177.  A defendant's silence

GOVERNMENT'S OPPOSITION TO
DEFENDANT'S SECTION 2255 MOTION

waives his constitutional right to testify, *Pino-Noriega*, 189 F.3d at 1094, as well as any claim of ineffective assistance assignable to counsel's failure to call the defendant as a witness. *See Nohara*, 3 F.3d at 1244 (*citing Edwards*, 897 F.2d at  447); *see also Karkehabadi v. Tampkins*, No. 816CV01854JLSMAA, 2019 WL 3849175, at *10 (C.D. Cal. May 24, 2019)[10] (same).  "Fundamental unfairness would characterize a process that let defendants have one trial based on their lawyer's strategy and another trial based on their own."  *United States v. Martinez*, 883 F.2d 750, 761 (9th Cir. 1989), *vacated on other grounds*, 928 F.2d 1470, 1471 (9th Cir. 1991).

The trial record shows that Shults was aware of his right to testify and that his counsel had discussed this right with him.  12/13/18 RT 597:13-16, 698:13-699:5; 12/14/18 RT 704:3-20.  Indeed, after their Rule 29 motion, Mr. Lee stated in Shults's presence, "We made a motion to continue a while ago that Mr. Shults' ongoing appeal puts his Fifth Amendment right to remain silent on his underlying case in conflict with his rights here. So we note that for the record."  12/13/18 RT 483:2-7.  On the last day of trial, in Shults's presence, Mr. Lee intimated that the discussions with his client about whether to testify were ongoing and would be made after the witnesses testified.  *See* 12/14/18 RT 704:3-20  (MR. LEE: "Your Honor, we have made a preliminary decision, but we want to see the rest of the witnesses before we make the final decision … We are leaning towards not.)

Moreover, Shults was present during two hearings in which his right to testify at trial was discussed expressly and in detail.  *See* 8/8/18 RT, 10/15/18 RT.  At the second hearing on this issue, Mr. Lee made statements such as

- "If he makes that election [to testify], though, we have to advise him on the waiving of his constitutional rights";

- "… we have to be cognizant of his constitutional rights on this case and his constitutional rights on the other case."; and

- "… based on what this Court has said, we certainly will speak to Mr. Shults and give him our best legal advice."

10/15/18 RT 14:19-23, 16:1-3, 17:2-3.  At the same hearing, the Court itself also stated "… but the

[10] report and recommendation adopted, No. 816CV01854JLSMAA, 2019 WL 3841791 (C.D. Cal. Aug. 15, 2019)

Court can't compel Mr. Shults' testimony obviously.  He has to make that election." 10/15/18 RT 14:15-17.

Also noteworthy is that this was Shults's second criminal trial.  By the time of his trial in the EDCA, he had received the benefit of advice from independent attorneys in different districts.  *See Parke v. Raley,* 506 U.S. 20, 37 (1992) (evidence of a defendant's prior experience with the criminal justice system is relevant to the question whether he knowingly waived constitutional rights.)  And as evidenced by a sworn declaration from his attorney in the CDCA case, he was "advised … to invoke his Fifth Amendment right to remain silent [at trial] and not testify on his own behalf."  CR 46 at p. 5.   At sentencing, Mr. Lee again referenced Shults's decision to remain quiet, stating, " … it is advice of counsel that he not go into specifics.  He does plan to file an appeal. And so that's why he doesn't go into any details of this case." 3/11/19 RT 13:23-25.  Shults's claim that the same attorneys who were so careful to protect his constitutional right to testify at trial somehow did not call him against his will is simply not credible.

Furthermore, Shults waived his constitutional right to testify by failing to state his desire to testify to the court.  Shults had many opportunities to reject his counsel's tactical decision and tell the court he wanted to testify.  Shults's counsel presented the defense case-in-chief and called sixteen witnesses over two days.  *See* 12/13/18 RT, 12/14/18 RT.  Shults could have notified the court of his wish to testify during those two days, but he did not.  Furthermore, after the sixteen defense witnesses testified and the Court said, "Next witness, please," Shults could have spoken up, but he did not.  12/14/18 RT 763:7.  Subsequently, outside of the jury's presence but with Shults in the courtroom, the Court and the attorneys discussed outstanding questions about evidence admission.  12/14/18 RT 764:13-770:22.  Having addressed the evidence, the court asked several times, "Anything else?" 12/14/18 RT 769:22, 770:3, 770:6.  Shults could have stated he wanted to testify, but he did not. Finally, before the jury instructions, the Court again said, "Any issues?  No.  Okay." 12/14/18 771:9. Shults remained silent.

The record in this case conclusively establishes that Shults was informed of his right to testify, was given the opportunity to testify, and waived his right to testify.  Shults simply cannot establish the first prong of the *Strickland* analysis – that his attorneys' performance was deficient for not calling him

1   to testify.  Moreover, Shults offers only unsworn statements years after conviction to suggest that he

2   wanted to testify in his own behalf.  The trial record is clear; Shults had multiple opportunities to

3   express any such desire.  As a result, his unsworn averments made years after the fact are insufficient to

4   carry his burden.

5           2.      ***Because Shults Waived His Right to Testify, Shults Cannot Establish that His***
6                   ***'Right to Autonomy' was Violated***

7           Neither can Shults successfully claim structural error.  First, as discussed in detail in the "Legal

8   Standards" section above, a structural error analysis is not applicable to Shults's claim that his attorney

9   denied him his right to testify.  The *Strickland* analysis applies here.  Even the Supreme Court authority

10  cited by Shults indicates that because Shults's "right to autonomy" claim is couched in an ineffective

11  assistance of counsel claim, he still must prove prejudice.  In *Weaver*, the Supreme Court held that

12  when a structural error is raised for the first time in the context of an ineffective assistance of counsel

13  claim, finality concerns require the defendant to show prejudice under *Strickland* in order to obtain a

14  new trial.

15              "[W]hen a defendant raises a public-trial violation via an infective-assistance-
                of-counsel claim, Strickland prejudice is not shown automatically. Instead, the
16              burden is on the defendant to show either a reasonable probability of a different
                outcome in his or her case or, as the Court has assumed for these purposes ...
17              to show that the particular public-trial violation was so serious as to render his
                or her trial fundamentally unfair."
18

19  *Weaver*, 137 S. Ct. at 1911.

20          Moreover, even if Shults could assert structural error here, such a claim would fail because

21  Shults waived his right to testify.  In *Florida v. Nixon*, the Supreme Court applied the *Strickland*

22  standard to "defense counsel's strategic decision to concede, at the guilt phase of [a capital] trial, the

23  defendant's commission of murder, and to concentrate the defense on establishing, at the penalty phase,

24  cause for sparing the defendant's life." 543 U.S. 175, 178 (2004).  Notably, in deciding *McCoy*, the

25  Supreme Court explained that its earlier *Nixon* decision "is not to the contrary" because:

26              Nixon's attorney did not negate Nixon's autonomy by overriding
                Nixon's desired defense objective, for Nixon never asserted any
27              such objective. Nixon "was generally unresponsive" during
                discussions of trial strategy, and "never verbally approved or
28              protested" counsel's proposed approach. Nixon complained about

GOVERNMENT'S OPPOSITION TO                    23
DEFENDANT'S SECTION 2255 MOTION

> the admission of his guilt only after trial. McCoy, in contrast, opposed [his lawyer's] assertion of his guilt at every opportunity, before and during trial, both in conference with his lawyer and in open court.

*McCoy*, 138 S.Ct. at 1509; *see also Jurado v. Davis*, 12 F.4th 1084, 1101 (9th Cir. 2021), *cert. denied*, 142 S. Ct. 2653, 212 L. Ed. 2d 609 (2022) (finding that "counsel's tactics did not run afoul of *Nixon* or *McCoy*" where there was no evidence that defendant opposed counsel's strategy to concede second degree murder); *Mixon v. Robertson*, 2021 WL 5362083, at *16 (C.D. Cal. Sept. 16, 2021) (rejecting claim of ineffective assistance under *McCoy* where defendant presented only "his own self-serving statements made with the benefit of hindsight" that he "expressly objected to his trial counsel's strategy of conceding guilt to second-degree murder"); *Austin v. Paramo*, 2018 WL 4362082, at *2 (C.D. Cal. Sept. 11, 2018) (finding *McCoy* "inapplicable because ... [t]here is simply no evidence that [p]etitioner ever voiced 'intransigent objection' or indeed any opposition" to counsel's strategic decision to admit guilt to lesser offenses); *Shelton v. Kernan*, No. 2:14-CV-02000-JKS, 2017 WL 2691918, at *5 (E.D. Cal. June 22, 2017) (even construing the petition to raise a claim that the trial court denied petitioner his constitutional right to testify, petitioner "cannot prevail because … his silence waived his right to testify."). Like the defendant in *Nixon*, there is no evidence that Shults opposed his counsel's strategy. Consequently, he cannot demonstrate structural error even if it were applicable to his claim (which it is not).

### 3. *Shults has not Established that Counsel Performed Deficiently by not Calling Shults as a Witness*

In addition to failing the first prong of the *Strickland* test because he waived his right to testify, Shults also fails this prong because he cannot overcome the presumption that his counsels' strategic decision not to put Shults on the stand might be considered a "sound trial strategy." *Strickland*, 466 U.S. at 688-89. The jury heard from defense witness after defense witness that Shults exaggerated and, often times, outright lied to others. This was a central part of Shults's defense. By calling Shults, defense counsel would have been asking the same jury to believe that Shults was going to be entirely truthful during his trial testimony despite the parade of defense witnesses testifying that he was effectively a liar. That counsel avoided this paradox was entirely rational and a far cry from deficient performance. *See*

*Banaga*, 443 Fed.Appx. at 263-264 (counsel was not objectively unreasonable for not putting the defendant on the witness stand where risks outweighed benefits).

Moreover, Shults was represented by two attorneys at trial, so Shults is now tasked with the burden of proving that they were both incompetent for failing to call him to testify. As discussed above, one of his attorneys, Charles Lee, was particularly experienced, having had a lengthy career during which he held high-ranking positions in the federal defender's office, which culminated in Mr. Lee being appointed as a Superior Court Judge. Given the facts of Shults's case and his prior convictions for crimes of deceit, it is no surprise that both of his attorneys recommended that Shults not testify, and it is also unsurprising that Shults took their advice given their collective experience. *Richter*, 562 U.S. 86, 111 ("it is difficult to establish ineffective assistance when counsel's overall performance indicates active and capable advocacy"); *see also Yarborough v. Gentry*, 540 U.S. 1, 6 (2003) ("The Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight.").

Additionally, as discussed in detail above, Shults had previously moved to continue the December 2018 trial. CR 46. In that motion, Shults alleged that his pending appeal to the Supreme Court regarding the CDCA case presented a conflict with Shults testifying in the instant case. The motion was denied. CR 52. During the trial, Shults's counsel reiterated—for the record and outside the presence of the jury—that he had made "a motion to continue" because Mr. Shults's "ongoing appeal put[] his Fifth Amendment right to remain silent on his underlying case in conflict with his rights here." TR 483:4-6.[11] The ongoing nature of Shults's CDCA case also justified counsel not calling Shults as a witness. Thus, Shults's ineffective assistance of counsel claim fails because Shults cannot establish the first *Strickland* prong – that his counsel's performance was deficient. *Strickland*, 466 U.S. at 687.

---

[11] While it appears that the Supreme Court denied Shults's writ approximately five days before trial, Shults could have appealed that denial. *See* Sup. Ct. Rule 44. Additionally, Shults had yet to file a section 2255 motion in his CDCA case. He did eventually file that motion on May 22, 2019. CDCA CR 765. Consequently, potential effects of Shults's testimony on his CDCA case persisted throughout the EDCA trial. Moreover, by the time Shults was to make his decision regarding whether or not to testify, the record indicates that his decision was based at least in part on other witness testimony. *See* 12/14/18 RT 704:3-20 (MR. LEE: "Your Honor, we have made a preliminary decision, but we want to see the rest of the witnesses before we make the final decision … We are leaning towards not.)

### 4. *Shults has not Established that He was Prejudiced by His Counsels' Decision*

Shults also fails to show prejudice with competent evidence.  As an initial matter, as discussed in detail above, Shults waived his right to testify.  He cannot now claim that he was prejudiced by this decision because he did not like the outcome.

Shults alleges that his testimony would have clarified his intent in making the statements about harming the judge.  CR 175-1 at p. 8.  However, Shults's testimony would have been undermined by the showing of his untrustworthiness on cross-examination, given his prior fraud convictions and his general penchant for lying as testified to by many of his 16 witnesses.  Moreover, Valkovich's and Galeana's testimony indicated that when Shults communicated his intentions toward the judge, he did not do so with his general propensity to boast and exaggerate; instead, Shults sounded angry and genuine. 12/11/18 RT 172:6-19 ("His reaction was angry" when the inmate told Shults "it was a terrible idea" to kill the judge.); 12/12/18 249:2-6 ("He was angry. . . . I told you he wasn't joking.").  Shults's testimony, at best, would have added nothing helpful to his defense and, at worst, would have had an adverse effect.  *Richter*, 562 U.S. at 112 ("The likelihood of a different result must be substantial, not just conceivable.").

Furthermore, the evidence in this case was strong.  The jury heard Shults personally threaten Judge Guilford on a recording.  PSR ¶ 16; CR 108-4, 108-14; 12/11/18 RT 277:15-291:4; 12/13/18 RT 683:17-690:7.  They also heard evidence from former inmate Galeana regarding other threats that Shults had made about Judge Guilford.  Galeana testified that in 2014, Shults said that he was going to "horse fuck" Judge Guilford, that he was going to "bury him," and "try to get some information about him." 12/12/18 RT 241:15-246:24; PSR ¶ 6.  Galeana testified that Shults was upset at the time because Judge Guilford "didn't give him his bail."  12/12/18 RT 246:9-11.  Although Shults's statements to Galeana were not recorded, the government introduced a jail recording in which Shults again used the unique term "horse fuck," thereby lending further credibility to Galeana's testimony.  *See* 12/12/18 RT 341:5-342:16 (referencing audio recording admitted as Gov Tr. Ex. 81C); 12/14/18 792:21-793:13.

The jury also heard evidence that after the December 2016 recorded threats, Shults offered to pay inmate Valkovich to use his "hitmen" contacts to arrange Judge Guilford's murder.  12/11/18 RT 169:2-172:24.  Shults approached Valkovich with this request on several occasions, eventually offering to pay

GOVERNMENT'S OPPOSITION TO
DEFENDANT'S SECTION 2255 MOTION

more to also arrange the murder of Knox, the inmate at Taft CI who recorded Shults's threats.  12/11/18 RT 178:1-185:24.

Judge Guilford also provided testimony that explained Shults's motive for these threats. Judge Guilford confirmed that Shults violated the terms of his pretrial release and that, consequently, Judge Guilford revoked his bond. 12/11/18 RT 136:3-137:9.  This was consistent with Galeana's testimony about Shults being upset with Judge Guilford because the judge "didn't give him his bail."  12/12/18 RT 246:9-11. Judge Guilford also testified that he presided over Shults's trial and sentenced Shults to a 90-month term of imprisonment, which was several years more than the term of imprisonment for which Shults's attorneys had advocated. 12/11/18 RT 137:16-140:22. Judge Guilford also testified that Shults sought bond pending appeal and that he denied Shults's request. 12/11/18 RT 140:23-142:7.

Judge Guilford confirmed that he played basketball (sometimes on Thursdays), that he had been a member of a country club, and that he had worked for the firm Sheppard, Mullin, Richter and Hampton before becoming a judge. 12/11/18 RT 145:23-146:23.  These were all facts that Shults either mentioned during his recorded conversation with Knox or that Knox testified that Shults had told him. CR 108-4; 12/12/18 RT 370:16-371:25; 12/13/18 RT 607:10-608:11.  The jury also saw a printout of an internet article containing personal information about Judge Guilford that was retrieved from Shults's prison belongings.  CR 108-05; 12/12/18 RT 291:16-293:18.  Shults's efforts to gather information about Judge Guilford further demonstrated that Shults was serious about his threats against Judge Guilford.

Finally, the jury heard Shults himself express disdain for Judge Guilford in his jail communications to individuals other than Knox prior to the December 2016 recorded threats.  12/12/18 RT 293:19-309:10.  For instance, a month before Shults's recorded comments to Knox, Shults stated, "Cause they, they, they violated my constitutional rights, they broke the rules to get me here and the court, the Judge let them and it's pretty obvious that he let them do it, so."  CR 108-6; 12/12/18 297:22-301:17.  The jury also saw jail emails from Shults dated within two months of his recording with Knox that stated, "Reading [my appellate brief] mad me sick to my stomach seeing all that the prosecutors did that violated my constitutional rights and the judge allowed it"; "I got screwed by the judge and prosecutor"; and "Each day that goes by is another day of my life gone for no reason except because I

got screwed over in my trial starting with the jury and going straight through to the sentencing judge."
CR 108-15, 108-16, 108-17; 12/12/18 RT 301:17-309:10.

The swiftness of the jury's verdict also demonstrates the overwhelming evidence of Shults's guilt.  CR 98; 12/14/19 RT 818:21-22, 826:1-2.  Shults offers nothing to support the idea that any testimony from him would have altered this result, much less a reasonable probability of a different outcome as required under *Strickland*.  466 U.S. at 694.  Shults's claim is meritless, and it should be denied.

> **C.**   **Shults Cannot Establish that His Counsel Was Ineffective for not Calling Two Witnesses and for Failing to Ask One Witness One Question (Grounds Two and Three)**

Complaints based upon uncalled witnesses are not favored in habeas corpus petitions "because the presentation of witness testimony is essentially strategy and thus within trial counsel's domain, and [] speculations as to what these witnesses would have testified is too uncertain." *Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985); *see also Lord v. Wood*, 184 F.3d 1083, 1095 (9th Cir. 1999) ("Few decisions a lawyer makes draw so heavily on professional judgment as whether or not to proffer a witness at trial."); *Preciado v. Munez*, No. CV1601886FMOJDE, 2017 WL 11633163, at *6 (C.D. Cal. Dec. 22, 2017).[12]  Establishing ineffective assistance of counsel based on the failure to interview or call a witness at trial, "[g]enerally [] requires the submission of affidavits from the witnesses themselves." *Preciado*, 2017 WL 11633163, at *6 (citing *Dows*, 211 F.3d at 486; *United States v. Harden*, 846 F.2d 1229, 1231–32 (9th Cir. 1988)).  Additionally, a defendant must show:

(1) That the particular witness would have testified, *see Harden*, 846 F.2d at 1231–32 (no ineffective assistance because of counsel's failure to call a witness where, among other things, there was no evidence in the record that the witness would testify.); *see also Allen v. Woodford*, 395 F.3d 979, 1002 n.2 (9th Cir. 2005) (district court properly disregarded failure to call witnesses where petitioner failed to show that they would have testified had counsel pursued them); *United States v. Murray*, 751 F.2d 1528, 1535 (9th Cir. 1985) (in rejecting defendant's claim that his counsel was ineffective for failing to call witnesses, the court noted that petitioner "does not identify any witnesses that counsel

---

[12] report and recommendation adopted, 2018 WL 11354978 (C.D. Cal. Feb. 12, 2018), aff'd, 779 F. App'x 493 (9th Cir. 2019)

GOVERNMENT'S OPPOSITION TO
DEFENDANT'S SECTION 2255 MOTION

should have called that could have been helpful."); *United States v. Gustave*, 627 F.2d 901, 904 (9th Cir. 1980) (in rejecting defendant's claim that his counsel was ineffective for failing to subpoena witnesses, the Court noted, "there is nothing to indicate that any other witnesses were available.")

(2) what witness' testimony would have been, *see Dows v. Wood*, 211 F.3d 480, 486-87 (9th Cir. 2000) (no ineffective assistance of counsel for failure to call witnesses where petitioner did not identify an actual witness, provide evidence that the witness would testify, or present an affidavit from the alleged witness); *Grisby v. Blodgett*, 130 F.3d 365, 373 (9th Cir. 1997) ("speculation about what an expert could have said is not enough to establish prejudice"*); Morris v. State of Cal.*, 966 F.2d 448, 455-56 (9th Cir. 1992) ("[W]ishful suggestions" as to what a witness might say "cannot substitute for declaratory or other evidence."); *United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991) ("[E]vidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or an affidavit.  A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim."); *Sanchez v. Neuschmid*, No. 218CV02947DSFMAA, 2021 WL 1192001, at *11 (C.D. Cal. Feb. 17, 2021)[13] (finding that petitioner's claim failed for lack of proof where petitioner has offered no evidence to support his assertion that a certain witness would have been willing to testify to certain facts.); and

(3) that the omitted testimony would have been sufficient to create a reasonable doubt as to guilt. *See Tinsley v. Borg*, 895 F.2d 520, 532 (9th Cir. 1990).

Moreover, an argument that "counsel could have presented a better defense fails to overcome the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance."  *Mancuso v. Olivarez*, 292 F.3d 939, 954 (9th Cir. 2002), *overruled on other grounds* by *Slack v. McDaniel*, 529 U.S. 473 (2000); *see also Smith v. Adams*, 506 Fed. Appx. 561, 564 (9th Cir. 2013) ("[T]rial counsel had already impeached [a government witness] by introducing several of his prior convictions at trial.  The failure to take additional impeachment measures did not present a colorable claim of deficient performance, or prejudice, under *Strickland*"); *Lester v. Ayers*, 267 Fed. Appx. 725, 726 (9th Cir. 2008) ("Given this degree of successful impeachment, it is clear that the

---

[13] report and recommendation adopted *sub nom. Sanchez v. Matteson*, No. 218CV02947DSFMAA, 2021 WL 1577825 (C.D. Cal. Apr. 22, 2021)

additional impeachment urged by Lester would not have changed the result of the proceedings");

*Gustave*, 627 F.2d at 905 (counsel's failure to impeach witnesses with prior sworn testimony was "obviously a matter of trial tactics and falls far short of ineffective counsel.")

### 1.   *Counsels' Performance was Not Deficient*

Regarding Ground Two, Shults claims that two individuals would have testified that Knox told them he was trying to set up Shults so that he could obtain a sentence reduction under Rule 35 of the Federal Rules of Criminal Procedure. CR 175-1 at p. 9. Shults claims that his counsels' failure to call these individuals amounts to ineffective assistance of counsel. Shults's claim fails. First, Shults cannot identify one of the individuals and refers to him only as "another inmate from Taft prison." CR 175-1 at p. 9. While he does provide the name of the second inmate, he does not indicate whether either would be willing to testify or that they would have testified. *See Harden*, 846 F.2d at 1231–32; *Allen*, 395 F.3d at 1002 n.2; *Murray*, 751 F.2d at 1535; *Gustave*, 627 F.2d at 904. Shults provides no declarations from these alleged witnesses to support his argument. *See Dows*, 211 F.3d at 486; *Harden*, 846 F.2d at 1231–32; *Ashimi*, 932 F.2d at 650; *Preciado*, 2017 WL 11633163, at *6. He provides no specific details about the interactions these inmates allegedly had with Knox, including dates, times, and circumstances. *See Dows*, 211 F.3d at 486-87; *Grisby*, 130 F.3d at 373. Shults's "wishful suggestions" and "self-serving speculation" cannot sustain his ineffective assistance claim. *See Morris*, 966 F.2d at 455-56; *Ashimi*, 932 F.2d at 650.

Shults does not fare better regarding Ground Three, that Anwar Hassan would have similarly testified that Knox was trying to set up Shults had counsel asked him that question. CR 175-1 at p. 10. Again, Shults submits no declaration from Hassan indicating that he would have testified in this way, nor does Shults give any detail regarding this allegation.

Assuming, *arguendo*, that these individuals would have testified as Shults claims, counsel did not perform deficiently by not calling them or questioning them as Shults recommends. First, their testimony is hearsay and consequently would only have been admitted to impeach a prior inconsistent statement made by Knox. Fed. R. Evid. 613(b), 801. The defense called Knox at trial and engaged in a lengthy examination regarding his motivations to cooperate against Shults. 12/13/18 RT 584:12-22; 589:1-592:25; 612:9-613:9; 616:21-667:7; 694:13-696:8. These included the hope of a reduced

GOVERNMENT'S OPPOSITION TO
DEFENDANT'S SECTION 2255 MOTION

sentence pursuant to Rule 35.  Knox never denied his motivations for cooperating with the authorities.
These individuals' testimony as Shults described it would not have contradicted Knox's testimony and,
consequently, would not have been inadmissible at trial.  That defense counsel did not attempt to
introduce inadmissible hearsay is well within an objective standard of reasonableness.  Reasonable
tactical decisions, including decisions regarding presentation of the case, are "virtually
unchallengeable." *Strickland*, 466 U.S. at 690.

Given Knox's admissions about his Rule 35 motivations, the testimony Shults describes would
also have been cumulative.  Additionally, the defense called inmate Caro, who testified, "the recording
was going to give him a benefit on his case," and that Knox told him that, "[i]t was really hard to get
[Shults] to go" to the second meeting at which Knox recorded Shults.  12/14/18 RT 733:20-734:19.  The
defense also called inmate Mai who testified that Knox told him that Knox "might have a chance to go
home early."  12/14/18 RT 745:18-22.  Other inmates and Knox himself testified to the same
information that Shults claims his proposed witnesses and Assan would have provided.  Shults cannot
establish that his counsel performed deficiently here because counsel is not ineffective for failing to
introduce cumulative evidence.  *See United States v. Schaflander*, 743 F.2d 714, 718 (9th Cir.1984)
(failure to present cumulative evidence is not prejudice under *Strickland*); *Chapman v. Lampert*, 371 F.
App'x 742, 745 (9th Cir. 2010) (same); *see e.g. Babbitt v. Calderon*, 151 F.3d 1170, 1173 (9th Cir.
1998) (citing *Schaflander*, 743 F.2d at 719.).

Furthermore, suggestions regarding how defense counsel might have handled questioning
differently are insufficient to support an ineffective assistance of counsel claim.  *See Mancuso*, 292 F.3d
at 955.  Because the standard under *Strickland* is not what defense counsel could have pursued, but
rather whether the choices made by defense counsel at the time were reasonable, defense counsel cannot
be considered ineffective for failing to call Torres or the unknown inmate, or for failing to ask Hassan
additional questions about Knox.  *Babbitt*, 151 F.3d at 1173 (rejecting "several arguments predicated
upon showing what defense counsel could have presented, rather than upon whether counsel's actions
were reasonable."); *Siripongs v. Calderon*, 133 F.3d 732, 736 (9th Cir. 1998) (same).

2.  ***Shults Suffered No Prejudice by Counsels' Failure to Call These Witnesses or to Ask Witness Hassan a Question***

Even if the testimony had been admitted, it would have made no difference.  Knox was thoroughly examined about his motivations for cooperating.  Moreover, defense counsel called 16 witnesses, many of whom testified that Shults routinely exaggerated, embellished and lied about details of his life.  Indeed, one witness testified that Shults claimed to have engaged in activities that Shults read about in action novels.  12/13/18 RT 543:9-545:1.  Defense counsel painted a picture of Shults as someone who was prone to misrepresent himself for personal gain.  In closing argument, defense counsel expressly stated, "Bill Knox made this to set up Craig Shults. He made it to get time off his sentence. This was an ongoing setup."  12/14/18 RT 802:5-7.   Counsel also argued, "So these things on the recording you are hearing, they also happened to another individual [Bill Knox]. And, again, we have heard time and time again that Craig Shults would adopt other people's stories."  12/14/18 RT 806:13-16.  Defense counsel thoroughly explored the theory that Shults was tricked into making the recorded statements.  The additional witnesses and testimony from Hassan would not have made a difference in light of the evidence that counsel already presented.  *See Staten v. Davis*, 962 F.3d 487, 498 (9th Cir. 2020) (noting that omission of cumulative evidence is only prejudicial if the evidence has been so persuasive that it would have meaningfully altered the jury's view of the case) (citing cases); s*ee also Ortiz v. United States*, No. CR-01-98-S-BLW, 2006 WL 560587, at *2 (D. Idaho Mar. 7, 2006) ("Regarding the specific claim of ineffective assistance of counsel based on failure to impeach a government witness, courts determine prejudice by considering (1) the strength of the prosecution's case, (2) the effectiveness of the defense absent the impeachment evidence, and (3) the potential impeachment value of the evidence not introduced) (citing *Stephens v. Hall*, 294 F.3d 210, 218 (1st Cir. 2002)).

Neither can Shults demonstrate that these witnesses or the additional testimony affected the verdict given all of the other impeachment evidence counsel introduced about Knox.  Counsel did not limit their impeachment efforts to Knox's desire for a reduced sentence.  They attacked his credibility in a variety of ways, including during the cross-examination of the FBI case agent.  12/12/18 RT 418:13-25 ("Did [the statement that Knox made more money in prison than during thirty-five years prior] concern

GOVERNMENT'S OPPOSITION TO
DEFENDANT'S SECTION 2255 MOTION

you at all?"); 12/12/18 RT 419:16-427:15 ("The whole point of listening to those phone calls was to see if he ever said he made this whole stuff up.")  Counsel also accused Knox of cooperating in an effort to spend time with the female prosecutor. 12/13/18 RT 636:23-645:13.  Counsel also attacked Knox's credibility by directly examining inmate Caro.  12/14/18 RT 732:2-7.  Caro testified that Knox asked Caro to make a movie based on Knox's life story (and Caro had no intention of doing so).  12/14/18 RT 732:2-7.  But Knox stated it was Caro who wanted "to make a movie on [Knox's] life" and even hired a writer for the script.  12/14/18 RT 694:17-695:11.  On Knox's direct and redirect examination, Shults's counsel took many opportunities to portray Knox as incredible.  For example, Knox did not buy a Jack in the Box while imprisoned even though he said he did.  12/13/18 RT 651:2-653:6.  Knox lied to his daughter about the certainty of his sentence reduction.  12/13/18 RT 631:20-632:14.  Knox offered a million-dollar bridge loan to an associate even though Knox was bankrupt.  12/13/18 RT 657:12-659:8. In its special verdict form, the jury found that Shults made the charged threats only on the date of the recording.  CR 98.  That the jury did not also agree that Shults made (unrecorded) threats on the other days alleged in the indictment and testified to by Knox indicates that counsel's efforts to impeach Knox's credibility were effective.

Ultimately, though, defense efforts to discredit Knox did not result in Shults's acquittal, and there is no reasonable probability that the outcome would have been different had counsel called the two witnesses or elicited the additional testimony now proposed by Shults.  *Strickland,* 466 U.S. at 694. This is because the evidence presented by the government was strong.  The government presented evidence independent of the recordings to demonstrate Shults's intent in making the recorded statements.  As noted in detail above, two other inmates testified about Shults's threats about Judge Guilford at points in time both before and after the December 2016 recording.  The government also presented Shults's jail communications in which he expressed anger and frustration regarding Judge Guilford's actions long after his conviction and in the timeframe leading up to the recorded threats. Calling the additional witnesses and asking Hassan about Knox's motivations would not have been sufficient to create a reasonable doubt as to his guilt.

Finally, even if counsel's impeachment strategy was deficient, the Court's jury instructions brought home the fact that the Knox's testimony was to be viewed with some skepticism.  See CR 99 at

p. 34; *See Ortiz v. United States*, No. CR-01-98-S-BLW, 2006 WL 560587, at *3 (D. Idaho Mar. 7, 2006).

**D.**   **Shults Cannot Establish that His Counsel Was Ineffective for not Calling a Prison Expert Witness**

Shults claims ineffective assistance of counsel because his counsel did not call an expert witness familiar with prison administration.  Shults alleges a former Bureau of Prisons warden would have testified about prison inmates falsely accusing others and perpetrating schemes to obtain sentence reductions.  CR 175-1 at p. 10-11.  Shults purports that the warden's expert testimony would have discredited Knox's testimony.  CR 175-1 at p. 10-11.  Shults's argument is meritless.

1. ***Shults has not Provided Sufficient Evidence to Meet His Burden***

First, as noted above, Shults's claim should be rejected because it is not supported by evidence indicating that the proposed warden would have testified or that he was qualified to testify on the proposed subject matter.  *See Grisby*, 130 F.3d 365 at 373 ("speculation about what an expert could have said is not enough to establish prejudice")*; see also Morris*, 966 F.2d at 455-56; *Ashimi*, 932 F.2d at 650.

2. ***The Proposed Testimony would have been Inadmissible Because It is Improper***

"A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case."  Fed. R. Evid. 702.  Expert witness testimony is admissible under Rule 702 if: "(1) the subject matter at issue is beyond the common knowledge of the average layman, (2) the witness has sufficient expertise, and (3) the state of the pertinent art or scientific knowledge permits the assertion of a reasonable opinion."  *United States v. Morales*, 108 F.3d 1031, 1038 (9th Cir.1997) (internal citations and quotation marks omitted).

The Ninth Circuit has repeatedly emphasized that witness credibility is the sole province of the jury.  *See United States v. Ramirez-Rodriquez*, 552 F.2d 883, 884 (9th Cir. 1977) ("[T]he exclusive

function of the jury is to weigh the credibility of witnesses."); *United States v. Candoli*, 870 F.2d 496, 506 (9th Cir. 1989) ("The jury must decide a witness' credibility.").  Consequently, testimony regarding potential bias when a witness receives favorable treatment from the government is not appropriate subject matter for expert testimony, as it invades the exclusive province of the jury to weigh conflicting evidence and evaluate the credibility of witnesses.  *See Candoli*, 870 F.2d at 506 ("An expert witness is not permitted to testify specifically to a witness' credibility...."); *see also United States v. Antone*, 412 F. App'x 10, 11 (9th Cir. 2011) (affirming district court's decision to excluded expert testimony regarding confession because of the danger that it would usurp the jury's function of resolving the relative credibility of the witnesses); *Nimely v. City of New York*, 414 F.3d 381, 398 (2d Cir. 2005) ("[E]xpert opinions that constitute evaluations of witness credibility … are inadmissible under Rule 702."); *United States v. Beasley*, 72 F.3d 1518, 1528 (11th Cir. 1996) ("expert medical testimony concerning the truthfulness or credibility of a witness is generally inadmissible because it invades the jury's province to make credibility determinations."); *United States v. Rhodes*, No. 3:19-CR-00333-IM, 2022 WL 2764198, at *4 (D. Or. July 15, 2022) (excluding witness testimony on the general credibility of incentivized witnesses because it would invade the province of the jury).

Additionally, assessing evidence of bias is not beyond the "common knowledge of the average layman."  *See Morales*, 108 F.3d at 1038.  Such expert testimony is inadmissible because there is nothing complicated about this topic, and the general public is quite familiar with it.  *See United States v. Ancrum*, 161 F. App'x 258 (4th Cir. 2006)  ("Providing unreliable testimony in exchange for a lesser sentence is a topic which is within the common knowledge of the jurors."); *United States v. French*, 12 F.3d 114, 116-17 (8th Cir. 1993) (affirming exclusion of testimony by criminal defense attorney about "the impact on witness credibility of the substantial-assistance reductions available under the Sentencing Guidelines," noting that this was a matter "clearly within the realm of common sense" and that the "credibility of witnesses is a determination for the factfinder (in this case the jury) to make"); *United States v. Ervin,* No. CR 14-04-BU-DLC, 2014 WL 2993750, at *1 (D. Mont. July 2, 2014) ("The practice of prosecutors offering incentives to individuals who agree to testify in criminal cases is well understood by the American populace at large, and is reinforced on a nightly basis through countless television shows devoted to law enforcement and the criminal justice system.").  Concerns regarding the

GOVERNMENT'S OPPOSITION TO
DEFENDANT'S SECTION 2255 MOTION

credibility of cooperating witnesses can be raised through cross-examination, jury instructions, and argument. *See United States v. Johnson* 297 F.3d 845, 862 (9th Cir. 2002) (on direct review, finding no prejudice where defense expert regarding sentencing reductions was excluded because witnesses testified about their hope of receiving a sentence reduction and jury was instructed to consider the testimony of cooperating witnesses with great caution.); *United States v. Call*, 73 F. App'x 268, 272 (9th Cir. 2003) (same); *United States v. Davis*, 457 F.3d 817, 824 (8th Cir. 2006) ("[cautionary] instruction, coupled with defense counsel's own arguments, sufficiently communicated to the jury the information it needed to assess the incentives government witnesses had to stretch or shade the truth in order to obtain sentence reductions.")

Here, Shults's suggested expert would testify to the very issue reserved for the jury – witness credibility. That inmates would be motivated to cooperate with the government in anticipation of a sentence reduction is not a complicated or unfamiliar concept, and the jury was not in need of an expert to explain it. Moreover, the defense dedicated significant portions of the trial to the cross-examination of all of the government's inmate witnesses, and the judge instructed the jury to be cautious about the testimony of witnesses who received or expected to receive benefits from the government. CR 99 at p. 34. The district court would have justifiably excluded Shults's proposed expert testimony as improper. Counsel's performance cannot be deemed deficient for not attempting to introduce inadmissible evidence.

### 3.     *The Proposed Testimony would have been Inadmissible Because It is Cumulative, Confusing, and Irrelevant*

In determining the admissibility of expert testimony, a district court must consider the testimony's probativeness. *Hovey v. Ayers*, 458 F.3d 892, 911 (9th Cir. 2006). But "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by . . . confusing the issues … or needlessly presenting cumulative evidence" or where it irrelevant. Fed. R. Evid. 401, 403.

The proposed expert testimony also would have been inadmissible because the expert's generalized assessment of practices in other cases would be irrelevant, confusing, and unhelpful to the jury. The facts relevant to the credibility of the government's witnesses were established and fully vetted at trial, including through cross-examination regarding their interactions with the government and

potential benefits they hoped to receive.  To present evidence of other witnesses in other cases would have risked confusing the jury and would have been irrelevant.

Additionally, the expert's testimony would have been cumulative. First, Galeana and Knox already testified about cooperating with the government in hopes of a consideration, such as a sentence reduction.  12/11/18 TR 247:22-248:7, 248:22-249:1 ("Well, because I just wanted, well, to get less time and just get it over with."); 12/13/18 RT 612:15-613:7; 630:16-631:7 ("[Y]ou could get a sentence reduction for substantial assistance in a case. . . . In my view, [wearing a wire is] substantial assistance.")

Second, the defense called several other inmate or former-inmate witnesses who testified about incentives to cooperate with the government.  As noted above, both Caro and Mai testified that Knox was expecting to receive a benefit for cooperating. 12/14/18 RT 733:20-734:19, 745:18-22.  Two other defense witnesses also testified about inmates who cooperated in the *Walthall* case.  12/13/18 RT 518:12-522:23, 561:7-564:17.  Both witnesses noted that an individual who originally testified for the defense "flipped" and testified for the government at the *Walthall* retrial.  12/13/18 RT 522:10-17, 562:16-25.  According to one witness, these inmates "supposedly set this guy up to reduce their sentence."  12/13/18 RT 520:11-13.

Finally, witnesses addressed the unreliability of information from inmates seeking a benefit.  The FBI case agent described inmates' motivations to inform on other inmates, "Generally, people who are in custody . . . work for the FBI in hope for a reduced sentence."  12/12/18 RT 260:15-16, 377:22-23 ("I reminded him that cooperation would get him a hearing for a reduction.").  The FBI agent discussed the need and process for vetting inmates' tips.  12/12/18 RT 344:25-346:10, 346:24-347:2.  A U.S. Marshal also testified to the need and process for corroborating the threat from an inmate tip.  12/14/18 RT 717:14-718:1, 718:23-721:18.

Thus, the fact that inmates provided unreliable information to the government and participated in schemes—hoping for reduced sentences—was well established without a prison warden's additional expert testimony.  Should Shults's counsel have attempted to include the warden's expert testimony, the court would have excluded it because the testimony would have been irrelevant, confusing, and would have needlessly presented cumulative evidence that inmates sometimes provide false information to the

1  government to get sentence reductions.  Counsel's performance cannot be deemed deficient for failing to

2  seek to admit inadmissible evidence.

3      4.    ***It was Sound Trial Strategy to Refrain from Calling Shults's Proposed Expert***

4      There are "countless ways to provide effective assistance in any given case[,]" and "[e]ven the

5  best criminal defense attorneys would not defend a particular client in the same way." *Strickland*, 466

6  U.S. at 689.  As the Supreme Court has held with regard to defense counsel decisions not to consult with

7  or retain experts, *Strickland*, "permits counsel to 'make a reasonable decision that makes particular

8  investigations unnecessary.'" *Richter*, 562 U.S. at 106.  Even where there are many possible experts,

9  counsel is entitled to formulate a reasonable strategy at the time and "balance limited resources in accord

10  with effective trial tactics and strategies." *Id.* at 107.  *Strickland* does not "guarantee perfect

11  representation, only a reasonably competent attorney." *Id.* at 110 (quoting *Strickland*, 466 U.S. at 691).

12  "Representation is constitutionally ineffective only if it 'so undermined the proper functioning of the

13  adversarial process' that the defendant was denied a fair trial." *Id.* (quoting *Strickland*, 466 U.S. at 686).

14      Here, Shults's counsel made a tactical decision to discredit Knox and the inmates called by the

15  government through cross-examination of those witnesses and through questions posed about them to

16  other witnesses.  As discussed above, defense counsel ensured that the jury heard that Knox cooperated

17  with the government to get a sentence reduction.  12/12/18 RT 377:20-23; 12/13/18 RT 612:15-613:7;

18  630:16-631:7; 12/14/18 RT 734:7-19; 743:6-745:25.  Also, as discussed in detail above, counsel did not

19  limit their impeachment efforts to Knox's desire for a reduced sentence but attacked his credibility in a

20  variety of ways.  Counsel also attacked Valkovich's and Galeana's credibility by questioning their

21  motivations for cooperating.  12/11/18 206:6-207:20 (asking Valkovich about whether there was "any

22  talk about you getting a benefit?" and "You never asked for anything?"); 12/12/18 RT 253:5-254:5

23  (questioning Galeana about his motivations for prior cooperation).  Counsel also attacked Valkovich's

24  credibility by attempting to demonstrate that he fabricated his testimony based on the *Walthall* case.

25  12/13/18 RT 561:7-566:21, 518:12-522:23.  Counsel further attempted to impeach Valkovich by calling

26  former inmate Dablan to refute Valkovich's testimony that he told Dablan of Shults's threats to kill

27  Judge Guilford.  12/11/18 RT 197:8-199:7; 12/13/18 RT 522:10-524:7.

28      Shults's counsel formulated an objectively reasonable defense strategy that included efforts to

discredit the government's cooperating witnesses, and to show that inmates inform on other inmates to obtain sentence reductions and—sometimes—falsely accuse other inmates or participate in schemes. Given this specific and abundant testimony, Shults cannot establish his counsel's deficient performance. *People of Territory of Guam v. Santos*, 741 F.2d 1167, 1169 (9th Cir. 1984) (citing *Strickland*, 466 U.S. at 690) ("A tactical decision by counsel with which the defendant disagrees cannot form the basis of a claim of ineffective assistance of counsel.")

### 5.   *Shults was not Prejudiced by the Warden not Testifying*

Shults also fails to show the outcome of the trial would have been different had the warden testified.  Shults alleges the expert witness testimony would have indirectly questioned the cooperating inmates' trustworthiness.  The choice not to call the warden had no substantial effect on the trial outcome because, as discussed above, Knox's, Valkovich's and Galeana's credibility and motivations had been thoroughly examined.  Moreover, the government presented independent and overwhelming evidence of Shults's guilt.  Thus, Shults cannot show prejudice, and his ineffective assistance claim also fails on the second *Strickland* element.  *Strickland*, 466 U.S. at 687.

### E.   <u>Shults is not Entitled to a Hearing on Any of his Claims</u>

Defendant bears the burden of establishing an ineffective assistance of counsel claim. *Strickland*, 466 U.S. at 694; *United States v. Quintero-Barraza*, 78 F.3d 1344, 1348 (9th Cir. 1995). Bare assertions of fact, or bald statements of legal conclusions, will not suffice to gain relief under § 2255 and do not warrant an evidentiary hearing.  *See Womack v. Del Papa*, 497 F.3d 998, 1004 (9th Cir. 2007) (in reviewing the denial of a habeas petition pursuant to 18 U.S.C. § 2254, the Court found defendant's "self-serving statements" insufficient to establish that his attorney failed to properly advise him of potential defenses); *United States v. McMullen*, 98 F.3d 1155, 1158 (9th Cir. 1996) (finding compelling the government's argument that petitioner's "bare assertion" is "not enough" and that petitioner "offers nothing … not even a self-serving declaration"); *Shah v. United States*, 878 F.2d 1156, 1161 (9th Cir. 1989) (observing that vague and conclusory allegations of ineffective assistance of counsel in § 2255 motion were "inadequate" and did not provide a basis for the district court to hold an evidentiary hearing); *Wallace v. United States*, 457 F.2d 547, 548 (9th Cir. 1972) ("bald conclusions" in the form of "self-serving statements" alleged in a § 2255 motion regarding mental competency were

GOVERNMENT'S OPPOSITION TO
DEFENDANT'S SECTION 2255 MOTION

insufficient); *Wagner v. United States*, 418 F.2d 618, 621 (9th Cir. 1969) (noting that a petitioner must make "factual allegations" and that "merely conclusory statements in a § 2255 motion are not enough to require a hearing"); *Norris v. Wilson*, 378 F.2d 324, 327 (9th Cir. 1967) ("the vague, conclusory and immaterial facts alleged in petitioner's petition" did not require a hearing).

Where the files and records conclusively show that the movant is not entitled to relief, even assuming the truth of defendant's factual allegations, the Court may summarily deny a § 2255 motion without an evidentiary hearing. 28 U.S.C. § 2255; *United States v. Blaylock*, 20 F.3d 1458, 1465 (9th Cir. 1994).

Here, Shults, through his counsel, has offered vague and conclusory allegations without offering evidence to support his claims – not even a defendant's declaration or citations to the record relevant to his allegations. Such bare assertions of fact and vague allegations are insufficient to gain relief under section 2255. [T]he absence of evidence cannot overcome the 'strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance.'" *Burt v. Titlow*, 571 U.S. 12, 23 (2013) (quoting *Strickland*, 466 US at 690); *United States v. Johnson*, 988 F.2d 941, 945 (9th Cir. 1993) ("Merely conclusory statements in a § 2255 motion are not enough.")

In light of Shults's abject failure to offer any evidence for any of his claims, Shults is not entitled to an evidentiary hearing and his motion should be denied. Additionally, the record before this Court demonstrates that Shults's claims are procedurally barred, do not state a claim for relief, or are so palpably incredible as to warrant summary dismissal. *See United States v. McMullen*, 98 F.3d 1155, 1159 (9th Cir. 1996); *Shah*, 878 F.2d at 1158. The record of the case conclusively establishes that Shults is not entitled to relief, and a hearing is thus unnecessary.

## V.  WAIVER OF ATTORNEY-CLIENT PRIVILEGE

If the Court is unable to deny some or all of Shults's claims based on the current record, the government seeks leave to file a motion and proposed order asking the Court to find a limited waiver of attorney-client privilege and leave to file a request for discovery under Rule 6 of the Rules Governing Section 2255 Motions. "It has long been the rule in the federal courts that, where a habeas petitioner raises a claim of ineffective assistance of counsel, he waives the attorney-client privilege as to all communications with his allegedly ineffective lawyer." *Bittaker v. Woodford*, 331 F.3d 715, 716 (9th

1  Cir. 2003).  This rule (that a litigant waives the attorney-client privilege by putting the lawyer's

2  performance at issue during the course of litigation) dates back to at least 1888.  *Hunt v. Blackburn*, 128

3  U.S. 464, 470-71 (1888) ("When Mrs. Blackburn entered upon a line of defence which involved what

4  transpired between herself and Mr. Weatherford [her lawyer], and respecting which she testified, she

5  waived her right to object to his giving his own account of the matter.")

6  **VI.**      <u>**CONCLUSION**</u>

7         For the foregoing reasons, the government respectfully requests that the Court dismiss or

8  otherwise deny Shults's § 2255 Motion.

9

10   Dated:  September 8, 2022                          PHILLIP A. TALBERT
                                                         United States Attorney

11

12                                              By:   /s/ ANGELA L. SCOTT
                                                      ANGELA L. SCOTT

13                                                    Assistant United States Attorney

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28